**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GIANT EAGLE, INC. and HBC SERVICE COMPANY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 2:19-cv-00904-AJS |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and XL SPECIALTY INSURANCE COMPANY, | ) ) ) ) | [This Document has been Electronically Filed] |
| Defendants. | ) | |

**ANSWER AND COUNTERCLAIM OF DEFENDANT**
**AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY**

Defendant American Guarantee and Liability Insurance Company ("AGLIC"), by and through its attorneys, and for its Answer to the Complaint for Declaratory Judgment and Damages (the "Complaint") of Plaintiffs Giant Eagle, Inc. and HBC Service Company (collectively, "Plaintiffs") and its Counterclaim against Plaintiffs, states as follows:

1.      Insofar as Paragraph 1 of the Complaint summarizes the action or contains only conclusions of law, no response by AGLIC is required. To the extent a response is required, AGLIC admits that the Plaintiffs have filed this action for declaratory judgment and denies that Plaintiffs are entitled to the relief they request against AGLIC. Insofar as the allegations contained in Paragraph 1 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations.

2.      As to Paragraph 2 of the Complaint, AGLIC admits that certain lawsuits ("underlying lawsuits") filed against HBC Service Company ("HBC") in Ohio have been consolidated as part of *In re National Prescription Opiate Litigation*, case no. 17-md-2804,

pending in the United States District Court for the Northern District of Ohio (MDL 2804). AGLIC admits that it has denied any obligation to defend Plaintiffs with respect to the underlying lawsuits. AGLIC otherwise denies the allegations of Paragraph 2, to the extent they are directed at AGLIC. Insofar as the allegations contained in Paragraph 2 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations.

3.      To the extent that the allegations of Paragraph 3 consist of legal conclusions, no response is required. To the extent that the allegations contained in Paragraph 3 can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC affords insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations. AGLIC otherwise denies the allegations of Paragraph 3, to the extent they are directed at AGLIC. To the extent that the allegations are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations.

4.      To the extent that Paragraph 4 of the Complaint summarizes the action or consists of legal conclusions, no response by AGLIC is required.  To the extent that the allegations contained in Paragraph 4 of the Complaint can be construed as inferring, implying, or asserting that any policy of insurance issued by AGLIC affords insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations. AGLIC otherwise denies the allegations of Paragraph 4, to the extent they are directed at AGLIC.  Insofar as the allegations contained in Paragraph 4 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations.

131363736v1 0976954

5.      To the extent that Paragraph 5 of the Complaint sets forth a summary of the action, no response by AGLIC is required. To the extent that the allegations contained in Paragraph 5 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC affords insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations.  AGLIC otherwise denies the allegations of Paragraph 5, to the extent they are directed at AGLIC.  Insofar as the allegations contained in Paragraph 5 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations

6.      AGLIC states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint and, on that basis, denies those allegations.

7.      AGLIC states that the complaints in the underlying lawsuits referenced in Paragraph 7 speak for themselves and denies the allegations of Paragraph 7 to the extent they are inconsistent with the underlying complaints. AGLIC is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint and, on that basis, denies those allegations.

8.      With regard to the allegations contained in Paragraph 8 of the Complaint, AGLIC admits only that it issued certain umbrella insurance policies to Giant Eagle that were effective during the period of April 1, 2009 to April 1, 2016 (the õAGLIC Excess Policiesö).  The AGLIC Excess Policies speak for themselves and AGLIC denies the allegations of Paragraph 8 to the extent they are inconsistent with those policies.  AGLIC further admits that Giant Eagle retained liability of both indemnity and all defense costs under the primary policies it procured from Old

Republic Insurance Company ("Old Republic"), and denies the allegations of Paragraph 8 to the extent they are inconsistent with those policies. AGLIC is otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, denies those allegations.

9.      AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint and, on that basis, denies those allegations.

10.     As the allegations in Paragraph 10 of the Complaint, AGLIC admits only that certain complaints were filed against HBC Service Company ("HBC"), and that those actions have been consolidated as part of the *In re National Prescription Opiate Litigation*, case no. 17-md-2804, pending in the United States District Court for the Northern District of Ohio (MDL 2804). AGLIC is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint and, on that basis, denies those allegations.

11.     AGLIC denies the allegations of Paragraph 11 of the Complaint, to the extent they are directed at AGLIC.  Insofar as the allegations contained in Paragraph 11 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations.

12.     AGLIC admits only that it issued certain umbrella insurance policies to Giant Eagle that were effective during the period of April 1, 2009 to April 1, 2016 (the "AGLIC Excess Policies"). AGLIC states that the AGLIC Excess Policies speak for themselves and denies the allegations of Paragraph 12 to the extent they are inconsistent with those policies. AGLIC otherwise denies the allegations of Paragraph 12, to the extent they are directed at

4

AGLIC.  AGLIC is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 to and, on that basis, denies those allegations.

13.     To the extent that Paragraph 13 of the Complaint purports to set forth a summary of the action or consists of legal conclusions, no response by AGLIC is required. To the extent a response is required, AGLIC admits that the Plaintiffs have filed this action for declaratory judgment and denies that Plaintiffs are entitled to the relief they request as against AGLIC. AGLIC otherwise denies the allegations of Paragraph 13, to the extent they are directed at AGLIC.  Insofar as the allegations contained in Paragraph 13 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations.

**PARTIES**

14.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 and, on that basis, denies those allegations.

15.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and, on that basis, denies those allegations.

16.     AGLIC admits that it is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, New York 10007, and its principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.

17.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and, on that basis, denies those allegations.

**JURISDICTION AND VENUE**

18.     AGLIC admits the allegations contained in Paragraph 18 of the Complaint.

131363736v1 0976954

19.     AGLIC admits only that it conducts business within the Commonwealth of Pennsylvania. Insofar as the allegations contained in Paragraph 19 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations.

20.     AGLIC admits the allegations contained in Paragraph 20 of the Complaint.

## FACTS

**A.     THE OPIOID LAWSUITS**

21.     AGLIC admits only that HBC was named as a defendant in the seven actions listed in Paragraph 21 of the Complaint.  AGLIC states that the complaints filed in those actions speak for themselves and denies the allegations of Paragraph 21 to the extent they are inconsistent with the complaints filed in those seven actions.

22.     AGLIC admits only that HBC was named as a defendant in the five actions listed in Paragraph 22 of the Complaint.  AGLIC states that the complaints filed in those actions speak for themselves and denies the allegations of Paragraph 22 to the extent they are inconsistent with the complaints filed in those actions.

23.     Insofar as the allegations contained in Paragraph 23 of the Complaint make no factual assertions directed at AGLIC, no response is required.

24.     AGLIC admits the allegations contained in Paragraph 24 of the Complaint.

25.     AGLIC admits the allegations contained in Paragraph 25 of the Complaint.

26.     AGLIC admits only that HBC was named as a defendant in the lawsuits designated as the ōTrack 1ö lawsuits in the *In re National Prescription Opiate Litigation*, case no. 17-md-2804, pending in the United States District Court for the Northern District of Ohio (MDL 2804). AGLIC states that the complaints filed in the underlying ōTrack 1ö lawsuits speak

131363736v1 0976954

for themselves, and denies the allegations of Paragraph 26 to the extent that they are inconsistent with those complaints.

27.     AGLIC admits only that HBC was named as a defendant in the lawsuits designated as the ӧTrack 1ӧ lawsuits in the *In re National Prescription Opiate Litigation*, case no. 17-md-2804, pending in the United States District Court for the Northern District of Ohio (MDL 2804). AGLIC states that the complaints filed in the underlying ӧTrack 1ӧ lawsuits speak for themselves, and AGLIC denies the allegations of Paragraph 27 to the extent that they are inconsistent with those complaints. Further answering, insofar as the allegations contained in Paragraph 27 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any of the claims referenced in the Complaint, AGLIC denies the allegations.

28.     AGLIC admits only that HBC was named as a defendant in the lawsuits designated as the ӧTrack 1ӧ lawsuits in the *In re National Prescription Opiate Litigation*, case no. 17-md-2804, pending in the United States District Court for the Northern District of Ohio (MDL 2804). AGLIC states that the complaints filed in the underlying ӧTrack 1ӧ lawsuits speak for themselves, and AGLIC denies the allegations of Paragraph 28 to the extent that they are inconsistent with those complaints. Further answering, insofar as the allegations contained in Paragraph 28 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any of the claims referenced in the Complaint, AGLIC denies the allegations.

29.     AGLIC admits only that HBC was named as a defendant in the lawsuits designated as the ӧTrack 1ӧ lawsuits in the *In re National Prescription Opiate Litigation*, case no. 17-md-2804, pending in the United States District Court for the Northern District of Ohio

131363736v1 0976954

(MDL 2804). AGLIC states that the underlying complaints referenced in Paragraph 29 of the Complaint speak for themselves and denies the allegations contained in Paragraph 29 to the extent they are inconsistent with those complaints. Further answering, insofar as the allegations contained in Paragraph 29 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any of the claims referenced in the Complaint, AGLIC denies the allegations.

30.     AGLIC admits only that HBC was named as a defendant in the lawsuits designated as the öTrack 1ö lawsuits in the *In re National Prescription Opiate Litigation*, case no. 17-md-2804, pending in the United States District Court for the Northern District of Ohio (MDL 2804), AGLIC states that the underlying complaints referenced in Paragraph 30 of the Complaint speak for themselves and denies the allegations contained in Paragraph 30 to the extent they are inconsistent with the underlying complaints.  Further answering, insofar as the allegations contained in Paragraph 30 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any of the claims referenced in the Complaint, AGLIC denies the allegations.

31.     AGLIC admits only that HBC was named as a defendant in the lawsuits designated as the öTrack 1ö lawsuits in the *In re National Prescription Opiate Litigation*, case no. 17-md-2804, pending in the United States District Court for the Northern District of Ohio (MDL 2804). AGLIC states that the underlying complaints referenced in Paragraph 31 of the Complaint speak for themselves and denies the allegations contained in Paragraph 31 to the extent they are inconsistent with the underlying complaints. Further answering, insofar as the allegations contained in Paragraph 31 can be construed as inferring, implying or asserting that

131363736v1 0976954

any policy of insurance issued by AGLIC afforded insurance coverage for any of the claims referenced in the Complaint, AGLIC denies the allegations.

32.     AGLIC admits only that HBC was named as a defendant in the lawsuits designated as the ̏Track 1 ̏ lawsuits in the *In re National Prescription Opiate Litigation*, case no. 17-md-2804, pending in the United States District Court for the Northern District of Ohio (MDL 2804). AGLIC states that the underlying complaints referenced in Paragraph 32 of the Complaint speak for themselves and denies the allegations contained in Paragraph 32 to the extent they are inconsistent with the underlying complaints. Further answering, insofar as the allegations contained in Paragraph 32 can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any of the claims referenced in the Complaint, AGLIC denies the allegations.

