**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GIANT EAGLE, INC. and HBC SERVICE COMPANY, | ) ) ) | |
| Plaintiffs and Counter Defendants, | ) ) | |
| v. | ) ) | Civil Action No. 2:19-cv-00904-AJS |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and XL SPECIALTY INSURANCE COMPANY, | ) ) ) ) | Hon. Arthur J. Schwab |
| Defendants and Counter Claimants. | ) ) ) | |
| ——————————————————— | ) ) | |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, | ) ) ) | |
| Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| OLD REPUBLIC INSURANCE COMPANY, | ) ) | |
| Third-Party Defendant. | ) ) ) | |
| XL SPECIALTY INSURANCE COMPANY, | ) ) | |
| Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| OLD REPUBLIC INSURANCE COMPANY, | ) ) ) | |
| Third-Party Defendant. | ) | |

**RESPONSE OF AMERICAN GUARANTEE AND LIABILITY INSURANCE**
**COMPANY AND XL SPECIALTY INSURANCE COMPANY IN OPPOSITION**
**TO MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DUTY TO DEFEND**

## <u>TABLE OF CONTENTS</u>

I.  STANDARD .................................................................................................2

II.  DEFENSE EXPENSES DO NOT ERODE OR EXHAUST THE SIR OR
    DEDUCTIBLE PROVISIONS OF THE OLD REPUBLIC POLICIES. ...................2

III.  UNDER THE EXCESS POLICIES, DEFENSE EXPENSES DO NOT
     EXHAUST THE LIMITS OF THE UNDERLYING OLD REPUBLIC
     POLICIES. ...............................................................................................6

IV.  GIANT EAGLE CANNOT MEET ITS BURDEN OF PROVING
     UNDERLYING EXHAUSTION OR COVERAGE UNDER THE EXCESS
     POLICIES. .............................................................................................10

     A.   Genuine Disputes as to Material Facts Exist Regarding Policy
          Trigger. ...........................................................................................10

     B.   Genuine Disputes as to Material Facts Exist Regarding the Number of
          Occurrences. ....................................................................................12

     C.   The Opioid Complaints Fail to Allege an "Accident" and Certain of
          the Opioid Complaints Fail to Seek Damages "Because of 'Bodily
          Injury.'" ..........................................................................................13

     D.   Giant Eagle Has Not Established the Absence of a Genuine Factual
          Dispute Regarding Defense Expenditures for Covered Claims. ...................15

CONCLUSION ..................................................................................................15

## TABLE OF AUTHORITIES

**CASES**

*Acuity v. Masters Pharm., Inc.*, Case No. A 1701985 (Ohio Ct. C.P. Feb. 1, 2019) ...................15

*Air Liquide Am. Corp. v. Cont'l Cas. Co.*, 217 F.3d 1272 (10th Cir. 2000) ...................................2

*Charter Oak Ins. Co. v. Maglio Fresh Foods*, 629 F. App'x 239 (3d Cir. 2015) ...........................2

*Cincinnati Ins. Co. v. Richie Enters., LLC*, No. 12-CV-00186, 2014 WL 3513211 (W.D. Ky. Jul. 16, 2014) ..................................................................................................................................... 15

*Desabato v. Assurance Co. of Am.*, 213 F. Supp. 3d 735 (W.D. Pa. 2016).................................14

*Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286 (Pa. 2007) ...........................................14

*Gen. Refractories Co. v. Allstate Ins. Co.*, No. Civ. A. 89-7924, 1994 WL 246375 (E.D. Pa. June 8, 1994) ...................................................................................................................................... 11

*In re Bressman*, 327 F.3d 229 (3d Cir. 2003)................................................................................1

*Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996) ...................................2

*Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888 (Pa. 2006)........................................................................................................................................... 14

*Lexington Ins. Co. v. Charter Oak Fire Ins. Co.*, 81 A.3d 903 (Pa. 2013) .............................2, 10

*Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197 (3d Cir. 2001) ..............................................2

*Pennsylvania Nat'l Mut. Cas. Ins. Co. v. St. John*, 630 Pa. 1 (2014)...........................................11

*Sunoco, Inc. v. Illinois Nat'l Ins. Co.*, 226 Fed. App'x 104 (3d Cir. 2007) .............................2, 12

*The Travelers Prop. Cas. Co. of Am. v. Actavis, Inc.*, 16 Cal. App. 5th 1026 (2017)..................14

*The Travelers Prop. Cas. Co. of Am. v. Anda, Inc.*, 90 F. Supp. 3d 1308 (S.D. Fla. 2015)..........15

**OTHER AUTHORITIES**

*The Subtly Important Supplementary Payments Provisions in Liability Insurance Policies*, 66 DePaul L. Rev. 763 (2017) ...........................................................................................................4

