# IN THE UNITED STATE DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GIANT EAGLE, INC. and HBC SERVICE COMPANY,

    Plaintiffs and Counter-Defendants,

    v.

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,

    Defendant; and

XL SPECIALTY INSURANCE COMPANY,

    Defendant and Counter-Claimant.

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,

    Third-Party Plaintiff,

    v.

OLD REPUBLIC INSURANCE COMPANY,

    Third-Party Defendant.

)))))))))))))))))))))))))))))))

No. 2:19-cv-00904

Judge Arthur J. Schwab

## THIRD-PARTY DEFENDANT OLD REPUBLIC INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DUTY TO DEFEND BY PLAINTIFFS GIANT EAGLE, INC. AND HBC SERVICE CO.

Plaintiffs Giant Eagle, Inc. and HBC Service Company (collectively referred to as "Giant Eagle") have moved pursuant to Rule 56 for a partial summary judgment (the "Motion") declaring that defendants American Guarantee and Liability Insurance Company ("AGLIC") and XL Specialty Insurance Company ("XL") have a duty to defend Giant Eagle in multiple lawsuits

pending against Giant Eagle in the captioned *In re Nat'l Prescription Opiate Litig.*, No. 2804 (N. D. Ohio) (the "Opioid MDL"). Although Giant Eagle's Motion does not seek a ruling or any relief from Third-Party Defendant Old Republic Insurance Company ("Old Republic"), certain statements, arguments and legal conclusions presented in the Motion and supporting memorandum (the "Memo") necessitate this Response in Opposition by Old Republic.

Specifically, the Giant Eagle Motion and Memo conclude that the underlying opioid lawsuits (the "Opioid Lawsuits") seek "damages because of" bodily injuries and thus are covered claims under the Old Republic policies that have been placed at issue in the Third-Party Complaints filed respectively by Third-Party Plaintiffs AGLIC and XL[1] (collectively the "Old Republic Policies"). Old Republic disputes Giant Eagle's unsupported legal conclusion that the Opioid Lawsuits are covered claims under the Old Republic Policies.

## I.     RELEVANT FACTS

### A.     Giant Eagle's Declaratory Judgment Action

Giant Eagle seeks entry of partial summary judgment declaring that AGLIC and XL each have a duty to defend Giant Eagle in at least four lawsuits pending against Giant Eagle in the Opioid MDL. Giant Eagle argues that the complaints in the underlying Opioid Lawsuits allege "bodily injuries"; that they seek "damages 'because of'" those bodily injuries; and that the alleged bodily injuries potentially took place during the insurers' policy periods. Giant Eagle also contends that the Opioid Complaints allege a single "occurrence" based on allegations of negligence-based causes of action; and that the Opioid Complaints allege a single occurrence.

---

[1]     Giant Eagle did not name Old Republic as a defendant in this action.

**B.**     **The Old Republic Policies at Issue**

The Insuring Agreement in the Old Republic Policies states in relevant part, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." Further, it states, "this insurance applies to 'bodily injury' only if: (1) The 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory'; [and] (2) The 'bodily injury' . . . occurs during the policy period[.]" The AGLIC and XL policies at issue in Giant Eagle's declaratory judgment action are excess to, and generally "follow form" to the Old Republic Policies.

The Old Republic policies issued to Giant Eagle are fully fronting policies under which Giant Eagle has both deductible and self-insured retention obligations, and under which the deductibles equal the policy limits. Further, pursuant to the SIRs, Giant Eagle is responsible to pay 100% of its defense costs outside of limits and outside the SIRs.

The Old Republic Policies contain the following SIR endorsement:

SELF INSURED RETENTION ENDORSEMENT
(SUPPLEMENTARY PAYMENTS/ALAE PRO RATA)
\*     \*     \*

**A.**     Our obligations under the Coverages of the policy to pay damages on your behalf apply in excess of the "self insured retention". The amount of the "self insured retention" is shown in the Schedule.

**B.**     The "self insured retention" may be satisfied by any combination of the following:

**1.**     Damages and medical expenses payable under the applicable Coverage(s).

**2.**     Other amounts payable under the policy.

**C.**     **Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expense(s) (ALAE) do not satisfy the "self insured retention".**

If Supplementary Payments and/or allocated loss adjustment expense(s) are not described in the policy, Supplementary Payments and/or allocated loss adjustment expense(s) are costs associated with the investigation or settlement of any claim or "suit" against an insured and include but are not limited to defense costs, attorneys' fees, premiums for appeal and bail bonds, prejudgment and post judgment interest, expenses incurred by the insurer, first aid expenses, and/or reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or "suit".