33.     AGLIC admits only that HBC was named as a defendant in the lawsuits referenced in Paragraph 33 of the Complaint. AGLIC states that the underlying complaints referenced in Paragraph 33 speak for themselves and denies the allegations contained in Paragraph 33 to the extent they are inconsistent with the underlying complaints. Further answering, insofar as the allegations contained in Paragraph 33 can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any of the claims referenced in the Complaint, AGLIC denies the allegations.

34.     AGLIC admits only that HBC was named as a defendant in the lawsuits referenced in Paragraph 34 of the Complaint. AGLIC states that the underlying complaints speak for themselves and denies the allegations contained in Paragraph 34 to the extent they are inconsistent with the underlying complaints. Further answering, insofar as the allegations contained in Paragraph 34 can be construed as inferring, implying or asserting that any policy of

131363736v1 0976954

insurance issued by AGLIC afforded insurance coverage for any of the claims referenced in the Complaint, AGLIC denies the allegations.

35.     AGLIC admits only that HBC was named as a defendant in the lawsuits referenced in Paragraph 35 of the Complaint. AGLIC states that the underlying complaints speak for themselves and denies the allegations contained in Paragraph 35 to the extent they are inconsistent with the underlying complaints. Further answering, insofar as the allegations contained in Paragraph 35 can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any of the claims referenced in the Complaint, AGLIC denies the allegations.

36.     AGLIC admits only that HBC was named as a defendant in the lawsuit referenced in Paragraph 36 of the Complaint. AGLIC states that the underlying complaint referenced in Paragraph 36 of the Complaint speaks for itself and denies the allegations contained in Paragraph 36 to the extent they are inconsistent with the underlying complaint. Further answering, insofar as the allegations contained in Paragraph 36 can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any of the claims referenced in the Complaint, AGLIC denies the allegations.

37.     To the extent that the allegations of Paragraph 37 purport to summarize or characterize evidence produced in the *In re National Prescription Opiate Litigation*, case no. 17-md-2804, pending in the United States District Court for the Northern District of Ohio (MDL 2804), any such evidence speaks for itself and AGLIC denies the allegations to the extent they are inconsistent with such evidence.  AGLIC otherwise states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37, and on that basis, denies the allegations.

131363736v1 0976954

38.     AGLIC states that the underlying complaints filed in the "Opioid Lawsuits" referenced in Paragraph 38 of the Complaint speak for themselves and denies the allegations to the extent they are inconsistent with the underlying complaints. Further answering, insofar as the allegations contained in Paragraph 38 can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any of the claims referenced in the Complaint, AGLIC denies the allegations.

## B.     THE INSURANCE POLICIES

39.     AGLIC admits only that it issued certain umbrella insurance policies to Giant Eagle that were effective during the period of April 1, 2009 to April 1, 2016 (the "AGLIC Excess Policies") which apply in excess of certain policies issued to Giant Eagle by Old Republic (the "Old Republic Primary Policies"). AGLIC states that the terms and conditions of the AGLIC policies speak for themselves and denies the allegations of Paragraph 39 to the extent that they are inconsistent with the AGLIC Excess Policies. To the extent that the allegations contained in Paragraph 39 of the Complaint are otherwise directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations.

### i. The Zurich Policies (April 2009 to April 2016)

40.     AGLIC admits only that it issued certain umbrella insurance policies to Giant Eagle that were effective during the period of April 1, 2009 to April 1, 2016 (the "AGLIC Excess Policies") which apply in excess of certain policies issued to Giant Eagle by Old Republic (the "Old Republic Primary Policies"). AGLIC states that the terms and conditions of the AGLIC policies speak for themselves and denies the allegations of Paragraph 40 to the extent that they are inconsistent with the AGLIC Excess Policies.

11

41.     AGLIC admits only that it issued certain umbrella insurance policies to Giant Eagle that were effective during the period of April 1, 2009 to April 1, 2016 (the "AGLIC Excess Policies"), which apply in excess of certain policies issued to Giant Eagle by Old Republic (the "Old Republic Primary Policies"). AGLIC states that the terms and conditions of the AGLIC Excess Policies speak for themselves and denies the allegations of Paragraph 41 to the extent that they are inconsistent with the AGLIC Excess Policies. Insofar as the allegations contained in Paragraph 41 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations.

42.     AGLIC admits only that it issued certain umbrella insurance policies to Giant Eagle that were effective during the period of April 1, 2009 to April 1, 2016 (the "AGLIC Excess Policies"), which follow form and apply in excess of certain policies issued to Giant Eagle by Old Republic (the "Old Republic Primary Policies"). AGLIC states that the terms and conditions of the AGLIC Excess Policies speak for themselves and denies the allegations of Paragraph 42 to the extent that they are inconsistent with the AGLIC Excess Policies. Insofar as the allegations contained in Paragraph 42 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations.

43.     AGLIC admits only that it issued certain umbrella insurance policies to Giant Eagle that were effective during the period of April 1, 2009 to April 1, 2016 (the "AGLIC Excess Policies"), which contain this quoted definition in whole or in part and which apply in excess of certain underlying policies issued to Giant Eagle by Old Republic (the "Old Republic Primary Policies"). AGLIC states that the terms and conditions of the AGLIC Excess Policies

131363736v1 0976954

speak for themselves and denies the allegations of Paragraph 43 to the extent that they are inconsistent with the AGLIC Excess Policies. Insofar as the allegations contained in Paragraph 43 of the Complaint can be construed as inferring, implying or asserting that any AGLIC Excess Policy of insurance afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations.

44.     AGLIC admits only that it issued certain umbrella insurance policies to Giant Eagle that were effective during the period of April 1, 2009 to April 1, 2016 (the "AGLIC Excess Policies"), which apply excess of those underlying policies issued to Giant Eagle by Old Republic (the "Old Republic Primary Policies").  AGLIC states that the AGLIC Excess Policies and the Old Republic Primary Policies respectively speak for themselves and denies the allegations of Paragraph 44 to the extent that they are inconsistent with them.  Insofar as the allegations contained in Paragraph 44 of the Complaint can be construed as inferring, implying or asserting that any AGLIC Excess Policy afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations.

45.     Paragraph 45 of the Complaint makes no factual assertions against AGLIC, and, therefore, no response by AGLIC is required. To the extent a response is required, AGLIC states that the Old Republic Primary Policies speak for themselves and denies the allegations of Paragraph 45 to the extent they are inconsistent with the Old Republic Primary Policies.

46.     Paragraph 46 of the Complaint makes no factual assertions against AGLIC, and, therefore, no response by AGLIC is required. To the extent a response is required, AGLIC states that the Old Republic Primary Policies speak for themselves and denies the allegations of Paragraph 46 to the extent they are inconsistent with the Old Republic Primary Policies.

131363736v1 0976954

47.     Paragraph 47 of the Complaint makes no factual assertions against AGLIC, and, therefore, no response by AGLIC is required. To the extent a response is required, AGLIC states that the Old Republic Primary Policies speak for themselves and denies the allegations of Paragraph 47 to the extent they are inconsistent with the Old Republic Primary Policies.

48.     AGLIC admits only that it issued certain umbrella insurance policies to Giant Eagle that were effective during the period of April 1, 2009 to April 1, 2016 (the õAGLIC Excess Policiesö) and that all the quoted language appears only in the April 1, 2011 to April 1, 2016 Policies but not in the other AGLIC Excess Policies.  AGLIC states that the AGLIC Excess Policies speak for themselves and denies the allegations of Paragraph 48 to the extent that they are inconsistent with the AGLIC Excess Policies.  Insofar as the allegations contained in Paragraph 48 of the Complaint can be construed as inferring, implying or asserting that any AGLIC Excess Policy afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations.

49.     AGLIC admits only that it issued certain umbrella insurance policies to Giant Eagle that were effective during the period of April 1, 2009 to April 1, 2016 (the õAGLIC Excess Policiesö), and that all the quoted language appears only in the April 1, 2011 to April 1, 2016 Policies but not in the other AGLIC Excess Policies.  AGLIC states that the AGLIC Excess Policies speak for themselves and denies the allegations of Paragraph 49 to the extent that they are inconsistent with the AGLIC Excess Policies. Insofar as the allegations contained in Paragraph 49 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations.

50.     AGLIC denies the allegations of paragraph 50 of the Complaint.

131363736v1 0976954

51.     AGLIC states that the Old Republic Primary Policies speak for themselves and denies the allegations of Paragraph 51 to the extent that they are inconsistent with the Old Republic Primary Policies.  Insofar as the allegations contained in Paragraph 51 of the Complaint can be construed as inferring, implying or asserting that any AGLIC Excess Policy afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations.

52.     AGLIC states that the Old Republic Primary Policies and AGLIC Excess Policies respectively speak for themselves and denies the allegations of Paragraph 52 to the extent that they are inconsistent with them. AGLIC is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint and, on that basis, denies the allegations.

53.     AGLIC denies the allegations contained in paragraph 53 of the Complaint.

### ii. The XL Specialty Policies (April 2016 to April 2018)

54.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint and, on that basis, denies the allegations. AGLIC further states that any policy of insurance issued by XL Specialty speaks for itself and denies the allegations of Paragraph 54 to the extent they are inconsistent with such policies.

55.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of the Complaint and, on that basis, denies the allegations. AGLIC further states that any policy of insurance issued by XL Specialty speaks for itself and denies the allegations of Paragraph 55 to the extent they are inconsistent with such policies.

131363736v1 0976954

56.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Complaint and, on that basis, denies the allegations. AGLIC further states that any policy of insurance issued by XL Specialty or Old Republic speaks for itself and denies the allegations of Paragraph 56 to the extent they are inconsistent with such policies.

57.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint and, on that basis, denies the allegations. AGLIC further states that any policy of insurance issued by XL Specialty or Old Republic speaks for itself and denies the allegations of Paragraph 57 to the extent they are inconsistent with such policies.

58.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Complaint and, on that basis, denies the allegations. AGLIC further states that any policy of insurance issued by XL Specialty speaks for itself and denies the allegations of Paragraph 58 to the extent they are inconsistent with such policies.

59.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Complaint and, on that basis, denies the allegations. AGLIC further states that any policy of insurance issued by XL Specialty speaks for itself and denies the allegations of Paragraph 59 to the extent they are inconsistent with such policies.

60.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Complaint and, on that basis, denies the allegations. AGLIC further states that any policy of insurance issued by XL Specialty speaks for

131363736v1 0976954

itself and denies the allegations of Paragraph 60 to the extent they are inconsistent with such policies.

61.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Complaint and, on that basis, denies the allegations. AGLIC further states that any policy of insurance issued by XL Specialty or Old Republic speaks for itself and denies the allegations of Paragraph 60 to the extent they are inconsistent with such policies.

62.     AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Complaint and, on that basis, denies the allegations. AGLIC further states that any policy of insurance issued by XL Specialty or Old Republic speaks for itself and denies the allegations of Paragraph 62 to the extent they are inconsistent with such policies.

63.     Insofar as the allegations contained in Paragraph 63 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations, and on that basis, denies those allegations. AGLIC further states that any policy of insurance issued by XL Specialty or Old Republic speaks for itself and denies the allegations of Paragraph 63 to the extent they are inconsistent with such policies.