## INTRODUCTION

Plaintiffs Giant Eagle, Inc. and HBC Service Company (together, "Giant Eagle") have moved this Court to declare that each of two excess insurance policies issued by American Guarantee and Liability Insurance Company ("AGLIC") and XL Specialty Insurance Company ("XL"), respectively, for the 2015-2016 and 2016-2017 policy years (the "AGLIC Policy" and the "XL Policy," collectively, the "Excess Policies") require those insurers (the "Excess Insurers") to defend Giant Eagle in four "Opioid Complaints" pending as part of the multidistrict litigation styled *In Re Nat'l Prescription Opiate Litig.* (Doc. 75 ("Motion") at p. 1; Doc. 76 ("Brief") at p. 6 n. 1.)

The Excess Insurers have no obligations under the Excess Policies unless and until Giant Eagle exhausts underlying policies issued by Old Republic Insurance Company ("Old Republic" and the "Old Republic Policies"[1]). Giant Eagle cannot prove exhaustion of the Old Republic Policies by payment of defense expenses because those expenses do not satisfy its self-insured retention ("SIR") and deductible obligations. Giant Eagle contractually agreed to assume responsibility for its defense expenses, and its Motion seeking to escape that responsibility therefore should be denied. Giant Eagle's Motion also should be denied because it has failed to meet its burden to establish that the Opioid Complaints seek damages because of "bodily injury" caused by an "occurrence" that first manifested during the periods of the Excess Policies, and that it has spent over $2 million for every triggered policy year with respect to any and each such covered "occurrence."

---

[1] Old Republic Policy No. MWZY 304638 for the period of April 1, 2015 to April 1, 2016 is referenced herein as the "2016 Old Republic Policy" and Old Republic Policy No. MWZY 307316 for the period of April 1, 2016 to April 1, 2017 is referenced herein as the "2017 Old Republic Policy." (SOF ¶ 3.)

## ARGUMENT

## I.     STANDARD

Where, as here, "the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact . . . on all the essential elements of its case." *In re Bressman*, 327 F.3d 229, 237-38 (3d Cir. 2003) (citation omitted). Giant Eagle must prove exhaustion not only of the Old Republic Policies, but of all other Old Republic policies triggered.[2] *See, e.g.*, *Sunoco, Inc. v. Illinois Nat'l Ins. Co.*, 226 Fed. App'x 104, 107 (3d Cir. 2007) (coverage only if insured satisfied self-insured retention); *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) ("The burden is on the insured to establish coverage[.]"); *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996) ("[A] true excess or secondary policy is not 'triggered' or required to pay until the underlying primary coverage has been exhausted."); *Charter Oak Ins. Co. v. Maglio Fresh Foods*, 629 F. App'x 239, 245 (3d Cir. 2015) (excess insurer had no duty to defend where primary limits were not fully paid for "covered" claims); *Lexington Ins. Co. v. Charter Oak Fire Ins. Co.*, 81 A.3d 903, 909 (Pa. 2013) (excess insurer's duty to defend triggered by actual payment of settlement by primary insurer). Giant Eagle has failed to meet that burden.

## II.    DEFENSE EXPENSES DO NOT ERODE OR EXHAUST THE SIR OR DEDUCTIBLE PROVISIONS OF THE OLD REPUBLIC POLICIES.

The Excess Insurers have no obligation to Giant Eagle under the Excess Policies because Giant Eagle has not exhausted the SIRs and deductibles of the Old Republic Policies by payment

---

[2] While Giant Eagle's lawsuit seeks declarations of coverage under nine excess policies issued in nine separate policy years going back to 2009 (SOF at ¶ 81), its Brief erroneously asserts that all of its defense expenses can be unilaterally allocated to only two policy years referenced above. As explained in Section IV below, however, Giant Eagle must prove exhaustion of all triggered Old Republic policies.

of judgments or settlements. Because defense expenses do not erode the Old Republic Policies' SIRs, deductibles, and limits, neither of the Excess Policies is reached.

The Old Republic Policies are construed like any other insurance contract, even if they are fronting policies whereby Giant Eagle insured itself. *See, e.g.*, *Air Liquide Am. Corp. v. Cont'l Cas. Co.*, 217 F.3d 1272, 1279 (10th Cir. 2000) (fronting policy constitutes "other collectible insurance"). The Old Republic Policies delineate between different obligations to indemnify damages and to make Supplementary Payments that include defense expenses. Old Republic agreed to provide liability coverage for "those sums" that Giant Eagle "becomes legally obligated to pay as damages because of 'bodily injury.'" (SOF ¶ 4.)[3] Old Republic separately assumed a duty to defend Giant Eagle against "any 'suits' seeking these damages." (SOF ¶ 5.) Other than the obligation to pay damages and the duty to defend set forth in the insuring agreements, the Old Republic Policies specifically state that "[n]o other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B." (SOF ¶ 5.)