**D.**     In addition to the Scheduled "self insured retention" you are responsible for payment of a proportion of Supplementary Payments and/or allocated loss adjustment expenses. Your proportion is equal to the ratio that the "self insured retention" amount bears to the damages and medical expenses paid. If there is no loss payment, your proportion of Supplementary Payments and/or allocated loss adjustment expenses is 100%.

**E.**     The "self insured retention" will apply on the same basis as the Limits of Insurance (Limits of Liability) applicable to the claim or "suit" regardless of the number of persons or organizations who sustain damages. The "self insured retention" is an each and every "self insured retention" and does not have an aggregate.

**F.**     The "self insured retention" will not reduce the applicable Limits of Insurance (Limits of Liability).

**G.**     We do not have a duty to investigate, defend or settle any claim or "suit" for which there may be coverage under this insurance within the "self insured retention". Our right and duty to defend or settle any claim or "suit" do apply to any claim or "suit" that exceeds the "self insured retention".

You, at your own expense, must investigate, defend or settle all claims or "suits" within the "self insured retention". We retain the right to elect to join in the defense of such claims or "suits" and we will pay any expenses we incur in doing so.

(Dkt nos. 77-4, at 21–22, 77-5, at 18–19 (emphasis added).)

The Old Republic Policies also contain a deductible endorsement, which provides in relevant part as follows:

# SCHEDULED DEDUCTIBLE COVERAGE ENDORSEMENT
\* \* \*
## SCHEDULE

**Deductible:** $ Equals the Limits of Insurance/Liability as provided under the policy plus all ALAE/Supplementary Payments

**A.** Our obligations under the Coverages of the policy to pay damages are subject to a deductible. The deductible is shown in the Schedule.

Our obligations to pay damages apply only to the amount of damages in excess of the deductible shown in the Schedule.

**B.** The deductible may be satisfied by any combination of the following:

**1.** Damages and medical expenses payable under the applicable Coverage(s).

**2.** Other amounts payable under the policy.

**3.** Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expenses (ALAE):

___ Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expenses (ALAE) do not satisfy the deductible. In addition to the Scheduled deductible you are responsible for payment of a proportion of Supplementary Payments and/or allocated loss adjustment expenses. Your proportion is equal to the ratio that the deductible amount bears to the total damages and medical expenses paid. If there is no loss payment your proportion of Supplementary Payments and/or allocated loss adjustment expenses is 100%.

___ Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expenses (ALAE) are included within the deductible amount.

_X_ **Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expenses (ALAE) do not satisfy the deductible**. In addition to the Scheduled deductible you are responsible for payment of Supplementary Payments and/or allocated loss adjustment expenses.

If Supplementary Payments and/or allocated loss adjustment expenses (ALAE) are not described in the policy, Supplementary Payments and/or allocated loss adjustment expenses are costs associated with the investigation or settlement of any claim or "suit" against an insured and include but are not limited to defense costs, attorneys' fees, premiums for appeal and bail bonds, prejudgment and post judgment interest, expenses incurred by the insurer, first aid expenses, and/or reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or "suit".

**C.**   The deductible will apply on the same basis as the Coverage(s) Limits of Insurance/Limit of Liability applicable to the claim or "suit" regardless of the number of persons or organizations who sustain damages.

**D.**   The deductible amounts:

___   Described in paragraph B. will reduce the applicable Limits of Insurance/Limits of Liability.

_X_   Described in paragraph B.1. and B.2. will reduce the applicable Limits of Insurance/Limits of Liability.

\*     \*     \*

(Dkt nos. 77-4, at 19–20, 77-5, at 16–17 (emphasis added).)

Separately, pursuant to the Program Agreement, Giant Eagle is responsible for 100% of loss and ALAE, which includes defense costs, and ALAE is in addition to the policy limits. Further, ALAE is retained by Giant Eagle in addition to its retention for loss, and Giant Eagle is responsible for all ALAE and all loss under the Old Republic Policies. (Dkt nos. 77-12, at 34, 37.)