64.     Insofar as the allegations contained in Paragraph 64 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations, and on that basis, denies those allegations. AGLIC further states that the Old Republic policies speak for themselves and denies the allegations of Paragraph 64 to the extent that they are inconsistent with the Old Republic policies.

131363736v1 0976954

65.     Insofar as the allegations contained in Paragraph 65 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations, and on that basis, denies those allegations. AGLIC further states that the policies issued by Old Republic and XL Specialty speak for themselves and denies the allegations of Paragraph 65 to the extent that they are inconsistent with those policies.

66.     Insofar as the allegations contained in Paragraph 66 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations, and on that basis, denies those allegations. AGLIC further states that the policies issued by Old Republic and XL Specialty speak for themselves and denies the allegations of Paragraph 66 to the extent that they are inconsistent with those policies.

## C.     THE OPIOID LAWSUITS' ALLEGATIONS EASILY MEET THE STANDARD FOR TRIGGERING DEFENDANTS' DUTY TO DEFEND – THAT IS, THEY ASSERT ARGUABLY COVERED CLAIMS

67.     With regard to the allegations contained in Paragraph 67 of the Complaint, AGLIC states that any written notice(s) speak for themselves and denies the allegations to the extent they are inconsistent with such notices. Insofar as the allegations contained in Paragraph 67 are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

68.     AGLIC denies the allegations of paragraph 68 of the Complaint.

69.     AGLIC states that the policies issued by AGLIC speak for themselves and denies the allegations of Paragraph 69 to the extent they are inconsistent with those policies.  AGLIC further denies the allegations insofar as they can be construed as inferring, implying or asserting that any AGLIC Excess Policy afforded insurance coverage for any claims referenced in the

131363736v1 0976954

Complaint. Insofar as the allegations contained in Paragraph 69 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies the allegations.

70.     AGLIC states that the policies issued by AGLIC speak for themselves and denies the allegations of Paragraph 70 to the extent they are inconsistent with those policies.  AGLIC further denies the allegations insofar as they can be construed as inferring, implying or asserting that any AGLIC Excess Policy afforded insurance coverage for any claims referenced in the Complaint. Insofar as the allegations contained in Paragraph 70 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies the allegations.

71.     AGLIC states that the policies issued by AGLIC speak for themselves and denies the allegations of Paragraph 71 to the extent they are inconsistent with those policies.  AGLIC further denies the allegations insofar as they can be construed as inferring, implying or asserting that any AGLIC Excess Policy afforded insurance coverage for any claims referenced in the Complaint. Insofar as the allegations contained in Paragraph 70 of the Complaint are directed at parties other than AGLIC, AGLIC is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies the allegations.

72.     AGLIC states that the policies issued by AGLIC speak for themselves and denies the allegations of Paragraph 72 to the extent they are inconsistent with those policies.  AGLIC further denies the allegations insofar as they can be construed as inferring, implying or asserting that any AGLIC Excess Policy afforded insurance coverage for any claims referenced in the Complaint. Insofar as the allegations contained in Paragraph 72 of the Complaint are directed at

131363736v1 0976954

parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies the allegations.

73.     AGLIC states that the policies issued by AGLIC speak for themselves and denies the allegations of Paragraph 73 to the extent they are inconsistent with those policies.  AGLIC further denies the allegations insofar as they can be construed as inferring, implying or asserting that any AGLIC Excess Policy afforded insurance coverage for any claims referenced in the Complaint. Insofar as the allegations contained in Paragraph 73 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies the allegations.

74.     With regard to the allegations contained in Paragraph 74 of the Complaint, AGLIC states that the underlying complaints filed in the Opioid Lawsuits speak for themselves and denies the allegations of Paragraph 74 to the extent that they are inconsistent with the underlying complaints. Moreover, AGLIC denies that the allegations contained in Paragraph 74 of the Complaint comprehensively summarize the allegations in the Opioid Lawsuits or accurately characterize the Opioid Lawsuits.  Further answering, insofar as the allegations contained in Paragraph 74 can be construed as inferring, implying or asserting that any AGLIC Excess Policy afforded insurance coverage for any claims referenced in the Complaint, including the Opioid Lawsuits, AGLIC denies the allegations.  AGLIC otherwise denies the allegations of Paragraph 74 to the extent that they are directed at AGLIC. Insofar as the allegations contained in Paragraph 74 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

75.     AGLIC denies the allegations contained in paragraph 75 of the Complaint.

131363736v1 0976954

76.     AGLIC admits that HBC is an insured under the AGLIC Excess Policies effective April 1, 2009 to April 1, 2016.  Insofar as the allegations contained in Paragraph 76 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

77.     AGLIC denies the allegations contained in paragraph 77 of the Complaint.

78.     AGLIC admits only that it sent a letter to Giant Eagle dated April 23, 2019, that explained AGLIC's denial of coverage for the Opioid Lawsuits, while fully reserving its rights under all terms and conditions of all applicable policies. Insofar as the allegations contained in Paragraph 78 of the Complaint can be construed as inferring, implying or asserting that any AGLIC Excess Policy afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations. AGLIC otherwise denies the allegations of Paragraph 78 to the extent they are directed at AGLIC. Insofar as the allegations contained in Paragraph 78 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

79.     Insofar as the allegations contained in Paragraph 79 of the Complaint can be construed as inferring, implying or asserting that any AGLIC Excess Policy afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations. AGLIC otherwise denies the allegations of Paragraph 79 to the extent they are directed at AGLIC. Insofar as the allegations contained in Paragraph 79 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

131363736v1 0976954

80.     AGLIC admits only that it received correspondence from Plaintiffs' counsel dated January 29, 2019. AGLIC states that such correspondence speaks for itself and denies the allegations of Paragraph 80 to the extent they are inconsistent with that correspondence. Insofar as the allegations contained in Paragraph 80 are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

81.     AGLIC admits that it sent a letter to Giant Eagle dated December 21, 2018 in which it acknowledged certain of the Opioid Lawsuits and agreed to investigate the matters "under a full reservation of, and without prejudice to, any and all rights which AGLIC may have under the referenced Policy." AGLIC also admits that it sent a letter to Giant Eagle dated April 23, 2019 in which it explained why AGLIC had no coverage obligations for the Opioid Lawsuits, while fully reserving its rights under all terms and conditions of all applicable policies. AGLIC states that the December 21, 2018 and April 23, 2019 letters speak for themselves and denies the allegations of Paragraph 81 to the extent they are inconsistent with the letters.

82.     AGLIC admits only that it sent a letter dated April 23, 2019 in which it explained why AGLIC had no coverage obligations for the Opioid Lawsuits, while fully reserving its rights under all terms and conditions of all applicable policies. AGLIC further states that the April 23, 2019 letter speaks for itself and denies the allegations of Paragraph 82 to the extent they are inconsistent with that letter. Insofar as the allegations contained in Paragraph 82 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations. AGLIC otherwise denies the allegations of Paragraph 82 of the Complaint.

131363736v1 0976954

83.     AGLIC admits only that it sent a letter dated April 23, 2019 in which it explained why AGLIC had no coverage obligations for the Opioid Lawsuits, while fully reserving its rights under all terms and conditions of all applicable policies. AGLIC further states that the April 23, 2019 letter speaks for itself and denies the allegations of Paragraph 83 to the extent they are inconsistent with that letter. Insofar as the allegations contained in Paragraph 83 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations. AGLIC further states that the underlying complaints in the Opioid Lawsuits speak for themselves and denies the allegations of Paragraph 83 to the extent they are inconsistent with the underlying complaints. AGLIC is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 83 and, on that basis, denies the allegations.

84.     Insofar as the allegations contained in Paragraph 84 of the Complaint are directed at parties other than AGLIC, no response is required. To the extent a response is required, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

## FIRST CAUSE OF ACTION

(Against All Defendants)

(Declaratory Relief ó Duty to Defend and Pay All Defense Expenses in the Opioid Lawsuits)

85.     AGLIC incorporates herein by reference all paragraphs of this Answer, including all denials, as if the same were set forth herein.

86.     AGLIC denies the allegations contained in paragraph 86 of the Complaint.

87.     AGLIC denies the allegations contained in paragraph 87 of the Complaint.

131363736v1 0976954

88.     AGLIC admits only that it sent a letter dated April 23, 2019 in which it explained why it had no coverage obligations for the Opioid Lawsuits, while fully reserving its rights under all terms and conditions of all applicable policies. Insofar as the allegations contained in Paragraph 88 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations. AGLIC otherwise denies the allegations of Paragraph 88 to the extent they are directed at AGLIC.  Insofar as the allegations contained in Paragraph 88 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

89.     To the extent that Paragraph 89 of the Complaint purports to set forth a summary of the action or consists of legal conclusions, no response by AGLIC is required. To the extent the allegations contained in Paragraph 89 can be construed as inferring, implying or asserting that AGLIC owes insurance coverage to Plaintiffs under any policy with respect to any claim referenced in the Complaint, AGLIC denies the allegations. To the extent the allegations contained in Paragraph 89 are directed to parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations.

90.     To the extent that Paragraph 90 of the Complaint purports to set forth a summary of the action or consists of legal conclusions, no response by AGLIC is required. To the extent the allegations contained in Paragraph 90 can be construed as inferring, implying or asserting that AGLIC owes insurance coverage to Plaintiffs under any policy with respect to any claim referenced in the Complaint, AGLIC denies the allegations. To the extent the allegations

24

contained in Paragraph 90 are directed to parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations.

91.     To the extent that Paragraph 91 of the Complaint purports to set forth a summary of the action or consists of conclusions of law, no response by AGLIC is required. AGLIC otherwise denies the allegations contained in Paragraph 91.

92.     To the extent that Paragraph 92 of the Complaint purports to set forth a summary of the action or consists of legal conclusions, no response by AGLIC is required. To the extent a response is required, AGLIC denies that Plaintiffs are entitled to any of the declaratory relief sought with respect to AGLIC. To the extent the allegations of Paragraph 92 are directed to parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 92 and, on that basis, denies those allegations.

## SECOND CAUSE OF ACTION

(Against All Defendants)

(Breach of Contract ó Duty to Defend and Pay All Defense Expenses in the Opioid Lawsuits)

93.     AGLIC incorporates herein by reference all preceding paragraphs of this Answer, including all denials, as if the same were set forth herein.

94.     AGLIC states that any written notice(s) speak for themselves and denies the allegations of Paragraph 94 to the extent they are inconsistent with such notices. To the extent the allegations contained in Paragraph 94 can be construed as inferring, implying or asserting that AGLIC owes insurance coverage to Plaintiffs under any policy with respect to any claim referenced in the Complaint, AGLIC denies the allegations. To the extent the allegations

131363736v1 0976954

contained in Paragraph 94 are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies those allegations.