First, each of the Old Republic Policies is not implicated until its SIR has been satisfied pursuant to the Self Insured Retention Endorsement ("SIR Endorsement"). (SOF ¶ 7.) Paragraph A of the SIR Endorsement makes clear that Old Republic's obligations apply only to "damages" in excess of the $1 million per occurrence SIR. (SOF ¶ 8.)[4] The term "damages" pertains only to claims for indemnity, not defense expenses, and Giant Eagle does not contend otherwise. (SOF ¶

---

[3] Giant Eagle's Brief includes a section entitled "Material Facts as to which there is no Genuine Issue" that refers to its Statement of Material Facts. (Brief 6-7.) Per LCvR 56.B.1, AGLIC and XL have filed their response to Giant Eagle's Statement of Material Facts contemporaneously herewith. In addition, AGLIC and XL have filed a Concise Statement of Additional Material Facts, which are referenced herein as "SOF."

[4] *See also* SOF ¶ 7 (providing that regardless of any Other Insurance, the Old Republic insurance is excess over the SIR).

9.) SIR is defined, consistently, to mean "the amount the insured legally must pay with respect to claims or 'suits.'" (SOF ¶ 10.) Such a legal obligation only means "damages" in the form of settlement or judgment, since an insured such as Giant Eagle never is *legally* compelled to incur expenses on its own behalf. Paragraph C expressly states that Supplementary Payments, which include allocated loss adjustment expenses ("ALAE"), do ***not*** satisfy the SIR. (SOF ¶ 11.) Supplementary Payments are separately described in the Old Republic Policies to include defense expenses and further defined to *not* reduce the policy limits. (SOF ¶ 12.)[5] Paragraph C further provides that if ALAE are not described in the Old Republic Policies ─ which they indisputably are not ─ then, consistent with insurance industry custom, practice, and usage, they too are defined to include defense expenses. (SOF ¶ 13.) Thus, the express terms of the SIR Endorsement establish that Giant Eagle cannot satisfy its $1 million SIR using defense expenses.

Second, defense expenses do not satisfy the Scheduled Deductible Coverage Endorsement (the "Deductible Endorsement") in the Old Republic Policies. If Giant Eagle first satisfies its $1 million per occurrence SIR, it must next separately satisfy a $1 million per occurrence deductible. (SOF ¶¶ 19-21.) Therefore, for any covered occurrence, Giant Eagle must satisfy a combined $2 million obligation before any Excess Policy can be implicated. Paragraph B specifically sets forth what amounts can be used to satisfy that Endorsement. As with the SIR Endorsement, defense expenses "do not satisfy the deductible" (SOF ¶ 22) because defense

---

[5] The Old Republic Policies include standard Ins. Servs. Office, Inc. ("ISO") Commercial General Liability Coverage Form language. (SOF ¶ 12.) *See* Douglas R. Richmond, *The Subtly Important Supplementary Payments Provisions in Liability Insurance Policies*, 66 DEPAUL L. REV. 763, 764 (2017) ("Most liability insurance policies obligate the insurer to pay the defense lawyer's fees and other defense costs in addition to the policy's liability limits. This obligation flows from the policy's supplementary payments provision."). Paragraph G of the SIR Endorsement further states that Old Republic has no duty to defend suits within the $1 million per occurrence SIR; Giant Eagle "must" do so "at its own expense." (SOF ¶ 15.)

expenses are included in the description of Supplementary Payments (SOF ¶¶ 12, 24) and ALAE are defined to include defense costs because ALAE are not otherwise described in the Old Republic Policies (SOF ¶ 23.) Both of the parties to those insurance contracts, Giant Eagle and Old Republic, have confirmed that defense expenses do not satisfy the SIR Endorsement or the Deductible Endorsement. Giant Eagle's counsel so confirmed in September 2018 when he stated that "[b]ased upon our review of some but not all of the applicable policies, it appears that each coverage year has a self-insured retention ("SIR") of $1 million and ***defense costs do not erode the subject SIRs***" set forth in the Old Republic Policies. (SOF ¶¶ 55-56.) (emphasis added). In a similar coverage suit filed in Ohio against the Excess Insurers and Old Republic but then promptly dismissed by Giant Eagle, Giant Eagle acknowledged that "Old Republic's duty to defend terminates only after the Policy's Limits of Insurance have been used up in the payment of judgments and settlements." (SOF ¶¶ 33-35.) And Old Republic has directly contradicted Giant Eagle in this lawsuit ─ both in its Answer and in its responses to the Excess Insurers' requests for admission ─ by admitting, among other things, that defense expenses do not erode the SIRs or deductibles of its policies. (SOF ¶¶ 36-44.)