## II.   <u>LEGAL ARGUMENT</u>

### A.   **Giant Eagle Has Not Established any "Damages Because of" Bodily Injury**

Giant Eagle argues that the complaints in the underlying Opioid Lawsuits allege "bodily injuries";[2] and that they seek damages "because of" those bodily injuries. For instance, Giant

---

[2]   Giant Eagle's Memo contends that the Opioid Complaints including the NAS Complaints and the County Complaints allege a variety of physical harms that satisfy the definition of "bodily injury" set forth in the AGLIC and XL policies at issue ("bodily injury, sickness or disease sustained by a person, including death resulting from any of

Eagle's Memo states, "The *Cuyahoga* and *Summit* Actions assert claims on behalf of Ohio counties seeking damages because of bodily injuries allegedly suffered by their citizens and were the first two cases set for trial in the Opioid MDL. *See* SOMF at ¶ 36." (Memo, at 2.) Presented as a "statement of material fact," Giant Eagle's legal and conclusory statement is misleading.

In fact, while SOMF at ¶ 36 cites certain paragraphs (¶¶ 1, 27–35) from the *Cuyahoga* Action, not one of those paragraphs refers to "damages because of bodily injury." Instead, those paragraphs allege that the County of Cuyahoga, Ohio and the State of Ohio *Ex Rel.* Prosecuting Attorney of Cuyahoga County "bring this action to prevent future harm and to redress past wrongs" relating to the false marketing of prescription opioid drugs and the improper distribution of those drugs (¶ 1); further, they characterize opioid abuse as having "created a serious public health and safety crisis, and is a public nuisance," for which "economic damages" are sought. There is no specific reference to bodily injury in the cited allegations, and there is nothing that equates "economic damages relating to a public nuisance" in the *Cuyahoga* Action (¶¶ 1, 27–35) to "damages because of bodily injury" as required by the insurance policies.[3]

Further, Giant Eagle has not cited any controlling case law on this issue. While Giant Eagle relies heavily on two *H.D. Smith* decisions ((7th Cir. 2016) and (C.D. Ill. Sept. 26, 2019)), neither controls this Court. Further, while Giant Eagle contends that *H.D. Smith* " . . . adds to a line of

---

these at any time"). (Memo, at 4.) Even if there may be bodily injuries for purposes of this Court's considering whether AGLIC or XL have a duty to defend—which Old Republic neither admits nor concedes—Giant Eagle will have to establish bodily injury under each policy at issue, for purposes of indemnity, which has not been done at this early stage, and Old Republic reserves all rights on this issue.

[3]    The same is true for the *Summit* Action. While SOMF at ¶ 36 cites certain paragraphs from the *Summit* Action (¶¶ 1, 28–40), not one of those paragraphs refers to damages because of bodily injury. Instead, those paragraphs allege that the County of Summit, Ohio and certain other governmental entities "bring this action to prevent future harm and to redress past wrongs" relating to the false marketing of prescription opioid drugs and the improper distribution of those drugs (¶ 1); further, they allege that the "distribution and diversion of opioids [have] created the foreseeable opioid crisis and opioid public nuisance for which Plaintiffs" seek "economic damages" (¶¶ 28–40). There is no specific reference to bodily injury in the cited allegations, and there is nothing that equates "economic damages relating to a public nuisance" in the *Summit* Action (¶¶ 1, 28–40) to "damages because of bodily injury" in the insurance policies.

cases finding a duty to defend claims by governmental entities or non-profit associations seeking to recover increased costs associated with police, emergency services, medical care, nuisance abatement or other damages because of bodily injuries sustained by third-party citizens or members," not one of the cited cases controls this Court.

In fact, Giant Eagle relies on dictionary definitions and does not cite a single controlling decision regarding its "damages because of bodily injury" argument. The single Pennsylvania case cited by Giant Eagle—*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A. 3d 526 (Pa. 2010)—is quoted in the Memo as relating to "because of bodily injury" (Memo, at 7), not "damages because of bodily injury," and is otherwise further distinguishable. In *Jerry's Sport*, the court considered an insurer's duty to defend including whether a claim is potentially covered, but it did not analyze, discuss or otherwise interpret the meaning of "damages because of bodily injury." In fact, the trial court concluded that the remedy sought in the underlying action was *not* an award of damages for bodily injury, but rather contributions to a fund for the purpose of the education, supervision and regulation of gun dealers (and the prayer for relief did not seek damages to compensate individual members injured by the defendants' actions). *Id.* at 529, 531.