95.     AGLIC denies the allegations contained in paragraph 95 of the Complaint.

96.     AGLIC denies the allegations contained in paragraph 96 of the Complaint.

97.     To the extent the allegations of Paragraph 97 of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 97 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

98.     AGLIC admits only that it sent a letter to Giant Eagle dated April 23, 2019, in which it explained that AGLIC does not owe any coverage obligations for the Opioid Lawsuits, while fully reserving its rights under all terms and conditions of all applicable policies. Insofar as the allegations contained in Paragraph 98 of the Complaint can be construed as inferring, implying or asserting that any policy issued by AGLIC afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 98 of the Complaint can be construed as inferring, implying or asserting that AGLIC breached any contractual duties under any policy of insurance, AGLIC denies the allegations. AGLIC otherwise denies the allegations of Paragraph 98 to the extent they are directed to AGLIC. Insofar as the allegations contained in Paragraph 98 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

131363736v1 0976954

99.     To the extent the allegations of Paragraph 99 of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 99 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

### THIRD CAUSE OF ACTION

(Against All Defendants)

(Common Law Bad Faith)

100.    AGLIC incorporates herein by reference all preceding paragraphs of this Answer, including all denials, as if the same were set forth herein.

101.    AGLIC states that the AGLIC policies referenced by the Complaint speak for themselves and denies the allegations of Paragraph 101 to the extent they are inconsistent with those policies. Insofar as the allegations contained in Paragraph 101 of the Complaint can be construed as inferring, implying or asserting that any policy issued by AGLIC afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations. AGLIC otherwise denies the allegations of Paragraph 101, to the extent they are directed at AGLIC. Insofar as the allegations are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

102.    Insofar as Paragraph 102 of the Complaint consists of legal conclusions and makes no factual assertions against AGLIC, no response is required. Insofar as the allegations can be construed as inferring, implying or asserting that any policy issued by AGLIC afforded insurance coverage for any claims referenced in the Complaint, AGLIC denies the allegations.

131363736v1 0976954

To the extent that the allegations contained in Paragraph 102 of the Complaint can be construed as inferring, implying or asserting that AGLIC breached any contractual duties under any policy of insurance, AGLIC denies the allegations. AGLIC otherwise denies the allegations of Paragraph 102, to the extent they are directed at AGLIC. Insofar as the allegations are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

103.    To the extent the allegations of Paragraph 103 of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 103 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

104.    To the extent the allegations of Paragraph 104 of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 104 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

105.    To the extent the allegations of Paragraph 105 (including subparts) of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 105 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

106.    To the extent the allegations of Paragraph 106 of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 106 of

131363736v1 0976954

the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

107.    To the extent the allegations of Paragraph 107 of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 107 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

## FOURTH CAUSE OF ACTION

(Against All Defendants)

(Statutory Bad Faith)

108.    AGLIC incorporates herein by reference all preceding paragraphs of this Answer, including all denials, as if the same were set forth herein.

109.    Insofar as Paragraph 109 of the Complaint consists of legal conclusions and makes no factual assertions against AGLIC, no response is required. To the extent a response is required, insofar as the allegations contained in Paragraph 109 of the Complaint can be construed as inferring, implying or asserting that any policy issued by AGLIC afforded insurance coverage for any claims referenced in the Complaint, or that that AGLIC breached any contractual, statutory, or other legal duties under any policy of insurance, AGLIC denies the allegations. AGLIC otherwise denies the allegations of Paragraph 109, to the extent they are directed at AGLIC. Insofar as the allegations contained in Paragraph 109 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

131363736v1 0976954

110.    Insofar as Paragraph 110 of the Complaint consists of legal conclusions and makes no factual assertions against AGLIC, no response is required. To the extent a response is required, insofar as the allegations contained in Paragraph 110 of the Complaint can be construed as inferring, implying or asserting that any policy of insurance issued by AGLIC afforded insurance coverage for any claims referenced in the Complaint, or that AGLIC breached any contractual, statutory, or other legal duties under any policy of insurance, AGLIC denies the allegations. AGLIC otherwise denies the allegations of Paragraph 110 to the extent they are directed at AGLIC. Insofar as the allegations contained in Paragraph 110 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

111.    AGLIC states that any AGLIC insurance policy referenced by the Complaint speaks for itself and denies the allegations of Paragraph 111 to the extent they are inconsistent with such policies. Insofar as the allegations contained in Paragraph 111 of the Complaint can be construed as inferring, implying or asserting that any AGLIC policy afforded insurance coverage for any claims referenced in the Complaint, or that AGLIC breached any contractual, statutory, or other legal duties under any policy, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 111 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

112.    Insofar as Paragraph 112 of the Complaint consists of legal conclusions and makes no factual assertions against AGLIC, no response is required. To the extent a response is required, insofar as the allegations contained in Paragraph 112 of the Complaint can be construed as inferring, implying or asserting that any AGLIC policy afforded insurance coverage for any

131363736v1 0976954

claims referenced in the Complaint, or that AGLIC breached any contractual, statutory, or other legal duties under any policy, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 112 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

113.    Insofar as Paragraph 113 of the Complaint consists of legal conclusions and makes no factual assertions against AGLIC, no response is required. To the extent a response is required, insofar as the allegations contained in Paragraph 113 of the Complaint can be construed as inferring, implying or asserting that any AGLIC policy afforded insurance coverage for any claims referenced in the Complaint, or that AGLIC breached any contractual, statutory, or other legal duties under any policy, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 113 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

114.    To the extent the allegations of Paragraph 114 of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 114 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

115.    To the extent the allegations of Paragraph 115 of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 115 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or

131363736v1 0976954

information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

116.    To the extent the allegations of Paragraph 116 (including subparts) of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 116 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

117.    To the extent the allegations of Paragraph 117 of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 117 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

118.    To the extent the allegations of Paragraph 118 of the Complaint are directed to AGLIC, AGLIC denies the allegations. Insofar as the allegations contained in Paragraph 118 of the Complaint are directed at parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations and, on that basis, denies the allegations.

WHEREFORE, AGLIC denies that Plaintiffs are entitled to any of the relief sought in the Complaint's Prayer for Relief, including subparts (a)-(d) thereto, to the extent such relief is sought from or against AGLIC. Insofar as the Complaint's Prayer for Relief seeks relief with respect to parties other than AGLIC, AGLIC is without knowledge or information sufficient to form a belief as to the truth of the said allegations, and, on that basis, denies those allegations. AGLIC denies all allegations in the Complaint not herein expressly admitted.

## AFFIRMATIVE DEFENSES

AGLIC sets forth the following to apprise Plaintiffs of certain applicable defenses. AGLIC reserves the right to amend or re-state any defenses and/or to assert any additional defenses.  By listing a matter as an affirmative defense, AGLIC does not assume the burden of proving any matter upon which Plaintiffs bear the burden of proof under applicable law.

### First Affirmative Defense

Plaintiffsø claims are barred, in whole or in part, because Giant Eagle has failed to properly exhaust the applicable self-insured retentions, deductibles and limits of liability of the underlying Old Republic Primary Policies in the payment of covered claims, which is a prerequisite to coverage under any AGLIC Excess Policy.

### Second Affirmative Defense

Plaintiffsø claims are barred, in whole or in part, because the complaints in the Opioid Lawsuits do not seek covered damages because of õbodily injuryö or õproperty damageö caused by an õoccurrenceö within the coverage of the underlying Old Republic Primary Policies or the AGLIC Excess Policies.

### Third Affirmative Defense

Plaintiffsø claims are barred, in whole or in part, to the extent the complaints in the Opioid Lawsuits seek uncovered economic losses, penalties, restitution, equitable relief or punitive or treble damages as those amounts are not damages within the coverage of the Old Republic Primary Policies to which the AGLIC Excess Policies follow form or the AGLIC Excess Policies and/or insurable under applicable law.

131363736v1 0976954

### Fourth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because the complaints in the Opioid Lawsuits do not seek covered damages because of any "bodily injury" or "property damage" that took place during the period of any AGLIC Excess Policy.

### Fifth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, to the extent any insured knew that any purported "bodily injury" or "property damage" in the Opioid Lawsuits had occurred prior to the period of any AGLIC Excess Policies.

### Sixth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, to the extent any purported "bodily injury" or "property damage" in the Opioid Lawsuits was expected or intended by any insured.

### Seventh Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, to the extent any purported "bodily injury" or "property damage" in the Opioid Lawsuits was a known loss or loss in progress prior to the inception date of any AGLIC Excess Policy.

### Eighth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Giant Eagle failed to notify AGLIC as soon as practicable of any purported "occurrence" under the AGLIC Excess Policies.

### Ninth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, to the extent any purported "bodily injury" or "property damage" in the Opioid Lawsuits falls within the Druggist Professional Liability exclusion of the AGLIC Excess Policies effective April 1, 2009 to April 1, 2011.

131363736v1 0976954

### Tenth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, to the extent any purported "bodily injury" or "property damage" in the Opioid Lawsuits falls within the Professional Liability exclusion of the AGLIC Excess Policies April 1, 2011 to April 1, 2016.

### Eleventh Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, to the extent any other term, condition, definition or exclusion contained in the Old Republic Primary Policies to which the AGLIC Excess Policies follow form or in the AGLIC Excess Policies apply to bar or limit coverage for the Opioid Lawsuits.

### PRAYER FOR RELIEF

WHEREFORE, Defendant American Guarantee and Liability Insurance Company, respectfully requests that the Court:

    a.    Deny the relief and declarations requested by Plaintiffs in the Complaint;

    b.    Dismiss Plaintiffs' claims against AGLIC with prejudice; and

    c.    Award such other and further relief to AGLIC as the Court deems just and proper.

### COUNTERCLAIM

Defendant American Guarantee and Liability Insurance Company ("AGLIC"), for its Counterclaim against Plaintiffs Giant Eagle, Inc. ("Giant Eagle") and HBC Service Company (collectively, "Plaintiffs"), states as follows:

    1.    AGLIC incorporates by reference its Answer and Affirmative Defenses to the Plaintiffs' Complaint for Declaratory Judgment and Damages (the Complaint), as if fully set forth herein.

### *The Underlying Old Republic Primary Policies Issued to Giant Eagle*

2.      Old Republic Insurance Company ("Old Republic") issued primary commercial general liability policies to Giant Eagle as the named insured that were effective during the period of April 1, 2009 to April 1, 2018 (the "Old Republic Primary Policies").

3.      The Old Republic Primary Policies are summarized in the following chart:

| POLICY NUMBER | POLICY PERIOD | Limits of Liability and Self Insured Retention |
|---|---|---|
| MWZX 26658 | April 1, 2009 to April 1, 2010 | Total Aggregate Limit (Other Than Products Completed Operations) - $15 million<br><br>Designated Location Aggregate Limit (Other Than Products-Completed Operations) – $3 million<br><br>General Aggregate Limit (Other Than Products-Completed Operations) - $15 million<br><br>Products-Completed Operations Aggregate Limit- $3 million<br><br>Personal and Advertising Injury Limit – $3 million<br><br>Each Occurrence Limit - $1 million<br><br>Self Insured Retention - $1 million per occurrence, no aggregate (indemnity only) |
| MWZX 26669 | April 1, 2010 to April 1, 2011 | Same as above |
| MWZX 26706 | April 1, 2011 to April 1, 2014 | Same as above |
| MWZY 301188[1] | April 1, 2014 to April 1, 2015 | Same as above |
| MWZY 304638 | April 1, 2015 to April 1, 2016 | Same as above |
| MWZY 307316 | April 1, 2016 to April 1, 2017 | Same as above |

---

[1]      AGLIC is not in possession of a copy of this Old Republic Primary Policy. Upon information and belief, this policy is substantially identical to the other Old Republic Primary Policies.