In sum, for any single occurrence, the SIR and Deductible Endorsements in each of the Old Republic Policies are only met by payment of $2 million in judgments or settlements per occurrence ─ *not* by defense expenses. Until then, the Excess Policies are not triggered with respect to that occurrence.

Giant Eagle concedes, as it must, that "[t]he Old Republic policies contain a duty to defend" Giant Eagle. (Brief 17.) That means Old Republic may become obligated to incur defense expenses after Giant Eagle first satisfies the SIR. (SOF ¶ 16.) And while defense expenses ultimately become the responsibility of Giant Eagle pursuant to the terms of its

5

Program Agreement with Old Republic (Brief 18 n. 11), they are Old Republic's obligations to incur. (SOF ¶¶ 12, 24.)[6] Under the terms of the Old Republic Policies, "[a]ll expenses [Old Republic] incur[s]" with respect to any claim it defends are included within "Supplementary Payments." (SOF ¶ 12.) Thus, contrary to Giant Eagle's assertion (Brief 18), defense expenses are not "other amounts payable under" the Old Republic Policies. Moreover — and again, contrary to Giant Eagle's assertions (Brief 18 n. 11) — that is entirely consistent with the Program Agreement entered into by Giant Eagle and Old Republic.[7] (SOF ¶ 31.) ALAE are a subset of, and subsumed within, "Supplementary Payments" and are Giant Eagle's ultimate responsibility under the Program Agreement. (SOF ¶¶ 11, 22, 31-32.)

This explains Giant Eagle's motivation for filing this lawsuit and advancing an unsupported exhaustion construct — to impermissibly extricate itself from its mounting defense obligations under both the SIR and Deductible Endorsements. But that is not the insurance program Giant Eagle negotiated, agreed to, and purchased. Until Giant Eagle pays damages, the SIR and Deductible provisions of the Old Republic Policies have not been satisfied and the Excess Policies have not been triggered.

## III.    UNDER THE EXCESS POLICIES, DEFENSE EXPENSES DO NOT EXHAUST THE LIMITS OF THE UNDERLYING OLD REPUBLIC POLICIES.

While the terms of the Old Republic Policies demonstrate that defense expenses do not erode those Policies' SIRs and Deductibles, the Excess Policies also show that defense expenses do not satisfy the Excess Policies' exhaustion requirements.

First, the excess follow form coverage of the AGLIC Policy ("Coverage A") responds

---

[6] By its terms, Old Republic's duty to defend remains in place until Old Republic has "used up the applicable limit of insurance *in the payment of judgments or settlements*," *i.e.*, the $1 million per occurrence limit or the $15 million aggregate limit. (SOF ¶ 18.)

[7] The Program Agreement, a standard feature of a fronting arrangement, secures Giant Eagle's obligations to reimburse payments by Old Republic under the Old Republic Policies.

only when underlying limits have been exhausted by payment of damages. (SOF ¶ 45.) AGLIC is obligated to pay only "those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**" and provides that if **underlying insurance** does not apply to damages . . . then **Coverage A** does not apply to such damages." (SOF ¶ 45.) The AGLIC Policy includes a corresponding duty to defend limited to "any **suit** against the **insured** for damages covered by this policy . . . when the applicable limit of **underlying insurance** and **other insurance** has been exhausted by payment of **loss** for which coverage is afforded under this policy." (SOF ¶ 46.) "Loss," in turn, is defined as "those sums actually paid that [Giant Eagle] is legally obligated to pay as damages for the settlement or satisfaction of a claim." (SOF ¶ 47.) "Loss" does not include defense expenses if the underlying 2016 Old Republic Policy does not include them in the limits of insurance (which it does not, as explained above).[8] (*Id.*)

In addition, Giant Eagle expressly agreed that the limit of the underlying 2016 Old Republic Policy "will be maintained except for any reduction or exhaustion of limits by payment of claims or **suits** for damages covered by **underlying insurance**." (SOF ¶ 52.) This provision does not allow for reduction of the Old Republic limits by payment of defense expenses.[9]

Second, the XL Policy was underwritten with an express understanding and agreement regarding the underlying insurance Giant Eagle was required to maintain and satisfy before the XL Policy responds to a claim. Insuring Agreement A provides that XL will pay on behalf of Giant Eagle "those amounts [Giant Eagle] becomes legally obligated to pay as damages in excess

---

[8] Giant Eagle pled in the Ohio Coverage Lawsuit that "loss" does not include defense expenses. (SOF ¶ 34.)