Giant Eagle acknowledges that while the *Jerry's Sport* court found this holding "suspect," that issue was not before the Supreme Court of Pennsylvania for review. (Memo, at 7.) Similarly here, the governmental entities in the underlying actions seek economic funding to prevent future harm and to redress past wrongs relating to the alleged false marketing of prescription opioid drugs and the improper distribution of those drugs—not damages for bodily injuries to any individual. Despite *dicta* of the *Jerry's Sport* court, this Court may conclude that governmental entities' seeking economic damages to prevent future harm are not covered claims under the policies at issue, similar to what the *Jerry's Sport* trial court concluded.

This finding also is line with *Cincinnati Ins. Co. v. Richie Enters. LLC*, 2014 U.S. Dist. LEXIS 96510 (W.D. Ky. July 16, 2014), which held that in the absence of a medical monitoring claim, the insurer had no duty to defend because the State of West Virginia was not seeking "damages 'because of'" its citizens' bodily injury; rather, it was seeking damages because it was required to incur costs due to drug distribution companies' alleged distribution in excess of legitimate medical need. *Id.* at *16. *See also, e.g., Travelers Prop. Cas. Co. of Am. v. Anda, Inc.*, 90 F. Supp. 3d 1308 (S.D. Fla. 2015) (finding the analysis in *Richie Enterprises* persuasive and finding that the policy at issue did not cover the claims asserted in the underlying complaint because it sought damages for the economic loss to the State of West Virginia and not for bodily injury).

**B.     Giant Eagle Has Not Established any Bodily Injury During the Old Republic Policy Periods[4]**

While Giant Eagle's Memo focuses only on AGLIC and XL, it also focuses on the 2015 to 2017 time period, which is the same time period during which certain of the Old Republic Policies at issue were effective.  In the context of the duty to defend, Giant Eagle argues that "allegations of continuous injury" from the Opioid Complaints "*create the possibility* that some (or all) of the alleged injuries occurred during the policy periods from April 1, 2015 through April 1, 2017." (Memo, at 9 (emphasis added).)  This is based on Giant Eagle's alleged wrongful conduct since 1999, and which continues to occur.  (*Id.*)  This in turn allegedly triggers the duty to defend under the AGLIC and XL policies.

---

[4]     Giant Eagle's Memo addresses only bodily injury, and does not address property damage or otherwise appear to claim there is any property damage or damage to property relating to any of the Opioid Lawsuits.  Consequently, Old Republic does not address or otherwise discuss property damage, but reserves all rights on this issue, to the extent that Giant Eagle is seeking recovery beyond purported damages because of bodily injury.

However, "trigger" is a threshold issue by which the Court will determine which, if any, policy periods are potentially implicated for defense and indemnity purposes. Depending on which "trigger" theory the Court applies here, it is possible that none of the policies in the 2015 to 2017 period would be triggered here. For instance, in the context of injuries spanning multiple policy periods, Pennsylvania courts have applied a "manifestation" trigger theory, under which only the policy in effect when the injury was ascertainable is triggered. *See, e.g.*, *Pennsylvania National Ins. Co. v. St. John*, 106 A.3d 1, 17 (Pa. 2014).[5] If the Court were to apply a manifestation trigger theory here, then based on the allegations of wrongful conduct and injuries dating back to 1999, it is possible if not likely that none of the policies in the 2015 to 2017 period would be triggered.[6]

Even if the Court concluded there is a *potential* of bodily injury during the referenced 2015 to 2017 time period—which Old Republic neither agrees nor concedes—the Court has no basis for concluding as a matter of law there was any bodily injury *in fact* during that referenced time period, particularly at this preliminary stage and juncture, at which point there has been no discovery. This issue presumably will be explored via discovery and motion practice in the future.

**C.     Giant Eagle Has Not Established that the Opioid Lawsuits Allege an "Occurrence"**

The policies define "occurrence" in part as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Giant Eagle claims the underlying Opioid Complaints allege an "accident." (Memo, at 9.) Completely ignoring all of the intentional acts and conduct allegations, Giant Eagle instead focuses on the Opioid Complaints' allegations of Giant Eagle's negligent or unintentional conduct. This includes Giant Eagle's failure to report suspicious orders when it knew or should have known that opioids were being diverted or

---

[5]     Giant Eagle contends that Pennsylvania law applies here.
[6]     Old Republic reserves all rights (including to submit further briefing) regarding the issue of trigger, which Giant Eagle has raised only in passing, and as a foregone conclusion.

dispensed based on suspicious orders; and Giant Eagle's failure to maintain effective controls to prevent diversion, or to investigate, report, or halt opioid orders that it knew or should have known were suspicious.  (Memo, at 10.)