131363736v1 0976954

| MWZY 310036 | April 1, 2017 to April 1, 2018 | Same as above |

4.      Each of the Old Republic Primary Policies contains an endorsement that provides that the "Each Occurrence Limit will apply in excess of the ‗self insured retention.'"

5.      The Insuring Agreement in the Old Republic Primary Policies provides, in relevant part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.      Insuring Agreement**
>
> > **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
> >
> > *                                *                                *
>
> **b.**      This insurance applies to "bodily injury" and "property damage" only if:
>
> > **(1)**      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> >
> > **(2)**      The "bodily injury" or "property damage" occurs during the policy period; and
> >
> > **(3)**      Prior to the policy period, no insured . . . and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the

37

õbodily injuryö or õproperty damageö had occurred, in whole or in part. . . .

\*              \*              \*

2. **Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

õBodily injuryö or õproperty damageö expected or intended from the standpoint of the insured. This exclusion does not apply to õbodily injuryö resulting from the use of reasonable force to protect persons or property.

\*              \*              \*

6. The Supplementary Payments Provision of the Old Republic Primary Policies provides:

**SUPPLEMENTARY PAYMENTS-COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any ÷suitø against an insured we defend:

a. All expenses we incur.

b. Up to $250 for costs of bail bonds . . . .

c. The cost of bonds to release attachments . . . .

d. All reasonable expenses incurred by the insured at our request to assist in the investigation or defense of the claim or ÷suit,ø . . .

e. All court costs taxed against the insured in the õsuitö . . . .

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. . . .

g. All interest on the full amount of any judgment that accrues after entry of the judgment . . . .

131363736v1 0976954

*These payments will not reduce the limits of insurance*. (Emphasis added).

7.      The Old Republic Primary Policies contain the following definitions:

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*                      \*                      \*

**13**. "Occurrence" means as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*                      \*                      \*

**17.** "Property damage" means:

    a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***The Old Republic Primary Policies' $1 Million Per Occurrence Self Insured Retention***

8.      Each of the Old Republic Primary Policies is subject to a "Self Insured Retention Endorsement" ("SIR Endorsement"), under which Giant Eagle is responsible for a $1 million per occurrence "self insured retention" that is not subject to an aggregate. Giant Eagle's defense costs, including attorney's fees, do not erode or satisfy the self insured retention.

9.      The SIR Endorsement of each Old Republic Primary Policy provides:

In consideration of the premium charged, the following provisions apply to the insurance provided by this policy and supersede any provision(s) to the contrary.

39

**SCHEDULE**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**"Self Insured Retention":** $1,000,000 Each Occurrence

\*                              \*                              \*

A.      Our obligations under the Coverages of the policy to pay damages on your behalf apply in excess of the õself insured retention.ö The amount of the õself insured retentionö is shown on the Schedule.

B.      The õself insured retentionö may be satisfied by any combination of the following:

   1.      Damages and medical expenses payable under the applicable Coverage(s).

   2.      Other amounts payable under the policy.

C.      Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expense(s) (ALAE) ***do not satisfy the "self insured retention."*** (Emphasis added).

   If Supplementary Payments and/or allocated loss adjustment expense(s) are not described in the policy, Supplementary Payments and/or allocated loss adjustment expense(s) are costs associated with the investigation or settlement of any claim or ÷suitø against an insured and ***include but are not limited to defense costs, attorneys' fees,*** premiums for appeal and bail bonds, prejudgment and post judgment interest . . . and/or reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or õsuit.ö (Emphasis added).

D.      In addition to the Scheduled õself insured retentionö you are responsible for payment of a proportion of Supplementary Payments and/or allocated loss adjustment expenses. . . . If there is no loss payment, your proportion of Supplementary Payments and/or allocated loss adjustment expenses is 100%.

131363736v1 0976954

E.      . . . ***The "self insured retention" is an each and every "self insured retention" and does not have an aggregate***. (Emphasis added).

F.      The õself insured retentionö will not reduce the applicable Limits of Insurance (Limits of Liability).

G.      We do not have a duty to investigate, defend or settle any claim or õsuitö for which there may be coverage under this insurance within the õself insured retention.ö Our right and duty to defend or settle any claim or õsuitö do apply to any claim or õsuitö that exceeds the õself insured retention.ö

You, at your own expense, must investigate, defend or settle all claims or õsuitsö within the õself insured retention.ö We retain the right to elect to join in the defense of such claims or õsuitsö and we will pay any expenses we incur in doing so.

\*                          \*                          \*

I.      The following is added to SECTION V ó DEFINITIONS

23.     õSelf insured retentionö means the amount the insured legally must pay with respect to claims or õsuitsö to which this insurance applies. This amount applies on the same basis (each claim, each õoccurrence,ö each employee, any one loss, any one person or organization, each common cause, etc.) as the applicable Limits of Insurance (Limits of Liability). The õself insured retentionö is an each and every õself insured retentionö and does not have an aggregate. The õself insured retentionö will not be satisfied by payment of any claim or õsuitö brought against the insured that would not be covered under the terms of this policy.

***The Deductible Endorsements Under the Old Republic Primary Policies***

10.     Each of the Old Republic Primary Policies includes a separate deductible endorsement (õDeductible Endorsementö) that provides that Giant Eagleøs deductible equals the indemnity limit of insurance under the policy. Each of the Deductible Endorsements further provides that ALAE (including Giant Eagleøs defense costs) ***do not*** satisfy the deductible.

41

11.     Each of the Old Republic Primary Policies, with the exception of Old Republic

Policy MWZY 304638 effective 4/1/15 to 4/1/16, includes a Deductible Endorsement which

provides:

> In consideration of the premium charged, the following provisions
> apply to the insurance provided by this policy and supersede any
> provision(s) to the contrary.
>
> A.     The Coverages of your policy are subject to deductibles.
> The deductible amount(s) equal the Limits of
> Insurance/Limits of Liability applicable to the Coverage
> under which a claim(s) is made or ösuit(s)ö is brought.
>
> The deductible will apply on the same basis as the
> Coverage Limits of Insurance/Limits of Liability applicable
> to the claim or ösuitö regardless of the number of persons
> or organizations who sustain damages.
>
> The deductible reduces the applicable Coverage Limits of
> Insurance/Limits of Liability.
>
> B.     In addition to the deductibles, you are responsible for
> reimbursing us for amounts we pay under Supplementary
> Payments, which include but are not limited to allocated
> loss adjustment expenses (ALAE).
>
> ***Amounts payable under Supplementary Payments and/or
> allocated loss adjustment expenses do not satisfy the
> deductible.*** (Emphasis added.)
>
> If Supplementary Payments and/or allocated loss
> adjustment expenses are not described in the policy,
> Supplementary Payments and/or allocated loss adjustment
> expenses are costs associated with the Investigation or
> settlement of any claim or ösuitö against an insured and
> ***include but are not limited to defense costs, attorneys'
> fees,*** premiums for appeal and bail bonds, prejudgment and
> post judgment interest . . . .  (Emphasis added.)

12.     Old Republic Primary Policy MWZY 304638, effective April 1, 2015 to April 1,

2016, contains an analogous **"SCHEDULED DEDUCTIBLE COVERAGE**

**ENDORSEMENT."** That Deductible Endorsement similarly provides that ALAEô including

Giant Eagle's defense costs and attorneys' fees— *do not* satisfy the deductible, but remain Giant

Eagle's responsibility:

> In consideration of the premium charged, the following provisions
> apply to the insurance provided by this policy and supercede any
> provision(s) to the contrary.

## SCHEDULE

**Deductible:** $ Equals the Limits of Insurance/Liability as provided
under the policy plus all ALAE/Supplementary Payments

A.   Our obligations under the Coverages of the policy to pay
damages are subject to a deductible. The deductible is
shown in the Schedule.

Our obligations to pay damages apply only to the amount
of damages in excess of the deductible shown in the
Schedule.

B.   The deductible may be satisfied by any combination of the
following:

1.   Damages and medical expenses payable under the
applicable Coverage(s).

2.   Other amounts payable under the policy.

3.   Amounts payable under Supplementary Payments,
which include but are not limited to allocated loss
adjustment expenses (ALAE):

\*                              \*                              \*

[X]   *Amounts payable under Supplementary Payments,
which include but are not limited to allocated loss
adjustment expenses (ALAE) do not satisfy the
deductible.* In addition to the Scheduled deductible
you are responsible for payment of Supplementary
Payments and/or allocated loss adjustment
expenses.

If Supplementary Payments and/or allocated loss adjustment
expenses (ALAE) are not described in the policy, Supplementary
Payments and/or allocated loss adjustment expenses are costs

131363736v1 0976954

associated with the investigation or settlement of any claim or "suit" against an insured and include but are not limited to defense costs, attorneys' fees, premiums for appeal and bail bonds, prejudgment and post judgment interest, expenses incurred by the insurer, first aid expenses, and/or reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or "suit."

**C.**     The deductible will apply on the same basis as the Coverage(s) Limits of Insurance/Limit of Liability applicable to the claim or "suit" regardless of the number of persons or organizations who sustain damages.

**D.**     The deductible amounts:

*                              *                              *

[X]     Described in paragraph B.1. and B.2 will reduce the applicable Limits of Insurance/Limits of Liability.

*Giant Eagle Acknowledges Its Responsibility for Defense Costs Under the Old Republic Primary Policies*

13.     The Old Republic Primary Policies provided that  the deductible was equal to the limits of each policy. Further, Giant Eagle was responsible for all of its own defense costs, including attorney's fees. Giant Eagle's defense costs do not erode either the deductible or the self insured retention under the Old Republic Primary Policies.

14.     Giant Eagle repeatedly acknowledged this understanding in submissions sent to AGLIC through Giant Eagle's brokers from at least 2012 to 2016. Each of those Giant Eagle submissions, in describing the underlying Old Republic Primary Policies, acknowledges the $1 million "Self-Insured Retention* - Per Occurrence" and further states: "*Loss adjustment expenses do not erode retention; prorated when damages exceed retention*." (Emphasis added).

15.     Old Republic also expressly informed Giant Eagle (through Giant Eagle's broker, the Willis Group) in its proposals for the Old Republic Policies that Giant Eagle would be responsible for a $1 million per occurrence self insured retention.

44

16.     Each of the Old Republic proposals specified that Giant Eagle would remain responsible for allocated loss adjustment expenses ("ALAE"), which include defense costs, and that ALAE did not erode the self insured retention. These Old Republic proposals stated that: "*ALAE is in addition to the Insured's Retention for Loss and the Policy Limits. The insured is responsible for all Loss and ALAE*." (Emphasis added).