[9] Old Republic admitted as much in its responses to AGLIC's and XL's First Set of Requests for Admission. (SOF ¶¶ 36, 39, 41.) AGLIC and XL have not yet received Giant Eagle's responses to discovery requests regarding its underwriting understanding and the expectations of the parties. Nevertheless, documents in AGLIC's and XL's possession confirm that defense expenses are outside limits. (SOF ¶¶ 53-54, 66-80.)

of the 'scheduled underlying insurance' as a result of a 'claim' covered by the 'scheduled underlying insurance' and this policy, but only if the actual payment of 'loss' . . . exceeds the limits of the 'scheduled underlying insurance' and any . . . 'other insurance.'" (SOF ¶¶ 57-58.) There is a corresponding duty to defend under the XL Policy that is limited to "any 'suit' covered by Insuring Agreement A, but only when the 'scheduled underlying insurance' or 'other insurance' has been exhausted by payment of 'loss.'" (SOF ¶ 59.) Thus, the key inquiry is whether Old Republic has paid "loss" in excess of the "retained limit."

As defined in the XL Policy, "Loss" means "those sums you become legally obligated to pay as settlements or judgments in connection with a covered claim." (SOF ¶ 60.) "Loss" only includes defense expenses if "so provided in the scheduled underlying insurance," which such expenses are not in this case. (*Id.*) "Scheduled underlying insurance" means the policies shown in the Schedule of Underlying Insurance (the "Schedule"). (SOF ¶ 61.) The Schedule identifies the underlying 2017 Old Republic Policy and its limits and expressly states: "Defense expenses are *in addition to* the limits." (SOF ¶ 62 (emphasis added).) Thus, the Schedule provides that "expenses incurred to . . . defend a suit" are in addition to the limits of that 2017 Old Republic Policy and, therefore, by definition not "loss." (SOF ¶¶ 60-62.) Lest there be any doubt that the limits listed on the Schedule control XL's obligations, the XL Policy provides that if the "scheduled underlying insurance" is less than the amount shown on the Schedule, the amount shown on the Schedule must first be satisfied. (SOF ¶ 63.) In essence, Giant Eagle's Motion seeks a declaration that the limits of that underlying 2017 Old Republic Policy are less than the limits reflected in the Schedule. Even if the Court were to accept that contention, the XL Policy still does not attach unless and until the greater limit shown in the Schedule is exhausted. The limit on the Schedule, of course, would be greater because it states that the 2017 Old Republic

8

Policy pays defense *in addition to* limits.[10]

Accordingly, the underwriting of the XL Policy, as reflected in the actual insurance contract reached by and between XL and Giant Eagle, is predicated upon there being a scheduled underlying insurance policy issued by Old Republic that pays defense expenses *in addition to* limits. This predicate was an essential element of the bargain agreed to by the parties as reflected in the Maintenance of Underlying Insurance provision. (SOF ¶¶ 64-65.) Giant Eagle is now urging this Court to impermissibly interpret the underlying 2017 Old Republic Policy in a way that would "materially change" its terms as set forth in the Schedule by asserting that policy pays defense expenses *within* limits, where the Schedule, and the corresponding definition of "loss," require defense expenses to be paid *in addition to* limits. (SOF ¶¶ 60-62.) That interpretation would violate the Maintenance of Underlying Insurance provision, as the limits of the 2017 Old Republic Policy would be "decreased" by something other than the payment of "loss." (SOF ¶ 64.)[11] That means the XL Policy can only be reached if Giant Eagle pays "loss" ─ not defense expenses, but rather, damages in the form of settlements or judgments ─ for a "covered claim" to properly exhaust the 2017 Old Republic Policy limits.

The XL Policy provisions delineate XL's obligations to Giant Eagle. They are not, and cannot, be impacted by Giant Eagle's attempt to contort provisions in the 2017 Old Republic Policy – an effort that runs afoul of the XL Policy's requirement that underlying insurance be maintained consistent with that stated in the XL Policy. (*Id*.) The XL Policy clearly states that defense expenses are paid in addition to the limits of the 2017 Old Republic Policy. Until any actual damage claims have been paid, no erosion of such underlying insurance in any amount has

---

[10] The AGLIC Policy contains a similar provision. (SOF ¶ 51.)
[11] It would also violate the similar provision in the AGLIC Policy. (SOF ¶ 52.)

occurred (much less exhaustion), and no duty to defend under the XL Policy has been triggered.