Giant Eagle does not cite a single case applying Pennsylvania law to support its position that this alleged type of conduct in the opioid context constitutes a potentially covered "occurrence."  Even if the Court concluded that such alleged acts may *potentially* equate to an "occurrence"—which Old Republic neither agrees nor concedes—the Court has no basis for concluding at this time as a matter of law that any of the bodily injury that may have taken place during the 2015 to 2017 time period—which has yet to be established—was caused by any such occurrence; this is particularly true at this preliminary stage and juncture, at which point there has been no discovery.

In fact, it is possible that any bodily injury that took place during the 2015 to 2017 time period was caused by Giant Eagle's intentional conduct, and not by an occurrence.  As stated above, Giant Eagle has not established any bodily injury *in fact* during the referenced 2015 to 2017 time period, and it has not and cannot, establish on the current record that any such bodily injury was caused by an occurrence, issues that presumably will be explored via discovery in this litigation.  In any event, without establishing that an "occurrence" caused the "bodily injury" during the policy period, there can be no duty to defend.

### D.    Giant Eagle Has Not Established that a Single "Occurrence" Caused Bodily Injury

Giant Eagle claims that the Opioid Complaints assert a single "occurrence," and relies on the "cause test" set forth in various decisions applying Pennsylvania law.  Giant Eagle emphasizes what it has characterized as the "core theme" of the underlying Opioid Complaints—Giant Eagle's failure to maintain effective controls—as the "specific wrongful conduct alleged to support each

of the causes of action asserted against Giant Eagle" (Memo, at 12). However, this ignores other conduct that allegedly caused the injury at issue here, neglects the different conduct of the two separate plaintiff entities, and ignores other differences.

The significance of this issue is that in order to satisfy its SIR and deductible obligations under the Old Republic Policies, Giant Eagle must pay damages totaling at least $2 million for *each occurrence* (and within each triggered policy period). Accordingly, if there is more than one occurrence here, Giant Eagle's financial obligation may increase exponentially.

Similar to other issues identified here, the "number of occurrences" issue is premature, cannot be determined in the factual vacuum that exists at this current preliminary stage, and also is not necessary to be determined in the context of whether AGLIC and XL have a duty to defend Giant Eagle.

**E.      Giant Eagle Has Not Established that It Has Satisfied Its Deductible and SIR Obligations Under the Old Republic Policies**

Giant Eagle claims that each of the Old Republic Policies at issue provide a $1 million per occurrence limit of liability, which are subject to a $1 million self-insured retention and a $1 million deductible. (Memo, at 13.) Giant Eagle also claims that it has spent over $5.7 million defending the Opioid Lawsuits (Memo, at 2), and that its payment of defense costs satisfies both the SIR and deductible (Memo, at 14). Giant Eagle claims that once it has paid $2 million per occurrence in defense costs, "AGLIC and XL must step up and defend Giant Eagle." (Memo, at 14.)

As set forth above (Part I.B.), the Old Republic Policies issued to Giant Eagle are fully fronting policies under which Giant Eagle has both deductible and self-insured retention obligations, and under which the deductibles equal the policy limits. Further, pursuant to the SIRs, Giant Eagle is responsible to pay 100% of its defense costs outside of limits and outside the SIRs.

Despite Giant Eagle's claims, whether it has satisfied both its SIR and deductible obligations under *any* of the Old Republic Policies is disputed.  In its responses to AGLIC's and XL's joint requests for admission, Old Republic admitted that Giant Eagle's payment of defense costs *does not erode or satisfy* the SIR, deductible, or limits of liability under any of the Old Republic Policies.  (RFA nos. 9, 10, 11., Exhibit 1)

## III.    CONCLUSION

Giant Eagle's Motion does not seek any relief specifically from Old Republic.  However, Old Republic disagrees with Giant Eagle's incorrect factual and legal statements regarding the Old Republic Policies, particularly that the underlying Opioid Lawsuits seek "damages 'because of'" bodily injuries and thus are covered claims under the Old Republic Policies.  Further, Old Republic takes issue with Giant Eagle's unsupported conclusions that there are bodily injuries during the policy periods placed at issue; that those bodily injuries were caused by an occurrence; that the bodily injury was caused by a single occurrence; and that Giant Eagle has satisfied both its SIR and deductible obligations under the Old Republic Policies.  For the foregoing reasons, this Court should deny Giant Eagle's motion.