17.     Similarly, in a March 6, 2012 email response to questions by AGLIC's underwriter, Giant Eagle's broker described the self insured retention under the Old Republic Primary Policies as follows: "First, I wanted to be sure everyone understands the structure of the program. Giant Eagle assumes the first 1,000,000 SIR on all claims. Above that sits the Old Republic layer for General Liability. *Expenses are outside the SIR*." (Emphasis added).

18.     Giant Eagle's ALAE, including defense costs, do not erode the limits or self insured retention of the Old Republic Primary Policies. Thus, Giant Eagle's alleged defense costs with respect to the Opioid Lawsuits do not exhaust the Old Republic Primary Policies.

### The AGLIC Excess Policies

19.     AGLIC issued seven excess or umbrella insurance policies effective during the period of April 1, 2009 to April 1, 2016 (the "AGLIC Excess Policies"), each of which provided coverage in excess of one of the underlying Old Republic Primary Policies, as indicated below:

| AGLIC Policy Number | Policy Period | Underlying Old Republic Primary Policy |
|---|---|---|
| AUC 2856587-11 | 4/1/09-4/1/10 | MWZX 26658 |
| AUC 2856587-12 | 4/1/10-4/1/11 | MWZX 26669 |
| AUC 2856587-13 | 4/1/11-4/1/12 | MWZX 26706 |
| AUC 2856587-14 | 4/1/12-4/1/13 | MWZX 26706 |
| AUC 2856587-15 | 4/1/13-4/1/14 | MWZX 26706 |
| AUC 2856587-16 | 4/1/14-4/1/15 | MWZX 301188 |
| AUC 2856587-17 | 4/1/15-4/1/16 | MWZX 304638 |

131363736v1 0976954

20.     Each of the AGLIC Excess Policies provides $25 million in excess coverage, in excess of the underlying Old Republic Primary Policies.

21.     The AGLIC Excess Policies provide both excess follow form liability insurance (Coverage A) and umbrella liability insurance (Coverage B).

22.     Coverage A of the AGLIC Excess Policies follows form to the Old Republic Primary Policies and applies in excess of the total applicable limits of underlying insurance (*i.e.*, the Old Republic Primary Policies). Coverage A requires that: the insured be legally obligated to pay damages because of "bodily injury" or "property damage"; the "bodily injury" or "property damage" occur during the policy period; and the "bodily injury" or "property damage" be caused by an "occurrence."

23.     In addition, Coverage B of the AGLIC Excess Policies – the umbrella liability insurance – applies in excess of the greater of the "retained limit" or the amount payable by "other insurance," and potentially applies only if there is no coverage under the underlying Old Republic Primary Policies.

24.     Coverage B, like Coverage A, also requires that the insured be legally obligated to pay damages because of "bodily injury" or "property damage"; the "bodily injury" or "property damage" occur during the policy period; and the "bodily injury" or "property damage" be caused by an "occurrence."

25.     The AGLIC Excess Policies effective April 1, 2009 to April 1, 2011 contain the following provisions:

**Insuring Agreements**

**SECTION I.  COVERAGE**

**A.  Coverage A – Excess Follow Form Liability Insurance**

131363736v1 0976954

Under **Coverage A,** we will pay on behalf of the **insured,** those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**. With respect to Coverage A, the terms and conditions of **underlying insurance** are made a part of this policy, except with respect to:

1.  Any contrary provision contained in this policy; or

2.  Any provisions in this policy for which a similar provision is not contained in **underlying insurance.**

With respect to the exceptions stated above, the provisions of this policy will apply.

Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable limits of insurance by payment of claims, then **Coverage A** does not apply to such damages.

B. **Coverage B – Umbrella Liability Insurance**

Under **Coverage B**, we will pay on behalf of the **insured**, sums as damages the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** because of **bodily injury, property damage,** or **personal and advertising injury** covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an **occurrence** happening anywhere. We will pay such damages in excess of the **Retained Limit** specified in Item **5.** of the Declarations or the amount payable by **other insurance**, whichever is greater.

**Coverage B** will not apply to any **loss,** claim or **suit** for which insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the limits of insurance of **underlying insurance.**

\*                          \*                          \*

**SECTION III. DEFENSE AND SUPPLEMENTARY PAYMENTS**

131363736v1 0976954

A.   We have the right and duty to assume control of the investigation and settlement of any claim, or defense of any **suit** against the **insured** for damages covered by this policy:

   1.   Under **Coverage A,** when the applicable limit of **underlying insurance** has been exhausted by payment of claims for which coverage is afforded under this policy; or

   2.   Under **Coverage B,** when damages are sought for **bodily injury, property damage, personal and advertising injury** to which no **underlying insurance** or **other insurance** applies.

   \*                    \*                    \*

C.   In those circumstances where paragraph **A.** above does not apply, we do not have the duty to assume control of the investigation and settlement of any claim, or defense of any **suit** against the **insured**. We do, however, have the right to participate in the investigation and settlement of any claim, or defense of any **suit** that we feel may create liability on our part under the terms of this policy. If we exercise this right, we will do so at our expenseí .

26.   The AGLIC Excess Policies effective April 1, 2011 to April 1, 2016 provide, in relevant part:

**Insuring Agreements**

**SECTION I.  COVERAGE**

A.   **Coverage A – Excess Follow Form Liability Insurance**

   Under **Coverage A,** we will pay on behalf of the **insured** those damages covered by this insurance in excess of the total applicable limits of **underlying insurance.** With respect to **Coverage A,** this policy includes:

   1.   The terms and conditions of **underlying insurance** to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph **2.** below;

131363736v1 0976954

2.      The terms and conditions that apply to **Coverage A** of this policy.

Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of **loss**, then **Coverage A** does not apply to such damages. Also, **Coverage A** does not apply to any form of **casualty business crisis expense** insurance even if such insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance.**

**B.**      **Coverage B – Umbrella Liability Insurance**

Under **Coverage B,** we will pay on behalf of the **insured** those damages the **insured** becomes legally obligated to pay by reason of liability:

1.      Imposed by law because of **bodily injury, property damage, or personal and advertising injury**;

2.      Assumed under an **insured contract** because of **bodily injury or property damage;**

covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an **occurrence** happening anywhere. We will pay such damages in excess of the **Retained Limit** specified in Item **5** of the Declarations or the amount payable by **other insurance,** whichever is greater.

**Coverage B** does not apply to any **loss,** claim or **suit** for which insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance.**

\*                          \*                          \*

**SECTION III. DEFENSE AND SUPPLEMENTARY PAYMENTS**

**A.**      We have the right and duty to assume control of the investigation and settlement of any claim, or defense of any

**suit** against the **insured** for damages covered by this policy:

1.    Under **Coverage A,** when the applicable limit of **underlying insurance** and **other insurance** has been exhausted by payment of **loss** for which coverage is afforded under this policy; or

2.    Under **Coverage B**, when damages are sought for **bodily injury, property damage**, or **personal and advertising injury** to which no **underlying insurance** or **other insurance** applies.

\*          \*          \*

D.    In those circumstances where paragraph **A.** above does not apply, we do not have the duty to assume control of the investigation and settlement of any claim, or defense of any **suit** against the **insured.** We do, however, have the right to participate in the investigation and settlement of any claim, or defense of any **suit** that we feel may create liability on our part under the terms of this policy. If we exercise, this right, we will do so at our expenseí .

27.    The AGLIC Excess Policies effective April 1, 2009 to April 1, 2016 contain the following exclusion for Coverage B:

**SECTION IV. EXCLUSIONS**

\*          \*          \*

C.    Under **Coverage B** this policy does not apply to:

\*          \*          \*

**INTENTIONAL INJURY**

**4.**    **Bodily injury** or **property damage** expected or intended from the standpoint of the **insured.** This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

28.    With respect to Coverages A and B, the AGLIC Excess Policies contain the following definition of ðOther Insuranceö:

**Other insurance** means a policy of insurance providing coverage that this policy also provides. **Other insurance** includes any type

50

of self-insurance or other mechanism by which an **insured** arranges for funding of legal liability.

**Other insurance** does not include **underlying insurance** or a policy of insurance specifically purchased to be excess of this policy providing coverage that this policy also provides.

29.     With respect to Coverage B, the AGLIC Excess Policies contain the following definition of "bodily injury":

**Bodily injury** means physical injury, sickness, or disease, including death of a person. **Bodily injury** to such person also means mental anguish, mental injury, humiliation, or shock if directly resulting from physical injury, sickness, or disease.

30.     With respect to Coverage B, the AGLIC Excess Policies state that "occurrence" means:

a.      With respect to **bodily injury** or **property damage** liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions .

31.     With respect to Coverage B, the AGLIC Excess Policies state that "property damage" means:

a.      Physical injury to tangible property, including all resulting loss or use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **occurrence** that caused it.

32.     Coverage B of the AGLIC Excess Policies effective April 1, 2009 to April 1, 2011 also excludes Druggist Professional Liability.

33.     Coverage B of the AGLIC Excess Policies effective April 1, 2011 to April 1, 2015 excludes all professional liability.

51

34.     Coverage B of the AGLIC Excess Policy effective April 1, 2015 to April 1, 2016 also excludes all professional liability.

### Giant Eagle's Initial Tender of Opioid Lawsuits to Old Republic, AGLIC and XL

35.     Prior to January 29, 2019, Giant Eagle notified AGLIC that HBC had been served as a defendant in the following four opioid-related lawsuits:

> a.  *County of Summit, Ohio v. Purdue Pharma, L.P.*, Case No. 18-op-45090 (N.D. Ohio);
>
> b.  *City of Cleveland, Ohio v. Purdue Pharma, L.P.*, Case No. 18-op-45132 (N.D. Ohio);
>
> c.  *County of Cuyahoga, Ohio v. Purdue Pharma, L.P.*, Case No. 17-op-45004 (N.D. Ohio); and
>
> d.   *City of Barberton, Ohio v. Purdue Pharma, L.P.*, Case No. 18-op-45767 (N.D. Ohio).

Those four lawsuits (the first four lawsuits) were transferred to the *In re National Prescription Opiate Litigation*, MDL No. 2804 pending before Judge Polster in the Northern District of Ohio.

36.     By letter dated January 29, 2019 ("January 2019 Demand Letter") Giant Eagle demanded that Old Republic, as well as AGLIC and XL Specialty Insurance ("XL") acknowledge their duties to defend the first four lawsuits.

37.     In the January 2019 Demand Letter, Giant Eagle claimed that it had initially notified Old Republic, AGLIC, and XL of the first four lawsuits in June 2018 and again in September 2018.  According to the January 2019 Demand Letter, in response to Giant Eagle's requests, "Old Republic has requested a coverage opinion from Giant Eagle's outside coverage counsel."