IV.   **GIANT EAGLE CANNOT MEET ITS BURDEN OF PROVING UNDERLYING EXHAUSTION OR COVERAGE UNDER THE EXCESS POLICIES.**

Giant Eagle bears the burden to prove that it has exhausted all Old Republic policies that are triggered by covered claims, not merely the two Old Republic Policies referenced in the Brief. It also must show which Opioid Complaints (if any) are actually covered ─ not that "may be covered."[12] *Lexington*, 81 A.3d 903, *supra*, is not to the contrary. In that case, there was no dispute whether the claim was covered under the primary policy.[13] Here, there are multiple disputes over coverage, and the primary and excess policies expressly require that only covered claims exhaust limits. The SIR "will not be satisfied by payment of any claim or 'suit' that would not be covered under the terms of the" Old Republic Policies. (SOF ¶ 10.) The Deductible must be satisfied by damages that are in fact "payable" under the Old Republic Policies. (SOF ¶ 21.) AGLIC's duty to defend is triggered only by "payment of a 'loss' for which coverage is afforded" that exceeds the limits of the 2016 Old Republic Policy. (SOF ¶ 46.) Similarly, XL's duty to defend is only triggered for a "loss" that exceeds the limits of the 2017 Old Republic Policy for a "covered claim." (SOF ¶¶ 59-60.) Accordingly, the Court must consider all facts relevant to whether any particular underlying opioid lawsuit is covered.

A.   **Genuine Disputes as to Material Facts Exist Regarding Policy Trigger.**

The Excess Policies do not respond until *all* "underlying insurance" and "other insurance" is exhausted.[14] Giant Eagle's lawsuit seeks declarations of coverage under nine

---

[12] SOF ¶¶ 45-47, 57-60.

[13] It was undisputed in *Lexington* that, pursuant to the language in the excess policy, the primary policy could be exhausted only through payment of a settlement or judgment. The dispute in that case was solely one of timing concerning when the primary limits were exhausted and, consequently, when the excess insurer's duty to defend was triggered. 81 A.3d at 909-10. It is undisputed that there have been no settlements or judgments paid by Giant Eagle here.

[14] SOF ¶¶ 45-46, 48-49, 57-59, 61.

10

excess policies issued in nine separate policy years. (SOF ¶ 81.) Its Brief, however, asserts that all of Giant Eagle's defense expenses can be unilaterally allocated to only two policy years (*i.e.*, 2015-2016 and 2016-2017) because "alleged 'bodily injuries' potentially took place during the policy period(s)." (Brief 8).[15] However, it is undisputed that the Opioid Complaints allege conduct and losses that took place over multiple policy years beyond the two to which Giant Eagle seeks to arbitrarily allocate all of its defense expenses. (SOF ¶¶ 92, 100-09.) In any event, the question is not when any purported "bodily injury" occurred, but when it first manifested because Pennsylvania law applies the "first manifestation trigger" — requiring a determination of "when either bodily injury or property damage becomes readily apparent." *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. St. John*, 630 Pa. 1, 23-28 (2014) (refusing to apply the "continuous trigger" applicable to asbestos bodily injury claims to other types of claims). Giant Eagle has presented no evidence to establish that any of the four Opioid Complaints (or, for that matter, any other particular opioid-related lawsuit) actually triggers either of the two policy years chosen. The allegations in the Opioid Complaints clearly allege conduct and losses that first manifested well before the two policy periods under which Giant Eagle now seeks coverage. (SOF ¶¶ 92, 100-09.)

Moreover, Giant Eagle must first satisfy ***all*** triggered primary policies before any excess policy can be reached:

> [U]nlike primary insurers, excess insurers are not liable merely because of the occurrence of an injury within the scope of the policy. Instead, an excess insurer's liability arises (or is "triggered") only after the insured has exhausted the limits of its primary insurance . . . . In other words, unlike the primary insurer, there is a condition precedent to the excess insurer's liability, i.e., the exhaustion of the primary insurance. Thus, in order to prevail on this issue, the plaintiff must establish that it has exhausted the limits of each of the primary policies . . . before

---

[15] Giant Eagle also argues, without explanation, that exhaustion of a single $1 million SIR and $1 million Deductible somehow allows it to access two excess policies issued in two separate years.

this Court can hold that each of the excess policies have been "triggered."

*Gen. Refractories Co. v. Allstate Ins. Co.*, No. Civ. A. 89-7924, 1994 WL 246375 at *4 (E.D. Pa. June 8, 1994). The four Opioid Complaints allege losses that could have manifested in numerous different policy years, which presents factual questions precluding summary judgment, but in any event losses allegedly occurred well before the two years at issue in the Motion. (SOF ¶¶ 92, 100-109.)