Dated:  January 10, 2020

Respectfully submitted,

PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP

By:  /s/ *Phillip R. Earnest*
Phillip R. Earnest
PA Id.: 83208
412-263-4374
pre@pietragallo.com

PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP

One Oxford Centre, 38th Floor
Pittsburgh PA  15219
Tel:    (412) 263-2000
Fax:    (412) 263-2001

CLAUSEN MILLER, P.C.
Amy R. Paulus, *pro hac vice* admission pending
Michael L. Duffy, *pro hac vice* admission pending
Clausen Miller P.C.
10 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
P: 312.855.1010 F: 312.606.7777
apaulus@clausen.com
mduffy@clausen.com

**Counsel for Old Republic Insurance Co.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2020, a true and correct copy of the foregoing has been

served via the Court's ECF system on the following counsel of record:

Scott D. Livingston, Esquire
Livingston@marcus-shapira.com
Marcus & Shapira
35th Floor, One Oxford Centre
Pittsburgh, PA 15219
*Counsel for Plaintiffs and Counter-Defendants,*
*Giant Eagle, Inc. and HBC Service Company*

Bernard P. Bell, Esquire
bellb@millerfriel.com
Brian G. Friel, Esquire
frielb@millerfriel.com
Tab R. Turano, Esquire
turanot@millerfriel.com
Tae E. Andrews, Esquire
andrewst@millerfriel.com
Miller Friel PLLC
1200 New Hampshire Avenue NW, Suite 800
Washington, DC 20036
*Counsel for Plaintiffs and Counter-Defendants,*
*Giant Eagle, Inc. and HBC Service Company*

Louis A. Bove, Esquire
LBove@bodellbove.com
Ronald (Rex) F. Brien, Jr., Esquire
RBrien@bodellbove.com
Bodell Bove, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
*Counsel for Defendant, Counter-Claimant, and Third-Party Plaintiff,*
*American Guarantee and Liability Insurance Company*

Bruce W. McCullough, Esquire (admitted *pro hac vice*)
BMcCullough@bodellbove.com
Bodell Bove, LLC
1225 N. King Street, Suite 1000
Wilmington, DE 19801
*Counsel for Defendant, Counter-Claimant, and Third-Party Plaintiff,*
*American Guarantee and Liability Insurance Company*

Michael M. Marick, Esquire (admitted *pro hac vice*)
mmarick@skarzynski.com
James S. Buino, Esquire
jbuino@skarzynski.com
Karen M. Dixon, Esquire (admitted *pro hac vice*)
kdixon@skarzynski.com
W. Joel Vander Vliet, Esquire (admitted *pro hac vice*)
wvandervliet@skarzynski.com
Skarzynski Marick Black LLP
353 N. Clark Street, Suite 3650
Chicago, IL 60654
*Counsel for Defendant, Counter-Claimant, and Third-Party Plaintiff,*
*American Guarantee and Liability Insurance Company*


Robert E. Dapper, Jr., Esquire
redapper@burnswhite.com
Matthew A. Meyers, Esquire
mameyers@burnswhite.com
Burns White LLC
48 26th Street
Pittsburgh, PA 15222
*Counsel for Defendant and Counter-Claimant,*
*XL Specialty Insurance Company*


John Grossbart, Esquire (admitted *pro hac vice*)
john.grossbart@dentons.com
Keith Moskowitz, Esquire (admitted *pro hac vice*)
keith.moskowitz@dentons.com
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
*Counsel for Defendant and Counter-Claimant,*
*XL Specialty Insurance Company*


Samantha J. Wenger, Esquire (admitted *pro hac vice*)
samantha.wenger@dentons.com
Dentons US LLP
4520 Main Street, Suite 1100
Kansas City, MO 64111-7700
*Counsel for Defendant and Counter-Claimant,*
*XL Specialty Insurance Company*

Roy Xiao, Esquire (admitted *pro hac vice*)
roy.xiao@dentons.com
Dentons US LLP
303 Peachtree Street NE, Suite 5300
Atlanta, GA 30308
*Counsel for Defendant and Counter-Claimant,*
*XL Specialty Insurance Company*

Alan T. Silko, Esquire
asilko@silkolaw.com
Silko & Associates, P.C.
80 Emerson Lane, Suite 1305
Bridgeville, PA 15017
*Counsel for Defendant and Third-Party Plaintiff,*
*XL Specialty Insurance Company*

*/s/ Phillip R. Earnest*
Phillip R. Earnest