38.     In the January 2019 Demand Letter, Giant Eagle stated its position that Old Republic owed a duty to defend Giant Eagle in the first four lawsuits, because they alleged damages õ—because of bodily injuryø in the language of the Old Republic Policies.ö

39.     With respect to AGLIC, Giant Eagleøs January 2019 Demand Letter alleged that õ[AGLIC]øs duty to defend is triggered immediately when *either*: (1) Old Republicøs limit of liability has been exhausted; *or* (2) Old Republic denies its duty to defend.ö

40.     In the January 2019 Demand Letter, Giant Eagle claimed that it had õincurred in excess of $1 million in defense costsö for the first four lawsuits.  Giant Eagle stated: õGiant Eagleøs defense costs have exhausted its $1 million obligation and triggered the obligation of Insurers [Old Republic, AGLIC, and XL] to provide Giant Eagle with a full defense. Giant Eagle hereby demands that the Insurers immediately reimburse all past defense costs in excess of $1 million and agree to advance all future defense costs on an ongoing basis.ö

41.     The January 2019 Demand Letter also informed Old Republic, AGLIC, and XL that HBC had been named as a defendant in two additional opioid lawsuits:

   a.   *Cleveland Bakers & Teamsters Health & Welfare Fund v. Purdue Pharma, L.P.*, Case No. 18-op-45432 (N.D. Ohio); and

   b.   *Mental Health & Recovery Servs. Board of Allen v. Purdue Pharma, L.P.*, Case No. 18-op-46344 (N.D. Ohio).

Giant Eagle õdemand[ed] full defense coverage for these lawsuits.ö

### *AGLIC Denies Coverage*

42.     In a letter to Giant Eagle dated April 23, 2019 (the õApril 2019 Letterö), AGLIC denied coverage with respect to the six opioid-related lawsuits referenced in Giant Eagleøs January 2019 Demand Letter. AGLIC explained that it had no coverage obligation under either

Coverage A or Coverage B of the AGLIC Excess Policies for multiple reasons, including: (1) the underlying lawsuits did not seek damages because of bodily injury or property damage, and (2) in any event, Giant Eagle's alleged defense costs did not exhaust the underlying Old Republic Primary Policies.

43.     With respect to Coverage A, AGLIC first stated that "AGLIC has no obligation to defend . . . when the limits of underlying insurance and/or other insurance is not exhausted, which is the case here." The April 2019 Letter explained: "Each of the Old Republic Primary Policies . . . is subject to an SIR [self-insured retention] of $1M each occurrence, satisfied only by indemnity and not defense costs. Because those SIRs are not impaired by any payment of indemnity for the Opioid Lawsuits, and because the limits of the Old Republic Primary Policies also are not exhausted, it is premature to determine whether Coverage A of the AGLIC Umbrella Policies is implicated."

44.     AGLIC's April 2019 Letter further explained that Coverage A would otherwise not apply because the six opioid-related lawsuits sought economic damages, rather than damages because of bodily injury or property damage.

45.     AGLIC's April 2019 Letter also stated that it had no coverage obligation under Coverage B of the of the AGLIC Excess Policies for these same reasons and that "Coverage B which may be implicated . . . only where no underlying insurance and/or other insurance (*i.e.*, the Old Republic Primary Policies) applies. However, with respect to the Opioid Lawsuits, Coverage B of the AGLIC Excess Policies provides no broader coverage than that of the Old Republic Primary Policies."

46.     AGLIC's April 2019 Letter fully reserved its rights under all terms and conditions of all AGLIC Excess Policies.

131363736v1 0976954

*Giant Eagle Files an Ohio State Court Lawsuit Against Old Republic, AGLIC and XL*

47.     On May 28, 2019, Giant Eagle initiated a declaratory judgment action in the Court of Common Pleas of Cuyahoga County, Ohio (the "Ohio Lawsuit") by filing a Complaint for Declaratory Relief and Damages (the "Ohio Complaint") against each of Old Republic, AGLIC, and XL.

48.     The Ohio Complaint sought a declaration that each of Old Republic, XL and AGLIC had a duty to defend Giant Eagle against five opioid lawsuits. Specifically, the Ohio Complaint sought declaratory relief with respect to the same lawsuits referenced in Giant Eagle's January 2019 Letter, with the exception of *Cleveland Bakers & Teamsters Health & Welfare Fund v. Purdue Pharma, L.P.*, Case No. 18-op-45432 (N.D. Ohio).

49.     The Ohio Complaint referenced the January 2019 Demand Letter and Old Republic's response thereto. Giant Eagle pleaded that on February 15, 2019, "Old Republic responded to the [January 2019 Demand Letter] . . . with an email to Giant Eagle's in-house insurance analyst." According to the Ohio Complaint, Old Republic responded to Giant Eagle as follows:

> As you are aware coverage is provided to Giant Eagle by Old Republic Insurance on a Limits equals Matching deductible basis, and all ALAE costs are outside of the deductible and the limit. In essence it is all Giant Eagles [sic] money. It was our understanding that Giant Eagle has been handling and continues to handle the defense of this matter pursuant to applicable policy deductibles.

50.     In the Ohio Complaint, Giant Eagle pleaded that "Old Republic's cryptic response to Giant Eagle's demand is incorrect, purposefully misleading, and inconsistent with the plain and unambiguous language of its policies."

51.     The Ohio Complaint included four causes of action, each of which was asserted against Old Republic, AGLIC, and XL: (1) declaratory relief regarding the "Duty to Defend and

131363736v1 0976954

Pay All Defense Expenses in the Opioid Lawsuitsö; (2) breach of contract based on the same alleged duty to defend; (3) common law bad faith; and (4) statutory bad faith pursuant to 42 Pa. Cons. Stat. § 8371.

52.     On July 25, 2019 AGLIC filed its answer and affirmative defenses in the Ohio Lawsuit.

### Giant Eagle's July 25, 2019 Tender of Seven Additional Opioid Lawsuits

53.     By letter dated July 25, 2019, Giant Eagle notified Old Republic, AGLIC, and XL that Giant Eagle had been named as a defendant in the following seven additional opioid lawsuits:

a.     *Geauga County Board of Commissioners v. AmerisourceBergen Drug Corp.*, *et al.*, No. 1:18-op-45256-DAP (N.D. Ohio);

b.     *Columbiana County Board of County Commissioners v. AmerisourceBergen Drug Corp.*, *et al.*, No. 1-18-op-45289-DAP;

c.     *City of Saratoga Springs v. Purdue Pharma L.P.*, Civil Action No. 1:19-cv-00789 (N.D.N.Y.);

d.     *City of Rochester v. Purdue Pharma L.P.*, Civil Action No. 6:19-cv-06490 (W.D.N.Y.);

e.     *City of Auburn v. Purdue Pharma L.P.*, Civil Action No. 2:19-cv-03800 (E.D.N.Y.);

f.     *City of Poughkeepsie v. Purdue Pharma, et. al.*, Civil Action No. 9:19-cv-06800-KMK (S.D.N.Y.); and

g.     *City of Ogdensburg v. Purdue Pharma L.P.*, Civil Action No. 8:19-cv-00782 (N.D.N.Y.).

131363736v1 0976954

In its letter, Giant Eagle õrequest[ed] XLøs and [AGLICøs] agreement to defend each of these lawsuits under the applicable policies.ö Giant Eagle did not request that Old Republic defend the lawsuits identified in its July 25, 2019 letter.

### Giant Eagle Dismisses the Ohio Complaint and Commences This Action

54.     On July 26, 2019, Giant Eagle filed a notice of voluntary dismissal in the Ohio Lawsuit, without prejudice.

55.     On the same date, Giant Eagle commenced the instant declaratory judgment action by filing its Complaint and Demand for Jury Trial (the õComplaintö). Notably, unlike the Ohio Lawsuit, Giant Eagle did *not* name Old Republic as a defendant. The Complaint seeks a declaration of AGLIC or XLøs duty to defend Giant Eagle with respect to a total of twelve opioid lawsuits, consisting of: (1) the five lawsuits that were the subject of the Ohio Lawsuit, as well as (2) the seven additional lawsuits identified in Giant Eagleøs July 25, 2019 tender letter.

### Giant Eagle's July 31, 2019 Tender of Four Additional Opioid Lawsuits

56.     In addition to the twelve lawsuits identified in the Complaint as the õOpioid Lawsuitsö, Giant Eagle, by letter dated July 31, 2019, notified AGLIC that Giant Eagle had been named as a defendant in the following four additional opioid lawsuits:

> a.     *The County of Trumbull, Ohio v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op- 45079-DAP (N.D. Ohio);
>
> b.      *The County of Lake, Ohio, v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45032-DAP (N.D. Ohio);
>
> c.     *The City of Warren, Ohio v. Purdue Pharma, L.P. et al.*, Case No. 18-op-45434-DAP (N.D. Ohio); and

131363736v1 0976954

d.    *County of Kaua'i v. Purdue Pharma, et. al.*, Case No. 1:19-cv-00377-LEK-KJM (D. Haw.).

In the July 31, 2019 letter, Giant Eagle "request[ed] XL's and Zurich's agreement to defend each of these lawsuits under the applicable policies and requests consent to the retention of Marcus & Shapira as lead counsel in connection with the actions."

### AGLIC's August 26, 2019 Denial of Coverage

57.    On August 26, 2019, AGLIC issued a letter to Giant Eagle in response to Giant Eagle's letters of July 25, 2019 and July 31, 2019 (the "August 2019 Letter"). In the August 2019 Letter, AGLIC explained that it denied coverage for the seven lawsuits referenced in the July 25, 2019 letter, as well as the four additional lawsuits referenced in the July 31, 2019 letter. The August 2019 Letter denied coverage for the same reasons set forth in AGLIC's April 2019 Letter, including that: (1) the underlying lawsuits did not seek damages because of bodily injury or property damage, and (2) in any event, Giant Eagle's alleged defense costs did not exhaust the underlying Old Republic Primary Policies.

### AGLIC's Claims against Giant Eagle

58.    AGLIC seeks a declaratory judgment that it has no duty to defend or indemnify Giant Eagle under the AGLIC Excess Policies with respect to the twelve lawsuits identified in the Complaint and the four additional opioid lawsuits identified in Giant Eagle's July 31, 2019 Letter (all sixteen actions, collectively, the "Opioid Lawsuits") on multiple grounds.

59.    The complaints in the Opioid Lawsuits do not seek covered damages because of "bodily injury" or "property damage" caused by an "occurrence" within the scope of coverage of the Old Republic Primary Policies – which act as primary coverage here – or the AGLIC Excess Policies – which act only as excess coverage here.

131363736v1 0976954

60.     Additionally, AGLIC seeks a declaration that AGLIC's Excess Policies have not been triggered, because Giant Eagle's alleged defense costs for the Opioid Lawsuits do not erode the Self-Insured Retention or the limits of liability of any Old Republic Primary Policy.

61.     Resolution of the dispute in this case also may require additional declaratory relief, including determinations with respect to the number of occurrences presented by the Opioid Lawsuits, the applicable policy year in which any alleged injuries or damage first manifested under Pennsylvania law, and whether other potential defenses to coverage apply to bar coverage for the Opioid Lawsuits.

## COUNT I

### Declaratory Relief – No Duty To Defend or Indemnify Under the AGLIC Excess Policies Because the Opioid Lawsuits Do Not Seek Damages Because of Bodily Injury or Property Damage

62.     AGLIC restates and realleges paragraphs 1-62 of its Counterclaim as though fully set forth herein.

63.     Giant Eagle has asserted that it is entitled to be defended under the AGLIC Excess Policies for the Opioid Lawsuits.