**B.      Genuine Disputes as to Material Facts Exist Regarding the Number of Occurrences.**

Determining whether the Old Republic Policies have been exhausted by covered claims necessarily requires discovery of facts related to the numerous opioid-related lawsuits against Giant Eagle and the number of occurrences implicated by those lawsuits. Multiple occurrences (and multiple policy years) require the satisfaction of multiple SIRs. Until then, there is no coverage under the Old Republic Policies. And while Giant Eagle's Brief proclaims that the Opioid Complaints (and presumably all other opioid-related lawsuits) arise out of a single occurrence, *i.e.*, one "cause" that it describes as its alleged "failure to maintain effective controls" (Brief 16), those complaints themselves raise questions of fact regarding the number of occurrences. Indeed, Giant Eagle acknowledges that the underlying complaints allege at least three different "causes" responsible for the losses alleged by the myriad plaintiffs who have sued Giant Eagle. (Brief 15-16.)

In determining "cause," Pennsylvania courts assess whether there is "one proximate, uninterrupted and continuing cause which resulted in all of the injuries and damage." *Sunoco*, 226 Fed. App'x at 107. That, in turn, requires a determination based on, among other things, the various categories of plaintiffs; the various types of alleged acts of wrongdoing in the context of how Giant Eagle operates its business; and the manner in which those acts — spread out over

several disparate Giant Eagle locations and operations in multiple states ─ caused injury. For example, allegations are made against Giant Eagle as both a "distributor" and as a "dispenser" of opioids, and different types of losses are alleged by the various plaintiffs ─ ranging from Ohio counties seeking to recoup funds expended in connection with the opioid crisis to class actions involving infants allegedly born with opioid addictions. (SOF ¶¶ 82-86.) And even if it were fair to broadly characterize the allegations in the four Opioid Complaints as arising from Giant Eagle's "failure to maintain effective controls" (Brief 16), those Complaints say nothing about whether such failures caused alleged harms in sufficiently similar ways to meet Pennsylvania's "cause" test. Without information regarding Giant Eagle's relevant operations and controls ─ for example, how Giant Eagle's various operational divisions relating to pharmacy and distribution functions handled opioids; whether Giant Eagle had one or more systems of control; whether Giant Eagle's system(s) of control stayed the same over time; whether Giant Eagle implemented such controls consistently throughout its different stores in different locations, etc. ─ genuine disputes as to material facts remain, and Giant Eagle's Motion necessarily fails.

Because determining exhaustion ─ which is the necessary predicate to triggering the AGLIC and XL Policies ─ requires Giant Eagle to prove not simply that the Opioid Complaints may be covered under the Old Republic Policies, but that they (1) are actually covered; and (2) arise out of only one "occurrence" ─ Giant Eagle bears the burden of making these showings under a duty to indemnify, not duty to defend, standard because this determination pertains to exhaustion. That, in turn, necessarily requires discovery and the consideration of facts that has yet to occur.

### C.    The Opioid Complaints Fail to Allege an "Accident" and Certain of the Opioid Complaints Fail to Seek Damages "Because of 'Bodily Injury.'"

Coverage under the Old Republic Policies is implicated only where damages are sought

"because of 'bodily injury'" caused by an "occurrence," *i.e.*, an "accident." (SOF ¶ 4.) None of

the Opioid Complaints allege "accidents," and two do not seek damages "because of 'bodily

injury.'"[16]

The Old Republic Policies define "occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions." (SOF ¶ 89.) The

Supreme Court of Pennsylvania has held that "accident" refers to "an unexpected and

undesirable event occurring unintentionally, and that the key term . . . is 'unexpected' which

implies a degree of fortuity." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa.

2007). An injury is not "accidental" if it is "the natural and expected result of the insured's

actions." *Id.*; *see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins.

Co.*, 908 A.2d 888, 898 (Pa. 2006).

An examination of the factual allegations in the Opioid Complaints reveals that they are

not based on accidents or fortuitous consequences.[17] (SOF ¶¶ 90, 92-98.) In *The Travelers Prop.

Cas. Co. of Am. v. Actavis, Inc.*, 16 Cal. App. 5th 1026, 1040 (2017), the court held a lawsuit did

not allege an "occurrence" because the alleged marketing scheme was not accidental:

> The allegations that Watson and the other defendants engaged in 'a common,
> sophisticated, and highly deceptive marketing campaign' aimed at increasing
> sales of opioids and enhancing corporate profits can only describe deliberate,
> intentional acts. Claims involving intentional or negligent misrepresentations do
> not constitute an accident under a liability policy.

---

[16] Giant Eagle claims, based on the four corners of the four Opioid Complaints, that "the
underlying plaintiffs seek damages 'because of bodily injuries'" arising from a "single
'occurrence.'" (Brief 13.) It does not address any of the other opioid lawsuits. (SOF ¶¶ 1-2.)