64.     AGLIC seeks a determination that it has no duty to defend or indemnify Giant Eagle for the Opioid Lawsuits, under either Coverage A or Coverage B of the AGLIC Excess Policies.

65.     Coverage A of the AGLIC Excess Policies provides excess follow form liability insurance under which AGLIC will pay, in excess of the underlying limits of the Old Republic Primary Policies, only those damages covered by the underlying Old Republic Primary Policies.

66.      None of the Opioid Lawsuits seeks damages covered by the Old Republic Primary Policies.  Specifically, none of the Opioid Lawsuits seeks damages because of "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined in the Old

131363736v1 0976954

Republic Primary Policies. Rather, the Opioid Lawsuits seek economic damages. Thus, Coverage A of the AGLIC Excess Policies is not implicated by the Opioid Lawsuits.

67.    AGLIC also has no obligation to defend or indemnify Giant Eagle for the Opioid Lawsuits under Coverage B of the AGLIC Excess Policies. Coverage B provides umbrella liability coverage where no underlying insurance (i.e., the Old Republic Primary Policies) applies. However, with respect to the Opioid Lawsuits, Coverage B provides no broader coverage than that of the Old Republic Primary Policies. Coverage B provides coverage for damages the insured becomes obligated to pay "because of **bodily injury**" or "**property damage**." None of the Opioid Lawsuits seeks damages because of "bodily injury" or "property damage" as those terms are defined in the AGLIC Excess Policies. Rather, the Opioid Lawsuits seek economic damages. Thus, the Opioid Lawsuits do not implicate any duty to defend or indemnify under Coverage B of the AGLIC Excess Policies.

68.    Pursuant to 28 U.S.C. § 2201, an actual and justiciable controversy exists between Giant Eagle and AGLIC concerning any duty to defend or indemnify the Opioid Lawsuits under the AGLIC Excess Policies.

## COUNT II

### Declaratory Relief - Giant Eagle's Defense Costs Do Not Erode the $1 Million Per Occurrence Self-Insured Retention of the Underlying Old Republic Primary Policies And Thus Do Not Exhaust the Old Republic Primary Policies

69.    AGLIC restates and realleges paragraphs 1-69 of its Counterclaim as though fully set forth herein.

70.    Even assuming that any of the Opioid Lawsuits alleged covered damages because of "bodily injury" or "property damage" caused by an "occurrence" to implicate Old Republic's

duty to defend – which they do not – Giant Eagle's defense costs do not exhaust the $1 million Self Insured Retention under the Old Republic Primary Policies.

71.     Giant Eagle alleges that its payment of defense costs in the Opioid Lawsuits, including attorneys' fees, exhausts the $1,000,000 per occurrence self insured retention in the underlying Old Republic Primary Policies, a necessary prerequisite to triggering any coverage under those policies.

72.     It is AGLIC's position that Giant Eagle has failed to exhaust the $1,000,000 per occurrence Self Insured Retention under any of the underlying Old Republic Primary Policies.

73.     Giant Eagle's defense costs incurred with respect to the Opioid Lawsuits, including attorney's fees, constitute "allocated loss adjustment expense(s)" (ALAE) under the Old Republic Primary Policies.

74.     Under the SIR Endorsements contained in the Old Republic Policies, ALAE ***does not*** erode or satisfy the $1,000,000 per occurrence Self Insured Retention. Thus, Giant Eagle's defense costs cannot satisfy the Self Insured Retention.

75.     Giant Eagle has not alleged or identified any other payments that it made in relation to the Opioid Lawsuits that would erode or satisfy the $1,000,000 per occurrence Self Insured Retention.

76.     As Giant Eagle has not exhausted the $1,000,000 per occurrence Self Insured Retention under any of the primary Old Republic Primary Policies, coverage under the AGLIC Excess Policies has not been triggered and, thus, AGLIC has no coverage obligation for the Opioid Lawsuits.

131363736v1 0976954

77.     Pursuant to 28 U.S.C. § 2201, an actual and justiciable controversy exists between Giant Eagle and AGLIC concerning whether Giant Eagle's defense costs erode or satisfy the $1 million Self Insured Retention under any of the primary Old Republic Primary Policies.

## COUNT III

### Declaratory Relief - Giant Eagle's Defense Costs Do Not Erode the Deductible/Limits of Liability of the Old Republic Primary Policies, And Thus Do Not Exhaust Those Policies

78.     AGLIC restates and realleges paragraphs 1-78 of its Counterclaim as though fully set forth herein.

79.     Even assuming that any of the Opioid Lawsuits alleged covered damages because of "bodily injury" or "property damage" caused by an "occurrence" to implicate Old Republic's duty to defend – which they do not – Giant Eagle's defense costs do not exhaust the applicable deductible and limits of insurance under any Old Republic Primary Policy.

80.     The Deductible Endorsement in each Old Republic Primary Policy (except Policy MWZY 304638), states that the "deductible amount(s) equal the Limits of Insurance/Limits of Liability applicable to the Coverage under which a claim(s) is made or ÷suit(s)ø is brought." The analogous endorsement in Policy MWZY 304638 similarly states that the deductible "[e]quals the Limits of Insurance/Liability as provided under the policy plus all ALAE/Supplementary Payments."

81.     Giant Eagle's defense costs allegedly incurred with respect to the Opioid Lawsuits, including attorney's fees, constitute "allocated loss adjustment expense(s)" (ALAE) under the Old Republic Primary Policies.

82.     The terms of the Old Republic Policies, including the Deductible Endorsements, specify that ALAE *does not* erode or satisfy the applicable deductible under the Old Republic Primary Policies.

131363736v1 0976954

83.     Giant Eagle has not identified any other payments with respect to the Opioid Lawsuits that would erode or satisfy the applicable deductible under the Old Republic Primary Policies.

84.     As Giant Eagle has not exhausted the deductible under any of the Old Republic Primary Policies, coverage under the AGLIC Excess Policies has not been triggered and, thus, AGLIC has no coverage obligation for the Opioid Lawsuits.

85.     Pursuant to 28 U.S.C. § 2201, an actual and justiciable controversy exists between Giant Eagle and AGLIC as to whether Giant Eagle has exhausted the deductible under any of the primary Old Republic Policies.

## COUNT IV

### Declaratory Relief – In the Alternative, the Court Must Determine the Number of Occurrences in Order to Determine Whether Giant Eagle Has Exhausted Any Underlying Old Republic Policy

86.     AGLIC restates and realleges paragraphs 1-86 of its Counterclaim as though fully set forth herein.

87.     Even assuming that Giant Eagle's defense costs eroded the self insured retention and the deductible under any of the Old Republic Primary Policies (which they do not), the court will need to determine the number of occurrences presented by the Opioid Lawsuits, in order to determine whether any Old Republic Primary Policy has been exhausted.

88.     Giant Eagle alleges that it is entitled to defense under the AGLIC Excess Policies for the Opioid Lawsuits because it has paid $2 million in defense costs, exhausting the underlying Old Republic insurance.

89.     Giant Eagle's theory is that $2 million in defense costs satisfies both the $1 million per occurrence Self Insured Retention (which has no aggregate limit), as well as the $1

131363736v1 0976954

million each occurrence limit. That is, Giant Eagle presumes that all of the Opioid Lawsuits arise out of a single occurrence.

90.     However, if there are multiple occurrences, then Giant Eagle would be required to show that it exhausted a $1 million self-insured retention as well as a $1 million limit of liability for each occurrence.

91.     Further, Giant Eagle's position ignores that each Old Republic Primary Policy is subject to a $3 million Products – Completed Operations Aggregate Limit.

92.     The number of occurrences in the Opioid Lawsuits will affect the applicable self-insured retention and policy limit that Giant Eagle will need to satisfy in order to exhaust any underlying Old Republic Primary Policy.

93.     Accordingly, AGLIC seeks a determination as to the number of occurrences presented by the Opioid Lawsuits.

94.     Pursuant to 28 U.S.C. § 2201, an actual and justiciable controversy exists between Giant Eagle and AGLIC concerning the number of "occurrences" presented by the Opioid Lawsuits.

## COUNT V

### Declaratory Relief – In the Alternative, the Court Will Need to Determine Which Policy Was Triggered and the Applicability of Policy Defenses

95.     AGLIC restates and realleges paragraphs 1-95 of its Counterclaim as though fully set forth herein.

96.     Even assuming the court rules in Giant Eagle's favor with respect to the prior issues identified in Counts I through IV, the court will need to make determinations regarding additional issues, including the following:

131363736v1 0976954

a. Under Pennsylvania law regarding trigger, the court will need to determine which policy was in effect at the time of the "first manifestation" of the injury or damage that is alleged to have been caused by the insured.

b. The court will need to determine whether coverage is excluded under any Old Republic Primary Policy or any AGLIC Excess Policy to the extent that the Opioid Lawsuits seek damages for bodily injury or property damage expected or intended from the standpoint of the insured.

c. The court will need to determine whether coverage is excluded under any Old Republic Primary Policy or any AGLIC Excess Policy to the extent that the Opioid Lawsuits seek damages for bodily injury or property damage that was known by the insured to have occurred prior to the applicable policy period.

d. Other coverage issues may be presented by the Opioid Lawsuits under the Old Republic Primary Policies and the AGLIC Excess Policies for the court's determination.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant American Guarantee and Liability Insurance Company, respectfully requests that the Court:

a. Declare that there is no coverage under the AGLIC Excess Policies for the Opioid Lawsuits;

b. Deny the relief and declarations requested by Plaintiffs in the Complaint;

c. Dismiss Plaintiffs' claims against AGLIC with prejudice; and

d. Award such other and further relief to AGLIC as the Court deems just and proper.

131363736v1 0976954

Dated: October 1, 2019                    Respectfully submitted,

                                          BODELL BOVE, LLC

                                          s/ Louis A. Bove
                                          Louis A. Bove (Bar ID No. PA 53071)
                                          1845 Walnut Street
                                          Suite 1100
                                          Philadelphia, PA 19103
                                          (215) 864-6602
                                          lbove@bodellbove.com

                                          Bruce W. McCullough (admitted *pro hac vice*)
                                          BODELL BOVE, LLC
                                          1225 N. King Street
                                          Suite 1000
                                          Wilmington, DE 19801
                                          (302) 655-6749

                                          Michael M. Marick (admitted *pro hac vice*)
                                          Karen M. Dixon (admitted *pro hac vice*)
                                          James S. Buino (admitted *pro hac vice*)
                                          SKARZYNSKI MARICK BLACK LLP
                                          353 N. Clark Street
                                          Suite 3650
                                          Chicago, IL 60654
                                          (312) 946-4200

                                          Counsel for Defendant
                                          AMERICAN GUARANTEE AND LIABILITY
                                          INSURANCE COMPANY

131363736v1 0976954

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record entitled to notice who are registered users of ECF.

s/ Louis A. Bove
Louis A. Bove (Bar ID No. PA 53071)

4851-9279-8376, v. 1

131363736v1 0976954