[17] To the extent Giant Eagle argues that certain of the four Opioid Complaints assert negligence-
based counts, the "particular causes of action are also not determinative of whether coverage has
been triggered." *Desabato v. Assurance Co. of Am.*, 213 F. Supp. 3d 735, 742 (W.D. Pa. 2016).
Moreover, no such counts remain in the so-called "County Complaints" (SOF ¶ 91); the only
remaining counts ─ RICO, Ohio Corrupt Practices Act, public nuisance, and conspiracy ─ all
necessarily require proof of, or are based on, intentional conduct. (SOF ¶ 90-98.)

Moreover, not only do the County Complaints not seek damages "because of 'bodily injury,'" they expressly disclaim any attempt to seek such damages: "Plaintiff **does not seek damages for death, physical injury to person, [or] emotional distress**." (SOF ¶¶ 87-88, 99.) (emphasis added). Several cases have held that economic harm allegedly sustained by governmental plaintiffs is insufficient to establish coverage. *See, e.g.*, *Cincinnati Ins. Co. v. Richie Enters., LLC*, No. 12-CV-00186, 2014 WL 3513211, at *5 (W.D. Ky. Jul. 16, 2014); *The Travelers Prop. Cas. Co. of Am. v. Anda, Inc.*, 90 F. Supp. 3d 1308, 1314-15 (S.D. Fla. 2015); *Acuity v. Masters Pharm., Inc.*, Case No. A 1701985 (Ohio Ct. C.P. Feb. 1, 2019).[18]

### D. Giant Eagle Has Not Established the Absence of a Genuine Factual Dispute Regarding Defense Expenditures for Covered Claims.

Giant Eagle must establish exhaustion of the Old Republic Policies' $1 million SIRs and $1 million Deductibles **for each occurrence**. Giant Eagle claims it has done so by paying over $2 million in defense expenses. Giant Eagle's Motion is supported only by declarations of its Senior Corporate Counsel and over 800 pages of legal fee invoices that fail to differentiate work performed in relation to each of the four Opioid Complaints. (Docs. 76-1, 86-30). The invoices thus present factual questions about the legal costs incurred — including whether reasonable, necessary and appropriate — relative to each Opioid Complaint or any other opioid-related lawsuit for which a defense is being sought. Even accepting Giant Eagle's exhaustion construct, that information is essential and its absence fatal to the Motion.

### <u>CONCLUSION</u>

For all of the foregoing reasons, Giant Eagle's Motion should be denied.

---

[18] The *Acuity v. Masters* decision is not available on Westlaw or Lexis and, as such, AGLIC and XL have attached a courtesy copy hereto.

January 10, 2020

/s/ Bruce W. McCullough
Bruce W. McCullough (admitted *pro hac vice*)
BODELL BOVE, LLC
1225 N. King Street
Suite 1000
Wilmington, DE 19801
(302) 655-6749
bmccullough@bodellbove.com

Louis A. Bove (Bar ID PA 53071)
Ronald (Rex) F. Brien, Jr. (Bar ID Pa 40884)
BODELL BOVE, LLC
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103
(215) 864-6602
(215) 864-6609
lbove@bodellbove.com
rbrien@bodellbove.com

Michael M. Marick (admitted *pro hac vice*)
Karen M. Dixon (admitted *pro hac vice*)
W. Joel Vander Vliet (admitted *pro hac vice*)
SKARZYNSKI MARICK & BLACK LLP
353 N. Clark Street, Suite 3650
Chicago, IL 60654
(312) 946-4200
mmarick@skayzynski.com
kdixon@skarzynski.com
wvandervliet@skarzynski.com

*Attorneys for Defendant and Third-Party Plaintiff*
*American Guarantee and Liability Insurance*
*Company*

and

/s/ Matthew A. Meyers
Robert E. Dapper Jr. (Pa. ID 46378)
Matthew A. Meyers (Pa. ID 202838)
BURNS WHITE
Burns White Center
48 26th Street
Pittsburgh, PA 15222
Telephone: 412-995-3250
Facsimile: 412-995-3300

16

redapper@burnswhite.com
mameyers@burnswhite.com

John Grossbart (*pro hac vice*)
Keith Moskowitz (*pro hac vice*)
DENTONS US LLP
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
john.grossbart@dentons.com
keith.moskowitz@dentons.com

Samantha Wenger (*pro hac vice*)
DENTONS US LLP
4520 Main Street
Suite 1100
Kansas City, MO 64111-7700
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
samantha.wenger@dentons.com

Roy Xiao (*pro hac vice*)
DENTONS US LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
roy.xiao@dentons.com

*Attorneys for Defendant and Third-Party Plaintiff*
*XL Specialty Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that on 10th day of January 2020, a copy of the foregoing **RESPONSE OF AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY AND XL SPECIALTY INSURANCE COMPANY IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DUTY TO DEFEND** was filed electronically via the ECF filing system and served upon counsel for all parties via the same.

/s/ Matthew A. Meyers
Matthew A. Meyers