## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GIANT EAGLE, INC. and HBC SERVICE
COMPANY,

    Plaintiffs,

  vs.

AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY and
XL SPECIALTY INSURANCE COMPANY,

    Defendants.
_____

AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY,

    Third-Party Plaintiff,

  vs.

OLD REPUBLIC INSURANCE COMPANY,

    Third-Party Defendant.
_____

XL SPECIALTY INSURANCE
COMPANY,

    Third-Party Plaintiff,

  vs.

OLD REPUBLIC INSURANCE
COMPANY,

    Third-Party Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:19-cv-00904-RJC

Judge Robert J. Colville

## OPINION

Robert J. Colville, United States District Judge

Before the Court is the Motion for Partial Summary Judgment on the Duty to Defend (ECF No. 75) filed by Plaintiffs Giant Eagle, Inc. and HBC Service Company (collectively, "Giant Eagle"). In this declaratory judgment action, Giant Eagle seeks a declaration that Defendants American Guarantee and Liability Insurance Company ("AGLIC") and XL Specialty Insurance Company ("XL") owe Giant Eagle a duty to defend and coverage with respect to multiple lawsuits pending against Giant Eagle in the action captioned *In re Nat'l Prescription Opiate Litig.*, No. 2804 (N. D. Ohio) ("Opioid MDL"). Compl. ¶¶ 1-2, ECF No. 46. The Opioid MDL plaintiffs seek to recover damages from Giant Eagle for harm allegedly caused by Giant Eagle's distribution and sale of prescription opioids. *Id.* Giant Eagle avers that, to date, AGLIC has "denied coverage and refused outright to defend or indemnify Giant Eagle" in the underlying lawsuits, and that "XL, after simply ignoring Giant Eagle's multiple requests for a defense for six months, issued a reservation of rights without assuming a defense." *Id.* at ¶ 2.

In its Motion, Giant Eagle seeks partial summary judgment declaring that AGLIC and XL have a duty to defend Giant Eagle in four cases (the "underlying lawsuits")[1] that have been transferred to the Opioid MDL. Br. in Supp. 1, ECF No. 76. AGLIC and XL collectively oppose Giant Eagle's Motion for Partial Summary Judgment, and Third-Party Defendant Old Republic Insurance Company ("Old Republic"), against whom AGLIC and XL have each filed a Third-Party Complaint (ECF Nos. 41 and 43), also opposes Giant Eagle's Motion. This Court has

---

[1] These cases are: *County of Cuyahoga, Ohio v. Purdue Pharma L.P., et al.*, Case No 17-OP-45004 (N.D. Ohio); *County of Summit, Ohio v. Purdue Pharma L.P., et al.*, Case No 18-OP-45090 (N.D. Ohio); *Artz, et al. v. Endo Health Solutions, Inc., et al.*, Case No 19-op-45459 (N.D. Ohio); and *Frost, et. al. v. Endo Health Solutions, Inc., et al.*, Case No 18-op-46327 (N.D. Ohio). *See* Proposed Order 2-3, ECF No. 75-1.

jurisdiction in this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.  Giant Eagle's

Motion has been fully briefed, and is ripe for disposition.

## I.      Factual Background & Procedural History

Unless otherwise noted, the following facts are not in dispute:[2]

Giant Eagle was covered by commercial general liability policies issued by Old Republic

which ran from April 1, 2015 to April 1, 2016 (the "2016 Old Republic Policy") and from April

1, 2016 to April 1, 2017 (the "2017 Old Republic Policy") (collectively, the "Old Republic

Policies").  Resp. to SOF ¶ 1, ECF No. 88.  Each of the Old Republic Policies provides a $1 million

per occurrence limit of liability, subject to a $1 million self-insured retention ("SIR") obligation

and a $1 million deductible.[3]  *Id*. at ¶ 3.  The Old Republic Policies define "self-insured retention"

as "the amount the insured legally must pay with respect to claims or 'suits' to which this insurance

applies."  Resp. to Additional SOF ¶ 10, ECF No. 94.  The Old Republic Policies' SIR

endorsements provide:

> **A.** Our obligations under the Coverages of the policy to pay damages on your behalf
> apply in excess of the "self insured retention".  The amount of the "self insured
> retention" is shown in the Schedule.
>
> **B.** The "self insured retention" may be satisfied by any combination of the
> following:

---

[2] In reciting the facts of this case, the Court will primarily cite to AGLIC and XL's Joint Response (ECF No. 88) to Giant Eagle's Concise Statement of Material Facts and Giant Eagle's Response (ECF No. 94) to AGLIC and XL's Concise Statement of Additional Material Facts, each of which quotes and responds to Giant Eagle's Concise Statement of Material Facts (ECF No. 77) and Supplemental Concise Statement (ECF No. 86) and AGLIC and XL's Concise Statement of Additional Material Facts, respectively.  The Court will cite to AGLIC and XL's Joint Response as "Resp. to SOF ¶ _____, ECF No. 88," and will cite to Giant Eagle's Response as "Resp. to Additional SOF ¶ _____, ECF No. 94."  Giant Eagle has attached an Appendix of Exhibits to its Concise Statement of Material Facts.  The Court will cite to any of the Exhibits set forth in that Appendix in the following manner: "App. Ex. _____, ECF No. 77."  The Court will cite to any Exhibits attached to Giant Eagle's Supplemental Concise Statement of Material Facts as: "Supplemental App. Ex. _____, ECF No. 86."  The Court will cite to any Exhibit attached to AGLIC and XL's Response to Giant Eagle's Concise Statement of Material Facts as follows: "Defs.' App. Ex. _____, ECF No. 88."

[3] The deductible "[e]quals the Limits of Insurance/Liability as provided under the policy plus all ALAE/Supplementary Payments."  App. Ex. 4 at 16, ECF No. 77.  There is seemingly no dispute that the amount payable under the deductible obligation at issue herein is $1 million.  *See* Br. in Supp. 13, ECF No. 76; Defs.' Br. in Opp'n 15, ECF No. 87.

     **1.** Damages and medical expenses payable under the applicable Coverage(s).

     **2.** Other amounts payable under the policy.

**C.** Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expense(s) (ALAE) do not satisfy the "self insured retention".

If Supplementary Payments and/or allocated loss adjustment expense(s) are not described in the policy, Supplementary Payments and/or allocated loss adjustment expense(s) are costs associated with the investigation or settlement of any claim or "suit" against an insured and include but are not limited to defense costs, attorneys' fees, premiums for appeal and bail bonds, prejudgment and post judgment interest, expenses incurred by the insurer, first aid expenses, and/or reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or "suit".

**D.** In addition to the Scheduled "self insured retention" you are responsible for payment of a proportion of Supplementary Payments and/or allocated loss adjustment expenses. Your proportion is equal to the ratio that the "self insured retention" amount bears to the damages and medical expenses paid. If there is no loss payment, your proportion of Supplementary Payments and/or allocated loss adjustment expenses is 100%.

**E.** The "self insured retention" will apply on the same basis as the Limits of Insurance (Limits of Liability) applicable to the claim or "suit" regardless of the number of persons or organizations who sustain damages. The "self insured retention" is an each and every "self insured retention" and does not have an aggregate.

**F.** The "self insured retention" will not reduce the applicable Limits of Insurance (Limits of Liability).

**G.** We do not have a duty to investigate, defend or settle any claim or "suit" for which there may be coverage under this insurance within the "self insured retention". Our right and duty to defend or settle any claim or "suit" do apply to any claim or "suit" that exceeds the "self insured retention".

You, at your own expense, must investigate, defend or settle all claims or "suits" within the "self insured retention". We retain the right to elect to join in the defense of such claims or "suits" and we will pay any expenses we incur in doing so.

Old Republic's Br. in Opp'n 3-4, ECF No. 89 (emphasis omitted) (quoting App. Ex. 3 at 21-22;

Ex. 4 at 18-19, ECF No. 77).  The Old Republic Policies' deductible endorsements, in relevant

part, provide:

> **A.** Our obligations under the Coverages of the policy to pay damages are subject to a deductible.  The deductible is shown in the Schedule.  Our obligations to pay damages apply only to the amount of damages in excess of the deductible shown in the Schedule.
>
> **B.** The deductible may be satisfied by any combination of the following:
>
>> **1.** Damages and medical expenses payable under the applicable Coverage(s).
>>
>> **2.** Other amounts payable under the policy.
>>
>> **3.** Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expenses (ALAE):
>>
>>> . . . .
>>
>> _X_ Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expenses (ALAE) do not satisfy the deductible.  In addition to the Scheduled deductible you are responsible for payment of Supplementary Payments and/or allocated loss adjustment expenses.
>>
>> If Supplementary Payments and/or allocated loss adjustment expenses (ALAE) are not described in the policy, Supplementary Payments and/or allocated loss adjustment expenses are costs associated with the investigation or settlement of any claim or "suit" against an insured and include but are not limited to defense costs, attorneys' fees, premiums for appeal and bail bonds, prejudgment and post judgment interest, expenses incurred by the insurer, first aid expenses, and/or reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or "suit".
>
> **C.** The deductible will apply on the same basis as the Coverage(s) Limits of Insurance/Limit of Liability applicable to the claim or "suit" regardless of the number of persons or organizations who sustain damages.
>
> **D.** The deductible amounts:
>
>> . . . .

_X_  Described in paragraph B.1. and B.2. will reduce the applicable Limits of Insurance/Limits of Liability.

*Id.* at 5-6 (emphasis omitted) (quoting App. Ex. 3 at 19-20; Ex. 4 at 16-17, ECF No. 77).  The Old Republic Policies describe "Supplementary Payments" as follows:

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limits of insurance.  We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit".  However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we gave paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

*Id.* at ¶ 14.[4]

---

[4] Giant Eagle and Old Republic separately entered into a Program Agreement (the "Program Agreement") that defines "Allocated Loss Adjustment Expenses" to include attorneys' fees.  Resp. to SOF ¶ 49, ECF No. 88.  The Program Agreement provides: "[t]o the extent that any terms or conditions of the aforesaid Policies are inconsistent with any of the terms or conditions of this Agreement, the latter are to be given effect and the former will be considered superseded by this Agreement."  *Id.* at ¶ 50.

The Old Republic Policies provide that Old Republic "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  Resp. to SOF ¶ 8, ECF No. 88.  Under the Old Republic Policies, "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'"  *Id.* at ¶ 13.  The Old Republic Polies further provide that Old Republic has the right and duty to defend against any suit seeking such damages.  *Id.* at ¶ 9.  The Old Republic Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  *Id.* at ¶ 10.  The Old Republic Policies apply to bodily injury if the bodily injury is caused by an "occurrence" that takes place in the "coverage territory" and occurs during the policy period. *Id.* at ¶ 11.  "Occurrence" is defined by the Old Republic Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.* at ¶ 12.

AGLIC issued Commercial Umbrella Liability Policy, No. AUC 2856587-17 (the "AGLIC Policy") to Giant Eagle for the period of April 1, 2015 to April 1, 2016.  Resp. to SOF ¶ 16, ECF No. 88.  The AGLIC Policy identifies the 2016 Old Republic Policy as "underlying insurance," and provides, under "Coverage A,"[5] that Old Republic will pay "those damages covered by this insurance in excess of the total applicable limits of underlying insurance."  *Id.* at ¶¶ 17-18.  AGLIC's duty to defend arises under the AGLIC Policy's Coverage A "when the applicable limit of underlying insurance . . . has been exhausted by payment of loss for which coverage is afforded under [the AGLIC Policy] . . . ."  *Id.* at ¶ 19.  The AGLIC Policy defines "loss" as "those sums actually paid that [Giant Eagle] is legally obligated to pay as damages for the settlement or

---

[5] Coverage A provides for the "Excess Follow Form Liability Insurance" provided by AGLIC that is relevant herein. *See* App. Ex. 1 at 13, ECF No. 77.

satisfaction of a claim[,]" and further provides that: (1) "[l]oss also includes defense expenses and supplementary payments if underlying insurance includes defense expenses and supplementary payments in the Limits of Insurance;" and (2) "[l]oss does not include defense expenses and supplementary payments if underlying insurance does not include defense expenses and supplementary payments in the Limits of Insurance."  *Id.* at ¶ 19; Resp. to Additional SOF ¶ 47, ECF No. 94.

XL issued Commercial Excess Follow Form and Umbrella Liability Policy No. US00074903LI16A (the "XL Policy") to Giant Eagle for the period of April 1, 2016 to April 1, 2017.  Resp. to SOF ¶ 20, ECF No. 88.  The XL Policy identifies the 2017 Old Republic Policy as scheduled underlying insurance.  *Id.* at ¶ 21.  Under Insuring Agreement A[6] in the XL Policy, XL is required to pay on behalf of Giant Eagle:

> [T]hose amounts [Giant Eagle] becomes legally obligated to pay as damages in excess of the  "scheduled underlying insurance" as a result of a "claim" covered by the "scheduled underlying insurance" and this policy, but only if the actual payment of "loss" to which this policy applies, by you or insurers providing "scheduled underlying insurance" exceeds the limits of the "scheduled underlying insurance" and any applicable and collectible "other insurance."

Resp. to Additional SOF ¶ 57, ECF No. 94 (quoting App. Ex. 3 at 47, ECF No. 77).  With respect to XL's duty to defend Giant Eagle, the XL Policy provides:

> [XL] will have the right and duty to defend any "suit" covered by Insuring Agreement A, but only if the actual payment of "loss" to which this policy applies, by you or insurers providing "scheduled underlying insurance" exceeds the limits of the "scheduled underlying insurance" and any applicable and collectible "other insurance."

*Id.* at ¶ 59.  The XL Policy defines loss as: "those sums you become legally obligated to pay as settlements or judgments in connection with a covered 'claim.'  'Loss' shall include expenses

---

[6] Insuring Agreement A provides for the "Excess Follow Form Liability" insurance that is relevant herein.  *See* App. Ex. 2 at 19, ECF No. 77

incurred to investigate a 'claim' or defend a 'suit' if so provided in the 'scheduled underlying insurance.'" *Id.* at ¶ 60. The XL Policy's Schedule of Underlying Limits identifies the 2017 Old Republic Policy and its limits and states that "[d]efense expenses are in addition to the limits." Resp. to Additional SOF ¶ 62, ECF No. 94.

Giant Eagle has been named as a defendant in multiple lawsuits, including, inter alia, the underlying lawsuits, by plaintiffs who seek to recover damages allegedly caused by Giant Eagle's distribution and dispensing of prescription opioids. Resp. to SOF ¶ 24, ECF No. 88; Resp. to Additional SOF ¶ 82, ECF No. 94. The *Artz* and *Frost* actions (collectively, the "NAS lawsuits") assert claims by legal guardians, on behalf of putative classes of legal guardians, of children diagnosed at birth with opioid dependence, known as Neonatal Abstinence Syndrome ("NAS"). Resp. to SOF ¶ 30, ECF No. 88. The complaints in the NAS lawsuits allege that NAS causes the plaintiff guardians' children to suffer health conditions and increased risk of certain health conditions as a result of their in utero exposure to opioids. *Id.* at ¶¶ 32-35. The plaintiffs in the NAS lawsuits seek damages for ongoing care allegedly necessitated by, inter alia, Giant Eagle's alleged wrongful conduct in distributing and dispensing opioids. *Id.* at ¶¶ 33-35.

The *Summit* and *Cuyahoga* actions (collectively, the "County lawsuits") were filed on behalf of Ohio counties seeking damages allegedly caused by Giant Eagle's alleged wrongful conduct in distributing and dispensing prescription opioids. *Id.* at ¶ 36. The plaintiffs in the County lawsuits allege that the opioid use resulting from Giant Eagle's conduct has led directly to "a dramatic increase in opioid abuse, addiction, overdose, and death throughout the United States," including in Ohio. *Id.* at ¶ 37. The complaints in the County lawsuits also aver that the plaintiffs in those actions do "not seek damages for death, physical injury to person, emotional distress, or physical damages to property, as defined under the Ohio Product Liability Act." *Id.* at ¶ 37; Resp.

9

to Additional SOF ¶ 82, ECF No. 99.  The complaints in the County lawsuits assert that the plaintiffs in those actions have suffered ongoing harm, and seek damages, inter alia, for emergency medical treatment, detoxification and addiction treatment, and recovery services related to opioid use of the County plaintiffs' citizens.  Resp. to SOF ¶ 39, ECF No. 88.  Each of the underlying lawsuits asserts, to some degree, that Giant Eagle "failed to design and operate systems to identify suspicious orders of prescription opioids, maintain effective controls against diversion, and halt suspicious orders when they were identified, thereby contributing to the oversupply of such drugs and fueling an illegal secondary market."  *Id.* at ¶ 44.

Giant Eagle asserts that it has spent at least $5.7 million in defending against the underlying lawsuits.  *Id.* at ¶ 47.  AGLIC has not reimbursed Giant Eagle for any of these purported defense costs.  *Id.* at ¶ 48.  Old Republic has not paid any defense costs to or on behalf of Giant Eagle with respect to any of the underlying lawsuits, and further has not paid any judgment or settlement to or on behalf of Giant Eagle with respect to any of the underlying lawsuits.  Resp. to Additional SOF ¶ 28-29, ECF No. 99.

Giant Eagle filed the operative First Amended Complaint (the "Complaint") (ECF No. 46) on October 22, 2019.  AGLIC and XL each filed an Answer and Counterclaim (ECF Nos. 52 and 53) on November 5, 2019.  Giant Eagle filed Answers (ECF Nos. 64 and 65) to AGLIC's and XL's Counterclaims on November 19, 2019.  AGLIC and XL filed their Third-Party Complaints on October 1, 2019 and October 7, 2019, respectively, and Old Republic filed Answers to the Third-Party Complaints (ECF Nos. 70 and 71) on December 6, 2019.  As explained by the Honorable Arthur J. Schwab, to whom this case was originally assigned, in his January 2, 2020 Memorandum Order (ECF No. 79) granting in part and denying in part AGLIC and XL's Joint Rule 56(d) Motion:

> The Third-Party Complaints filed by Defendants [AGLIC] and XL allege that if
> Plaintiffs prevail on their claim and obtain a declaration that a defense and/or

> indemnification is owed by [AGLIC and XL] with respect to one or more of the underlying opioid lawsuits, [AGLIC] and XL seek various declarations concerning the interplay between and among Old Republic, Giant Eagle, and [AGLIC and XL], as well as equitable contribution and contractual or equitable subrogation.

Mem. Order 2, ECF No. 85.

Giant Eagle filed its Motion for Partial Summary Judgment on December 12, 2019, along with a Brief in Support (ECF No. 76) and a Concise Statement of Material Facts (ECF No. 77). Giant Eagle filed a Supplemental Concise Statement of Material Facts (ECF No. 86) on January 6, 2020. AGLIC and XL, collectively, filed a Brief in Opposition (ECF No. 87) to Giant Eagle's Motion on January 10, 2020, along with a Concise Statement of Additional Material Facts (ECF No. 88) and a Joint Response to Giant Eagle's Concise Statements. Old Republic also filed a Response in Opposition (ECF No. 89) to Giant Eagle's Motion on January 10, 2020. On January 24, 2020, Giant Eagle filed a Response (ECF No. 94) to AGLIC and XL's Concise Statement of Additional Material Facts, and also filed a Combined Reply (ECF No. 93) to the Responses filed by AGLIC and XL and Old Republic. This matter was reassigned to the undersigned on February 4, 2020. Order, ECF No. 101. Giant Eagle filed a Notice of Supplemental Authorities (ECF No. 105) on June 26, 2020, and AGLIC and XL filed a Response (ECF No. 106) to that Notice on July 1, 2020. Giant Eagle filed a Second (ECF No. 107) and Third (ECF No. 108) Notice of Supplemental Authority on September 18, 2020 and September 23, 2020, and AGLIC and XL filed Responses (ECF Nos. 109 and 110) thereto on September 23, 2020 and October 5, 2020, respectively. On October 15, 2020, Giant Eagle filed a Reply to AGLIC and XL's Response to Giant Eagle's Third Notice of Supplemental Authority.

## II.    Legal Standard

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P.

56(a).  Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–19 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment.  Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment.  *Liberty Lobby*, 477 U.S. at 248.

### III.    Discussion

In his January 2, 2020 Memorandum Order granting in part and denying in part AGLIC and XL's Joint Rule 56(d) Motion, Judge Schwab described the scope of Giant Eagle's Motion for Partial Summary Judgment, as well as the issues presented therein, as follows:

> This Court is satisfied that, under Pennsylvania law, an insurance carrier's duty to defend differs greatly from its duty to provide coverage, regardless of whether that insurer is an excess or primary insurance carrier.
>
> As explained by the United States Court of Appeals for the Third Circuit:

An insurer's duty to defend "is a distinct obligation" that is "different from and broader than the duty to indemnify." *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 225 (3d Cir. 2005) (citations omitted). Because an insurer's duty to defend its insured in a lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide defense. *Id.* (citations omitted) [footnote omitted]. Under Pennsylvania law, which is applicable on the insurance coverage issue, a court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint. *Id.* at 226*; see also Gen. Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997). If the allegations of the underlying complaint potentially could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case. *Sikirica*, 416 F.3d at 226 (*citing Gen Accident Ins. Co. of Am.*, 692 A.2d at 1095).

*Ramara, Inc. v. Westfield Ins. Co.,* 814 F.3d 660, 673 (3d Cir. 2016). In addition, the Court of Appeals has also held:

To determine whether an obligation to defend exists under the usual liability policy, the "court typically looks to the allegations of the complaint to decide whether the third party's action against the insured states a claim covered by the policy." *Am. Ins. Grp. v. Risk Enter. Mgmt., Ltd.*, 761 A.2d 826, 829 (Del. 2000). So long as one count or claim is covered under the policy, the duty to defend is triggered. Any doubt or ambiguity as to the pleadings or the policy terms should be resolved in favor of the insured. *See Cont'l Cas. Co. v. Alexis I. duPont Sch. Dist.*, 317 A.2d 101, 105 (Del. 1974).

*Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 623 F.3d 135, 139–40 (3d Cir. 2010).

In the instant case, Plaintiffs' Motion for Partial Summary Judgment on the duty to defend issue (ECF 75), argues that this Court, upon comparing the allegations of the instant Complaint with the insurance policies' language, must order Defendants to defend Plaintiffs in the underlying lawsuits in accordance with the terms and conditions of those policies. Colloquially, Plaintiffs suggest this Court must apply the "eight-corners" test. *See Ramara, supra,* at 673-74 ("Importantly, Pennsylvania adheres to the [']four corners['] rule (also known as the [']eight corners['] rule), under which an insurer's potential duty to defend is [']determined *solely* by the allegations of the complaint in the [underlying]

13

action.[']" [(quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006))]).

Defendants contend that a determination on the duty to defend issue utilizing the "eight corners" rule cannot be performed because the insurance at issue in the instant case is excess insurance which "follows form" of the primary insurance, and thus there are additional questions to be answered prior to any determination with respect to the excess carrier's obligation to defend in the face of the factual averments set forth in the instant Complaint. Stated differently, Defendants suggest that because their policies are excess policies which overlay primary policies (issued by Old Republic) and a self-insured retention policy (governed by an agreement between Old Republic and Plaintiff Giant Eagle), those policies must first be exhausted (by a covered loss (or losses)) before Defendants' excess polic[i]es' duty to defend can be triggered. Defendants' Joint Motion to Extend Time (ECF 79) argues that because exhaustion is a prerequisite to the duty to defend, Plaintiffs will need to prove to this Court that all of the underlying policies have been exhausted, before an eight corners analysis can be performed by this Court to determine whether Defendants owe a duty to defend. Defendants further argue that in light of the amount of extrinsic evidence created by the layering of the policies and the need for the Court to first determine whether the underlying policies have been exhausted – which Defendants contend must first be obtained for the Court to consider before deciding Plaintiffs' Motion for Partial Judgment – there is not sufficient time for Defendant to complete the discovery necessary to Respond to Plaintiffs' Motion for Partial Summary Judgment on January 10, 2020.

The Court both agrees and disagrees with Defendants' position.

First, the Court finds no matter what type of insurance policy is at issue – excess, umbrella, primary – Pennsylvania law and the Federal Courts applying Pennsylvania law have consistently and uniformly held that an insurance company's duty to defend its insured is a distinct duty which differs from, and is broader than, its duty to indemnify its insured. Thus, this Court will not allow Defendants to conflate the policies' indemnification provisions with the policies' defense obligations.

To this end, this Court notes that in *Lexington Ins. Co. v. Charter Oak Fire Ins. Co*., 81 A. 3d 903, 909–10 (Pa. Super. 2013), the Superior Court of the Commonwealth of Pennsylvania, specifically discussed an excess insurance carrier's duty to defend the insured. In reaching its conclusion the Superior Court stated:

No Pennsylvania appellate court has addressed when an exhaustion clause triggers an excess insurer's duty to defend.

* * *

14

In our view, the duty to defend is sufficiently different from the duty to indemnify that we conclude that *Zeig* and *Koppers* are not persuasive. Clearly, one difference is the scope of the duty. The duty to defend is broader than the duty to indemnify. *See Am. and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc*., 606 Pa. 584, 2 A.3d 526, 540–41 (2010) *(Jerry's Sport Ctr.*.) However, the precise question here is not whether North River should be required to defend CMX, but rather it is when North River's duty arises. Thus, there is a temporal element implicit to the duty to defend that finds no corollary in the *Zeig* or *Koppers* analysis of the duty to indemnify. Moreover, we agree with recent precedent from the Second Circuit, distinguishing *Zeig*. In *Ali v. Fed. Ins. Co*., 719 F.3d 83, 94 (2d Cir.2013), the Second Circuit concluded that an excess insurer does have a relevant interest in awaiting actual payment of a settlement by the primary insurer. According to the Second Circuit, excess insurers "had good reason" to dissuade insureds from "structur[ing] inflated settlements with their adversaries . . . that would have the same effect as requiring [excess insurers] to drop down and assume coverage [prematurely]." *Id.*

Absent binding precedent to the contrary, our analysis is limited to applying longstanding principles to the interpretation of insurance contracts. *See Baumhammers*, 938 A.2d at 290; *Genaeya Corp*., 991 A.2d at 346–47. After reviewing the North River exhaustion clause, we conclude that its terms are clear and unambiguous. The clause provides that North River "will have the right and duty to defend the [i]nsured ... when the applicable limits of '[u]nderlying [i]nsurance' and '[o]ther [i]nsurance' have been exhausted by payment of judgments or settlements." Commercial Umbrella Policy, at 4 (emphasis added). To accept Lexington's interpretation of this clause improperly would render superfluous the "by payment of" language in the North River policy. We must give this language effect. *Baumhammers* at 290. Accordingly, we hold that North River's duty to defend is triggered by the actual payment of the relevant primary insurance.

*Lexington*, [81 A.3d] at 909 – 10 (emphasis in original).

Although no Party referenced *Lexington* in their briefs, the Court finds that Defendants' Joint Motion argues that most, if not all, of the discovery it seeks is being sought to disprove that the underlying policies have been exhausted by a covered loss (or losses) due to an occurrence or occurrences. Defendants claim they need this discovery to defend themselves as to whether they owe a duty defend and request additional time to flush out discovery on the sub-issues of loss and occurrence. Discovery of this nature clearly goes beyond whether Defendants owe a duty to defend.

Second, it appears to this Court that Plaintiffs have already supplied Defendants with the Old Republic insurance policies over which the Defendants' policies "follow form." *See* ECF 77-4 and ECF 77-5. In addition, it appears to this Court that Plaintiffs have also supplied Defendants with the language of its self-insured retention agreement with Old Republic. . . .

. . . .

Finally, as noted above, Plaintiffs bear the burden of proving that no material fact exists in order for the Court to declare that Defendants owe a duty to defend. . . .

Mem. Order 4-8, ECF No. 85. This Court agrees with the above-analysis, and will thus address Giant Eagle's Motion for Partial Summary Judgment in a manner consistent Judge Schwab's analysis.

The issues presented by Giant Eagle's Motion for Partial Summary Judgment are: (1) whether the complaints in the underlying lawsuits seek damages potentially covered by the AGLIC Policy and the XL Policy; and (2) whether Giant Eagle has paid more than $2 million in "loss," thus triggering AGLIC's and XL's duties to defend under the AGLIC Policy and the XL Policy. Br. in Supp. 1, ECF No. 76. Giant Eagle asserts that, when comparing the insurance contracts relevant herein and the complaints in the underlying lawsuits, it is clear that the complaints in the underlying lawsuits seek damages potentially covered under the relevant policies because: "(1) the plaintiffs [in the underlying lawsuits] seek damages potentially 'because of bodily injuries;' (2) the alleged bodily injuries potentially took place during [relevant] policy periods; and (3) the opioid lawsuits allege a single 'occurrence.'" *Id.* Giant Eagle further asserts that Giant Eagle's payment of its defense costs in the underlying lawsuits, which Giant Eagle asserts exceed the Old Republic Policies' limits, constitutes a "loss" under the AGLIC and XL Policies, thus triggering both AGLIC's and XL's duties to defend Giant Eagle in the underlying lawsuits. *Id.*

AGLIC and XL assert that Giant Eagle's Motion should be denied because Giant Eagle has not met its burden of establishing that the complaints in the underlying lawsuits seek damages for "bodily injury" caused by a single "occurrence" that first manifested during the periods of the AGLIC and XL Policies, and further because Giant Eagle has not established that Giant Eagle "has spent over $2 million for every triggered policy year with respect to any and each such covered 'occurrence.'"   Defs.' Br. in Opp'n 1, ECF No. 87.   AGLIC and XL further assert that Giant Eagle's Motion should be denied because Giant Eagle cannot prove exhaustion of the Old Republic Policies because the payment of defense costs does not satisfy Giant Eagle's SIR and deductible obligations under the Old Republic Policies.   *Id*.   AGLIC and XL argue that Giant Eagle contractually assumed the responsibility for payment of its defense costs, and that it cannot rely on a payment of those costs to trigger AGLIC's and XL's duties to defend.   *Id*.

Old Republic primarily takes issue with Giant Eagle's assertion in its Motion for Partial Summary Judgment that the plaintiffs in the underlying lawsuits seek damages that may be covered under the Old Republic Policies.   Old Republic's Br. in Opp'n 2, ECF No. 89.   Old Republic asserts that it "disputes Giant Eagle's unsupported legal conclusion that the [underlying lawsuits] are covered claims under the Old Republic Policies."   *Id*.

The arguments raised by Old Republic largely mirror those raised by AGLIC and XL, as the Defendants and the Third-Party Defendant each assert that Giant Eagle's Motion should be denied on the following bases: (1) Giant Eagle's failure to establish that the underlying lawsuits seek damages for "bodily injuries," Defs.' Br. in Opp'n 15, ECF No. 87; Old Republic's Br. in Opp'n 9-10, ECF No. 89; (2) Giant Eagle's failure to establish that the complaints in the underlying lawsuits allege an "occurrence" or "accident" under the Old Republic Policies, Defs.' Br. in Opp'n 13-14, ECF No. 87; Old Republic's Br. in Opp'n 10-11, ECF No. 89; (3) Giant Eagle's failure to

establish that the underlying lawsuits assert that a *single* "occurrence" caused "bodily injury," Defs.' Br. in Opp'n 12-13, ECF No. 87; Old Republic's Br. in Opp'n 11-12, ECF No. 89; (4) Giant Eagle's failure to establish that the Old Republic Policies, the AGLIC Policy, and/or the XL Policy were triggered in policy years 2015-2017, Defs.' Br. in Opp'n 10-12, ECF No. 87; Old Republic's Br. in Opp'n 9-10, ECF No. 89; and (5) Giant Eagle's failure to establish exhaustion of the Old Republic Policies, specifically on the basis that Giant Eagle's payment of defense costs does not satisfy its SIR and deductible obligations under the Old Republic Policies, Defs.' Br. in Opp'n 2-9, ECF No. 87; Old Republic's Br. in Opp'n 12-13, ECF No. 89.  In addition, AGLIC and XL argue that, even if Giant Eagle could prove exhaustion through payment of defense costs, there remains an issue of material fact as to whether Giant Eagle exhausted the Old Republic Policies' $1 million SIRs and $1 million deductibles for each relevant occurrence.  Defs.' Br. in Opp'n 15, ECF No. 87.

### A.  Do the Complaints in the Underlying Lawsuits Seek Damages Potentially Covered by the AGLIC and XL Insurance Policies?

Initially, the Court notes that many of the arguments raised by AGLIC and XL regarding whether the plaintiffs in the underlying lawsuits seek damages potentially covered by the AGLIC Policy and the XL Policy rely on their assertion that Giant Eagle cannot *definitively establish* that the underlying lawsuits are covered under the Policies.  AGLIC and XL rely heavily on their assertion that Giant Eagle must, at this stage of the litigation, establish that the underlying lawsuits are *actually*, as opposed to *potentially*, covered by the Old Republic Policies in order to establish that Giant Eagle has exhausted the Old Republic Policies, thus potentially triggering AGLIC's and XL's duties to defend in the underlying lawsuits under the AGLIC Policy and the XL Policy, which are excess insurance policies.  *See* Defs.' Br. in Opp'n 10, ECF No. 87 ("[Giant Eagle] also must

show which Opioid Complaints (if any) are actually covered — not that 'may be covered.'"); *id.* at 13 ("Because determining exhaustion — which is the necessary predicate to triggering the AGLIC and XL Policies — requires Giant Eagle to prove not simply that the Opioid Complaints may be covered under the Old Republic Policies, but that they (1) are actually covered; and (2) arise out of only one 'occurrence' — Giant Eagle bears the burden of making these showings under a duty to indemnify, not duty to defend, standard because this determination pertains to exhaustion."); *see also* Defs.' Resp. to Third Notice 2, ECF No. 110 ("Here, the Excess Policies expressly require that only covered claims exhaust limits. . . . Giant Eagle must show that the Complaints are *actually* covered—not just that they *may* be covered.").

The Court notes that AGLIC and XL raised the same argument before Judge Schwab in support of their Joint Rule 56(d) Motion, which sought additional time to oppose Giant Eagle's Motion for Partial Summary Judgment on the basis that additional discovery was necessary.  *See* Reply in Supp. of Defs.' Joint Rule 56(d) Motion 2, ECF No. 83 ("Even if Giant Eagle's exhaustion construct is accepted—i.e., that defense expenditures can erode the limits of all triggered Old Republic Policies—the Excess Policies are only triggered through the exhaustion of the underlying policies by *covered claims*, and, consistent therewith, Giant Eagle can only satisfy its SIRs and Deductibles through the *actual payment of covered claims*." (emphasis added)).  Judge Schwab squarely rejected this assertion in his January 2, 2020 Memorandum Order, specifically explaining:

> Defendants contend that a determination on the duty to defend issue utilizing the "eight corners" rule cannot be performed because the insurance at issue in the instant case is excess insurance which "follows form" of the primary insurance, and thus there are additional questions to be answered prior to any determination with respect to the excess carrier's obligation to defend in the face of the factual averments set forth in the instant Complaint.  Stated differently, Defendants suggest that because their policies are excess policies which overlay primary policies (issued by Old Republic) and a self-insured retention policy (governed by an agreement between Old Republic and Plaintiff Giant Eagle), those policies must first be exhausted (*by a covered loss (or losses)*) before Defendants'

excess polic[i]es' duty to defend can be triggered.  Defendants' Joint Motion to Extend Time (ECF 79) argues that because exhaustion is a prerequisite to the duty to defend, Plaintiffs will need to prove to this Court that all of the underlying policies have been exhausted, before an eight corners analysis can be performed by this Court to determine whether Defendants owe a duty to defend. . . .

> . . . .

First, the Court finds no matter what type of insurance policy is at issue – excess, umbrella, primary – Pennsylvania law and the Federal Courts applying Pennsylvania law have consistently and uniformly held that an insurance company's duty to defend its insured is a distinct duty which differs from, and is broader than, its duty to indemnify its insured.  *Thus, this Court will not allow Defendants to conflate the policies' indemnification provisions with the policies' defense obligations.*

> . . . .

Although no Party referenced *Lexington* in their briefs, the Court finds that Defendants' Joint Motion argues that most, if not all, of the discovery it seeks is being sought to disprove that the underlying policies have been exhausted by *a covered loss (or losses)* due to an occurrence or occurrences.  Defendants claim they need this discovery to defend themselves as to whether they owe a duty defend and request additional time to flush out discovery on the sub-issues of loss and occurrence. *Discovery of this nature clearly goes beyond whether Defendants owe a duty to defend.*

Mem. Order 5-8, ECF No. 85 (emphasis added).  AGLIC and XL did not file a motion for reconsideration with respect to these explicit holdings.  Rather, AGLIC and XL, in opposing Giant Eagle's Motion for Partial Summary Judgment on the basis that "Giant Eagle bears the burden of making these showings under a duty to indemnify, not duty to defend, standard because this determination pertains to exhaustion," Defs.' Br. in Opp'n 13, ECF No. 87, simply ignore Judge Schwab's above-holdings.

Judge Schwab's January 2, 2020 Memorandum Order held that discovery as to whether the policies at issue had been exhausted by a *covered* loss goes beyond whether AGLIC and XL owe a duty to defend.  The Court finds that Judge Schwab's holding with respect to the scope of Giant Eagle's Motion for Partial Summary Judgment, specifically with respect to the Court's analysis of

whether and when the duty to defend arises under the AGLIC Policy and the XL Policy, constitutes the law of the case in this matter.  Pursuant to the law of the case doctrine, a court is barred from reconsidering "matters once decided during the course of a single continuing lawsuit." *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 3d § 4478* at 788 (1981)).

AGLIC and XL have not asserted a basis, and this Court finds that there is no basis, to revisit Judge Schwab's analysis respecting the scope of Giant Eagle's Motion for Partial Summary Judgment, specifically with respect to the Court's analysis of whether and when the duty to defend arises under the AGLIC Policy and the XL Policy.  Further, the Court agrees with Judge Schwab's fundamentally sound and reasonable analysis respecting the scope of Giant Eagle's Motion and the standard this Court must apply in the duty to defend context.  Accordingly, to establish that AGLIC and XL owe a duty to defend, Giant Eagle must establish that there is at least one *potentially* covered claim under the Old Republic Policies in each of the underlying lawsuits.  *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) ("If the allegations of the underlying complaint *potentially* could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case."  (citing *Sikirica*, 416 F.3d at 226)); *see also Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 623 F.3d 135, 139 (3d Cir. 2010) ("So long as one count or claim is covered under the policy, the duty to defend is triggered.").  Contrary to AGLIC and XL's assertions, Giant Eagle is not required to establish, and this Court need not find, that such claim or claims are actually covered at this juncture in order to find that AGLIC and XL owe Giant Eagle a defense in the underlying lawsuits.

Accordingly, any argument that Giant Eagle has failed to definitively establish coverage in this case can be summarily rejected.[7]

Having so held, the Court, in determining whether AGLIC and XL owe Giant Eagle a duty to defend in the underlying lawsuits, must look to the complaints in the underlying lawsuits and the insurance policies at issue to determine whether each of the underlying lawsuits asserts a potentially covered claim. *See Ramara*, 814 F.3d at 673. In his January 2, 2020 Memorandum Order, Judge Schwab set forth the applicable standard as follows:

> As explained by the United States Court of Appeals for the Third Circuit:
>
> An insurer's duty to defend "is a distinct obligation" that is "different from and broader than the duty to indemnify." *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 225 (3d Cir. 2005) (citations omitted). Because an insurer's duty to defend its insured in a lawsuit is broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify an insured for a judgment in an action for which it was not required to provide defense. *Id.* (citations omitted) [footnote omitted]. Under Pennsylvania law, which is applicable on the insurance coverage issue, a court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint. *Id.* at 226*; see also Gen. Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997). If the allegations of the underlying complaint potentially could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case. *Sikirica*, 416 F.3d at 226 (*citing Gen Accident Ins. Co. of Am.*, 692 A.2d at 1095).

*Ramara, Inc. v. Westfield Ins. Co.,* 814 F.3d 660, 673 (3d Cir. 2016).

---

[7] The Court further notes that Old Republic also consistently argues that Giant Eagle has not conclusively established, based on the record before the Court, that any bodily injury *in fact* took place, that any such bodily injury was caused by an occurrence that took place between 2015 and 2017, or that a single occurrence caused the alleged bodily injuries. Old Republic's Br. in Opp'n 6-12, ECF No. 89. Old Republic asserts that these issues are premature and cannot be determined at this preliminary stage without the benefit of discovery, and that this Court thus cannot address whether AGLIC and XL owe a duty to defend in the underlying lawsuits. *Id.* Such an argument, again, ignores Judge Schwab's clear holding in his January 2, 2020 Memorandum Order and the clear standard applied under Pennsylvania law in the duty to defend context, i.e. whether, based only on review of the insurance policies at issue and the allegations in the underlying complaints, the underlying lawsuits assert a claim that is potentially covered under the relevant insurance policies. *See Ramara*, 814 F.3d at 673.

Mem. Order 4, ECF No. 85.  The Superior Court of Pennsylvania, in quoting the Supreme Court

of Pennsylvania, has explained:

> As long as the complaint might or might not fall within the policy's coverage, the insurance company is obliged to defend.  *Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.*
>
> The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint.  An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy.  In making this determination, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured.  Indeed, the duty to defend is not limited to meritorious actions; it even extends to actions that are groundless, false, or fraudulent as long as there exists the possibility that the allegations implicate coverage.

*Lexington Ins. Co. v. Charter Oak Fire Ins. Co.*, 81 A.3d 903, 910–11 (Pa. Super. 2013) (quoting

*Jerry's Sport Ctr.*, 2 A.3d at 540).

### 1.  Do the Underlying Complaints Seek Damages Because of Bodily Injury?

AGLIC, XL, and Old Republic assert that the complaints in the County lawsuits do not

seek damages "because of bodily injury," and are thus not potentially covered under the Old

Republic Policies or, in turn, the AGLIC Policy and the XL Policy.  The Old Republic Policies

provide that Old Republic "will pay those sums that the insured becomes legally obligated to pay

as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

Resp. to SOF ¶ 8, ECF No. 88.  Under the Old Republic Policies, "[d]amages because of 'bodily

injury' include damages claimed by any person or organization for care, loss of services or death

resulting at any time from the 'bodily injury.'"  *Id.* at ¶ 13.  The Old Republic Policies define

"bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at ¶ 10.

The complaints in the NAS lawsuits allege that NAS causes the plaintiff guardians' children to suffer health conditions and increased risk of certain health conditions as a result of their in utero exposure to opioids, and seek damages for ongoing care allegedly necessitated by, inter alia, Giant Eagle's alleged wrongful conduct in distributing and dispensing opioids.[8] *Id.* at ¶¶ 32-35. The Ohio County plaintiffs in the County lawsuits allege that the opioid use among the plaintiffs' citizens resulting from Giant Eagle's allegedly wrongful conduct has led directly to a dramatic increase in opioid abuse, addiction, overdose, and death throughout the United States, including in Ohio. *Id.* at ¶ 37. The complaints in the County lawsuits also aver that the plaintiffs in those actions do "not seek damages for death, physical injury to person, emotional distress, or physical damages to property, as defined under the Ohio Product Liability Act." *Id.* at ¶ 37; Resp. to Additional SOF ¶ 82, ECF No. 99. The complaints in the County lawsuits assert that the County plaintiffs have suffered ongoing harm, and seek damages, inter alia, for emergency medical treatment, detoxification and addiction treatment, and recovery services related to opioid use of the County plaintiffs' citizens. Resp. to SOF ¶ 39, ECF No. 88.

Several courts have interpreted materially identical "because of bodily injury" insurance policy provisions in conjunction with similar or identical lawsuits related to the opioid epidemic brought by governmental entities and found that the similar or identical underlying lawsuits seek damages because of bodily injury. In *Cincinnati Ins. Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771 (7th Cir. 2016), the United States Court of Appeals for the Seventh Circuit considered whether an

---

[8] Neither AGLIC and XL nor Old Republic assert that the complaints in the NAS lawsuits fail to set forth claims which seek damages "because of bodily injury." Further, the Court finds, at this juncture, that the complaints in the NAS lawsuits contain allegations sufficient to support a finding that the NAS lawsuits involve claims which seek damages because of bodily injury.

underlying lawsuit brought by West Virginia against pharmaceutical distributors for those distributors' alleged contribution to the state's epidemic of prescription drug abuse was potentially covered under an insurance policy that provided coverage for suits seeking damages "because of bodily injury." The Seventh Circuit ultimately held that the insurer owed a duty to defend due to the presence of a potentially covered claim in the underlying lawsuit, *H.D. Smith*, 829 F.3d at 775, and explained:

> Here, West Virginia alleged that its citizens suffered bodily injuries and the state spent money caring for those injuries—money that the state seeks in damages. On its face, West Virginia's suit appears to be covered by Cincinnati's policy. Cincinnati argues to the contrary, stressing that West Virginia seeks its own damages, not damages on behalf of its citizens. But so what? Cincinnati's argument is untethered to any language in the policy. At oral argument, we discussed the following example. Suppose a West Virginian suffers bodily injury due to his drug addiction and sues H.D. Smith for negligence. Cincinnati's counsel acknowledged that such a suit would be covered by its policy. Now suppose that the injured citizen's mother spent her own money to care for her son's injuries. Cincinnati's counsel acknowledged that her suit would be covered too—remember the policy covers "damages claimed by any person or organization for care ... resulting ... from the bodily injury."
>
> The mother's suit is covered even though she seeks her own damages (the money she spent to care for her son), not damages on behalf of her son (such as his pain and suffering or money he lost because he missed work). Legally, the result is no different merely because the plaintiff is a state instead of a mother.

*Id.* at 774; *see also Acuity v. Masters Pharm., Inc.*, No. C-190176, 2020 WL 3446652, at * 6 (Ohio Ct. App., June 24, 2020) (the Ohio First District Court of Appeals finding "that there *is* arguably a causal connection between [insured's] alleged conduct and the bodily injury suffered by individuals who became addicted to opioids, overdosed, or died, and the damages suffered by the governmental entities (money spent on services like emergency, medical care, and substance-abuse treatment)[,]" and also explaining that "[i]t is not unprecedented for insurers to defend insureds against claims asserted by governmental entities, even where the government itself did not sustain bodily injury or property damage.").

In *Rite Aid Corp. v. ACE Am. Ins. Co.*, C.A. No. N19C-04-150 EMD CCLD, 2020 WL 5640817 (Del. Super. Ct. Sept. 22, 2020), the Superior Court of Delaware, applying both Pennsylvania and Delaware law after finding that the two did not conflict, considered whether the same County lawsuits at issue herein asserted potentially covered claims under a policy that provided coverage for "'sums' that [the insured] 'becomes legally obligated to pay as damages because of "personal injury"....'"[9] *Rite Aid*, 2020 WL 5640817, at *13. The *Rite Aid* court agreed with the reasoning set forth in *H.D. Smith* and *Acuity*, and explained that it had "analyzed the allegations in the [County lawsuits]" and ultimately found "that some of the economic losses sought by the governmental entities are arguably because of bodily injury." *Id.* at *16. Similarly, in *Cincinnati Insurance Co. v. Discount Drug Mart, Inc.*, Case No. CV-19-913990 (Ohio Ct. C.P. Sep. 9, 2020), the Cuyahoga County Common Pleas Court, also addressing the same County lawsuits at issue in this case, found that the County lawsuits' claim for absolute public nuisance could result in damages sought because of bodily injury, and granted summary judgment in favor of the insured with respect to the duty to defend. *Discount Drug Mart*, Case No. CV-19-913990, at *22-23.

In the cases summarized above, courts addressed whether materially similar or identical opioid lawsuits sought damages because of bodily injury such that the duty to defend arose under materially identical "because of bodily injury" insurance policy provisions. Those courts found that such complaints sought damages because of bodily injury. The Court agrees with the reasoning of the persuasive, though nonbinding, cases discussed above, and finds that AGLIC, XL, and Old Republic fail to sufficiently distinguish these cases, which include a case wherein the Superior Court of Delaware applied Pennsylvania law to a materially similar set of facts. The

---

[9] The insurance policy in Rite Aid defined "personal injury" to include "bodily injury," which defined identically to the definition of "bodily injury" set forth in the Old Republic Policies.

plaintiffs in the County lawsuits seek to recover damages for losses, and specifically costs related to emergency medical treatment, detoxification and addiction treatment, and recovery services, that they allegedly sustained treating and addressing bodily injuries such as opioid abuse, addiction, overdose, and death suffered by the County plaintiffs' citizens, and allege that these injuries resulted from Giant Eagle's allegedly wrongful conduct in distributing and dispensing prescription opioids.  Despite the fact that the plaintiffs in the County lawsuits do not allege that *they* suffered bodily injury or property damage, they do seek damages *because* of bodily injury. Thus, the complaints in the County lawsuits allege bodily injuries, and arguably seek damages because of bodily injury, and the arguments to the contrary raised by AGLIC, XL, and Old Republic are without merit.

Moreover, the sources relied upon by AGLIC, XL, and Old Republic in arguing that the County lawsuits do not assert claims that seek damages because of bodily injury are not persuasive. In asserting that the plaintiffs in the County lawsuits do not seek damages "because of bodily injuries," AGLIC, XL, and Old Republic rely heavily on *American & Foreign Ins. Co. v. Jerry's Sport Ctr.*, 2003 WL 25884676 (Pa. Com. Pl. Feb. 25, 2003), *aff'd*, 852 A.2d 1241 (Pa. Super. Ct. 2004).  The Court notes that the Supreme Court of Pennsylvania explicitly found the holding of the trial court in *Jerry's Sport Center* upon which AGLIC, XL, and Old Republic rely to be "suspect,"[10] *see Jerry's Sport Ctr.*, 2 A.3d at 531 n.4, and further explained that: (1) "[i]t was not immediately apparent whether the claim against Insured for bodily injury was or was not covered[;]" (2) "[i]t was immediately apparent, however, that the claim might potentially be covered[;]" and (3) "[t]he trial court's subsequent declaratory judgment determination that the claim was not covered relieved Royal of having to defend the case going forward, but did not

---

[10]*See Jerry's Sport Ctr.*, 2 A.3d at 531 n.4 ("Although we find this holding suspect, it is not before us for review.").

somehow nullify [Royal's] initial determination that the claim was potentially covered." *Jerry's Sport Ctr.*, 2 A.3d at 543.  Moreover, *Jerry's Sport Center* is distinguishable in that the trial court had found that the remedy sought in that case was "not the award of damages for bodily injury, but, rather, contributions to a fund for the purpose of the education, supervision, and regulation of gun dealers." *Id.* at 531.  The plaintiffs in the County lawsuits seek to recover damages for losses sustained by the County plaintiffs in treating and addressing injuries sustained by their citizens.[11]

### 2. Do the Underlying Lawsuits Allege that the Purported "Bodily Injuries" were Caused by an "Occurrence" or "Accident" as Defined in the Old Republic Policies?

The Old Republic Policies apply to bodily injury if the bodily injury is caused by an "occurrence" that takes place in the "coverage territory" and occurs during the policy period.  Resp. to SOF ¶ 11, ECF No. 88.  "Occurrence" is defined by the Old Republic Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at ¶ 12.  The Supreme Court of Pennsylvania has "established that the term 'accident' within insurance polic[i]es refers to an unexpected and undesirable event occurring unintentionally, and that the key term in the definition of the 'accident' is 'unexpected' which implies a degree of fortuity." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa. 2007) (citing *Kvaerner*, 908 A.2d at 898).  "An injury therefore is not 'accidental' if the injury was the natural and expected

---

[11] The Court further notes that any reliance *Cincinnati Ins. Co. v. Richie Enterprises LLC*, No. 1:12-CV-00186-JHM, 2014 WL 3513211, at *5 (W.D. Ky. July 16, 2014) is misplaced because the district court in *Richie* relied on a United States Court of Appeals for the Seventh Circuit decision which has since been distinguished in the context of opioid lawsuits by the Seventh Circuit in *H.D. Smith*.  *See H.D. Smith*, 829 F.3d at 774–75 ("But [*Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 616 (7th Cir. 2010)] is readily distinguishable. . . . [I]mportantly, 'the plaintiffs [in *Medmarc*] never allege[d] that they or their children ever used the products or were actually exposed to the [harmful chemical].'  In other words, there was 'no claim of bodily injury in any form.'" (citations omitted)).  Similarly, *Travelers Prop. Cas. Co. of Am. v. Anda, Inc.*, 90 F. Supp. 3d 1308, 1314 (S.D. Fla. 2015), *aff'd*, 658 F. App'x 955 (11th Cir. 2016) relied on *Richie*, and the Eleventh Circuit declined to reach the issue of whether the underlying complaints in that case sought damages because of bodily injury, *see Travelers Prop. Cas. Co. of Am. v. Anda, Inc.*, 658 F. App'x 955, 958 (11th Cir. 2016).

result of the insured's actions." *Donegal*, 938 A.2d at 292.  While intentional conduct does not qualify as "accidental," negligence on the part of the insured may qualify as "accidental." *Baumhammers*, 938 A.2d at 291.

Each of the underlying lawsuits asserts, to some degree, that Giant Eagle "failed to design and operate systems to identify suspicious orders of prescription opioids, maintain effective controls against diversion, and halt suspicious orders when they were identified, thereby contributing to the oversupply of such drugs and fueling an illegal secondary market."  Resp. to SOF ¶ 44, ECF No. 88.  The complaints in the NAS lawsuits assert claims and allegations of negligence with respect to such conduct, *see* App. Ex. 9 at ¶¶ 413-30; Ex. 10 at ¶¶ 413-30, ECF No. 77, and such claims sufficiently allege an "accident" such that this Court cannot, at this juncture, find that there is no potentially covered claim in the NAS lawsuits, *see Baumhammers*, 938 A.2d at 291.  The Court notes that *The Travelers Prop. Cas. Co. of Am. v. Actavis, Inc.*, 225 Cal. Rptr. 3d 5 (Cal. Ct. App. 2017), upon which AGLIC and XL rely, is readily distinguishable, as the underlying lawsuits in that case involved "allegations that [the defendants] engaged in 'a common, sophisticated, and highly deceptive marketing campaign' aimed at increasing sales of opioids and enhancing corporate profits," which the California 4th District Court of Appeal found "*can only describe deliberate, intentional acts*."  *Actavis*, 225 Cal. Rptr. 3d at 17 (emphasis added).  The Court finds that the allegations and claims of negligence in the NAS lawsuits, which clearly do not involve allegations of intentional conduct, sufficiently allege an "occurrence."

Further, each of the complaints in the County lawsuits asserts a claim for absolute public nuisance based, at least in part, upon Giant Eagle's alleged violation of federal and Ohio statutes and regulations, specifically by, inter alia, "[distributing and selling] opioids prescribed by 'pill mills' when Defendants knew *or should have known* the opioids were being prescribed by 'pill

mills.'"   App. Ex. 5 at ¶ 1054; Ex. 7 at ¶ 1062, ECF No. 77 (emphasis added).  These absolute

public nuisance claims are supported in part by allegations materially similar to those asserted in

support of the NAS plaintiffs' negligence claims.  *See* App. Ex. 5 at ¶ 502; Ex. 7 at ¶ 518, ECF

No. 77 ("Defendants breached these duties by failing to: (a) control the supply chain; (b) prevent

diversion; (c) report suspicious orders; and (d) halt shipments of opioids in quantities they knew

*or should have known* could not be justified and were indicative of serious problems of overuse of

opioids." (emphasis added)).  The inclusion of these absolute public nuisance claims, which are

based, at least in part, on what Giant Eagle *should have known* with respect to its opioid distribution

and sales, in the County lawsuits is sufficient to potentially support a finding that the consequences

of Giant Eagle's alleged actions were unexpected or fortuitous.

The Court further finds that there is no basis to conclude, based upon the record before the

Court at this juncture, that the injuries at issue, specifically the severity of the opioid epidemic and

the resultant lawsuits, were the natural and expected results of Giant Eagle's distribution and sale

of prescription opioids.  *See Rochester Drug Co-Operative, Inc. v. Hiscox Ins. Co., Inc.*, No. 6:20-

CV-06025 EAW, 2020 WL 3100848, at *16 (W.D.N.Y. June 11, 2020) ("Nothing before the Court

shows that Plaintiff had knowledge of the extent of the damage caused by its alleged unlawful drug

distribution, and the Court cannot say that Plaintiff knew without any doubt when it was filling

opioid orders that it would eventually face over 30 civil lawsuits filed by different state entities.").

The Court again notes that, in the duty to defend context, Giant Eagle need only establish the

existence of a single, *potentially* covered claim in the underlying lawsuits in order to trigger the

duty to defend on the part of AGLIC and/or XL.  *See Ramara*, 814 F.3d at 673.  The Court finds

that the allegations set forth in the complaints in the underlying lawsuits, and specifically those in

support of the NAS plaintiffs' negligence claims and the County plaintiffs' absolute public

nuisance claims, rely, at least in part, on the alleged negligence of Giant Eagle, and that the result of that alleged negligence could be found to be unexpected and fortuitous.  Accordingly, the Court finds that each of the underlying lawsuits alleges an "accident," and thus and "occurrence," under the Old Republic Policies, and that the arguments to the contrary raised by AGLIC, XL, and Old Republic lack merit at this juncture.

### 3. Do the Underlying Lawsuits Assert that a Single "Occurrence" Caused Bodily Injury During the Relevant Policy Periods?

In their respective Briefs, AGLIC, XL, and Old Republic argue that Giant Eagle fails to establish that the underlying lawsuits assert that a *single* occurrence caused bodily injury, and that, if more than one occurrence is ultimately established, Giant Eagle's per occurrence SIR and deductible obligations would have to be satisfied more than once.  *See* Defs.' Br. in Opp'n 12-13, ECF No. 87; Old Republic's Br. in Opp'n 12, ECF No. 89.  Initially, the Court notes that the arguments raised by AGLIC and XL and Old Republic regarding whether the underlying lawsuits assert a single occurrence are focused entirely on Giant Eagle's purported failure to conclusively establish that a single occurrence actually, as opposed to potentially, caused bodily injury in the policy years at issue.  *See* Defs.' Br. in Opp'n 12, ECF No. 87 (arguing that the complaints in the underlying lawsuits "raise questions of fact regarding the number of occurrences."); Old Republic's Br. in Opp'n 12, ECF No. 89 (arguing that "the 'number of occurrences' issue is premature" and that it "cannot be determined in the factual vacuum that exists at this current preliminary stage . . . .").  The Court again notes that these arguments fail to take into account the express holdings set forth in Judge Schwab's January 2, 2020 Memorandum Order, as well as Giant Eagle's burden with respect to establishing the duty to defend.  *See* Mem. Order 8, ECF No. 85 ("Defendants claim they need this discovery to defend themselves as to whether they owe a

duty defend and request additional time to flush out discovery on the sub-issues of loss and occurrence. Discovery of this nature clearly goes beyond whether Defendants owe a duty to defend."). The Court further agrees with Giant Eagle that the arguments set forth by AGLIC, XL, and Old Republic with respect to the number of occurrences at issue in the underlying lawsuits essentially concede "that the complaints [in the underlying lawsuits] *potentially* allege a single occurrence." Reply 10, ECF No. 93.

Further, each of the underlying lawsuits asserts, to some degree, that Giant Eagle, as a distributor and dispenser of prescription opioids, "failed to design and operate systems to identify suspicious orders of prescription opioids, maintain effective controls against diversion, and halt suspicious orders when they were identified, thereby contributing to the oversupply of such drugs and fueling an illegal secondary market." Resp. to SOF ¶ 44, ECF No. 88. In determining whether there is a single occurrence under an insurance policy, courts applying Pennsylvania law look to whether there is "one proximate, uninterrupted and continuing cause which resulted in all of the injuries and damage." *Sunoco, Inc. v. Illinois Nat. Ins. Co.*, 226 F. App'x 104, 107 (3d Cir. 2007) (quoting *Donegal Mut. Ins. Co. v. Baumhammers*, 893 A.2d 797, 813 (Pa. Super. 2006)). "This 'cause test' . . . holds that '[a]s long as the injuries stem from one proximate cause there is a single occurrence.'" *Sunoco*, 226 F. App'x at 107 (quoting *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d 56, 61 (3d Cir.1982)). "The number and magnitude of injuries and the number of plaintiffs do not affect the determination." *Id.* It is certainly possible, given the facts alleged in the complaints in the underlying lawsuits, that a court could find that a single occurrence, i.e. Giant Eagle's comprehensive failure to maintain effective controls over its opioid distribution and sales, resulted in the injuries suffered by the plaintiffs in the underlying lawsuits. As such, the

Court finds that the underlying lawsuits allege facts that would potentially support a finding of a single occurrence.

AGLIC and XL and Old Republic also argue that the underlying complaints do not set forth bodily injury that occurred during the policy years at issue (2015-2017). Defs.' Br. in Opp'n 10, ECF No. 87; Old Republic's Br. in Opp'n 9, ECF No. 89. AGLIC and XL urge this Court to apply the "first manifestation rule" under Pennsylvania law in determining when the bodily injuries alleged in the underlying lawsuits occurred. Defs.' Br. in Opp'n 11, ECF No. 87. Under the first manifestation rule, insurance coverage is triggered "when the injurious effects of the negligent act *first manifest themselves* in a way that would put a reasonable person on notice of injury." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 11 (Pa. 2014) (quoting *D'Auria v. Zurich Ins.*, 507 A.2d 857, 861 (Pa. Super. 1986)).

In asserting that the underlying complaints do not set forth bodily injury that occurred in the policy years at issue (2015-2017), AGLIC, XL, and Old Republic again advance arguments that Giant Eagle cannot, at this juncture and without the benefit of discovery, conclusively establish coverage under the Old Republic Policies. *See* Defs.' Br. in Opp'n 12, ECF No. 87 ("The four Opioid Complaints allege losses that could have manifested in numerous different policy years, which presents factual questions precluding summary judgment, but in any event losses allegedly occurred well before the two years at issue in the Motion."); Old Republic's Br. in Opp'n 10, ECF No. 89 ("Even if the Court concluded there is a *potential* of bodily injury during the referenced 2015 to 2017 time period—which Old Republic neither agrees nor concedes—the Court has no basis for concluding as a matter of law there was any bodily injury *in fact* during that referenced time period, particularly at this preliminary stage and juncture, at which point there has

been no discovery.  This issue presumably will be explored via discovery and motion practice in the future.").

In arguing that Giant Eagle cannot definitively establish that bodily injuries occurred during the policy years at issue, AGLIC, XL, and Old Republic again ignore the holdings set forth in Judge Schwab's January 2, 2020 Memorandum Order and the standard that this Court must apply in the duty to defend context, and effectively concede that the underlying lawsuits assert injuries which potentially could have first manifested during the policy years at issue.  Further, the complaints in the underlying lawsuits allege bodily injury occurring from 1999 to the present, Resp. to SOF ¶ 41, ECF No. 88, and the Court agrees with the arguments set forth by AGLIC, XL, and Old Republic that the record before this Court is insufficient for purposes of determining that there was, in fact, bodily injury which first manifested during the policy periods at issue.  AGLIC, XL, and Old Republic effectively concede that it is simply not clear, based upon a review of the complaints in the underlying lawsuits, at what point the injuries sustained by the plaintiffs in the underlying lawsuits manifested in a way that would put a reasonable person on notice of the injuries suffered.  The Court thus finds that the plaintiffs in the underlying lawsuits have alleged injuries that *could potentially* be determined to have first manifested during the policy years at issue.

For all of the reasons discussed above, the Court finds that Giant Eagle has established that the underlying lawsuits assert claims that are potentially covered by the Old Republic Policies, and, thus, the AGLIC Policy and the XL Policy.  Accordingly, so long as Giant's Eagle's payment of defense costs in the underlying lawsuits can trigger the duty to defend under the AGLIC Policy and the XL Policy, AGLIC and XL each owe a duty to defend Giant Eagle in the underlying lawsuits.

**B. Does Giant Eagle's Payment of Defense Costs in the Opioid MDL Trigger AGLIC's and XL's Duties to Defend?**

Giant Eagle asserts that the AGLIC Policy and the XL Policy "impose the duty to defend when a specified quantum of money (the underlying limits) has been satisfied by payment of 'loss' to which the excess policies apply." Reply 3, ECF No. 93. This issue requires inquiry as to whether Giant Eagle's payment of defense costs in the underlying lawsuits constitutes a "loss" as defined in the AGLIC Policy and the XL Policy. If it does, then, under the terms of the AGLIC Policy and the XL Policy, both AGLIC and XL owe a duty to defend Giant Eagle in the underlying lawsuits. This inquiry ultimately requires the Court to determine whether, under the Old Republic Policies, defense costs constitute "Supplementary Payments" or "other amounts payable under the [Old Republic Policies]." Giant Eagle argues that, if defense costs are "other amounts payable" under the Old Republic Policies, "then they satisfy the SIR and deductible [obligations under the Old Republic Policies], constitute 'loss,' and trigger the duty to defend." *Id.*

With respect to interpretation of an insurance policy, the Supreme Court of Pennsylvania has explained:

> Our primary goal in interpreting a policy, as with interpreting any contract, is to ascertain the parties' intentions as manifested by the policy's terms. [*401 Fourth Street v. Investors Insurance Co.*, 879 A.2d 166, 170 (Pa. 2005)]. "When the language of the policy is clear and unambiguous, [we must] give effect to that language." *Id.* Alternatively, when a provision in the policy is ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *Id.*

*Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006).

As set forth above, AGLIC's duty to defend arises under the AGLIC Policy "when the applicable limit of underlying insurance . . . has been exhausted by payment of loss for which

coverage is afforded under [the AGLIC Policy] . . . ." *Id.* at ¶ 19. The AGLIC Policy defines "loss" as "those sums actually paid that [Giant Eagle] is legally obligated to pay as damages for the settlement or satisfaction of a claim[,]" and further provides that: (1) "[l]oss also includes defense expenses and supplementary payments if underlying insurance includes defense expenses and supplementary payments in the Limits of Insurance;" and (2) "[l]oss does not include defense expenses and supplementary payments if underlying insurance does not include defense expenses and supplementary payments in the Limits of Insurance." Resp. to SOF ¶ 19, ECF No. 88; Resp. to Additional SOF ¶ 47, ECF No. 94. With respect to XL's duty to defend Giant Eagle, the XL Policy provides:

> [XL] will have the right and duty to defend any "suit" covered by Insuring Agreement A, but only if the actual payment of "loss" to which this policy applies, by you or insurers providing "scheduled underlying insurance" exceeds the limits of the "scheduled underlying insurance" and any applicable and collectible "other insurance."

Resp. to SOF ¶ 59, ECF No. 88. The XL Policy defines loss as: "those sums you become legally obligated to pay as settlements or judgments in connection with a covered 'claim.' 'Loss' shall include expenses incurred to investigate a 'claim' or defend a 'suit' if so provided in the 'scheduled underlying insurance.'" *Id.* at ¶ 60. The underlying insurance for the AGLIC Policy is the 2016 Old Republic Policy, *id.* at ¶ 17, and the underlying insurance for the XL Policy is the 2017 Old Republic Policy, *id.* at ¶ 21.

Each of the Old Republic Policies provides a $1 million per occurrence limit of liability, subject to a $1 million SIR obligation and a $1 million deductible. Resp. to SOF ¶ 3, ECF No. 88. Giant Eagle has submitted a Declaration (ECF No. 76-1) and a Supplemental Declaration (ECF No. 86-30) of David M. Ross averring that Giant Eagle has paid in excess of $5 million in defending the underlying lawsuits, Ross Decl. ¶ 9, ECF No. 76-1, and attaching invoices for

defense costs to support that averment, see *id.* at Ex. E; Supp. Ross Decl. Ex. A, ECF No. 86-30. Neither AGLIC and XL or Old Republic challenge, in any material way, the assertion that Giant Eagle has expended at least $2 million, i.e. the combined total of the per occurrence SIR obligation and the deductible provided in the Old Republic Policies, in defending the underlying lawsuits. Rather, AGLIC and XL assert that Giant Eagle's payment of defense costs do not erode the Old Republic Policies' SIR obligation, deductible, or limits, and that the payment of defense costs thus cannot constitute a duty to defend triggering loss under the AGLIC Policy and the XL Policy. Defs.' Br. in Opp'n 2-3, ECF No. 87.[12]

SIR is defined in the Old Republic Policies as "the amount the insured legally must pay with respect to claims or 'suits' to which this insurance applies."  Resp. to Additional SOF ¶ 10, ECF No. 94.  Giant Eagle can satisfy the SIR through payment of "[o]ther amounts payable under the policy."  Old Republic's Br. in Opp'n 3, ECF No. 89.  AGLIC and XL argue that an insured is never legally compelled to incur defense expenses on its own behalf, and that defense costs can thus never satisfy the SIR obligation.  Defs.' Br. in Opp'n 2-3, ECF No. 87.  The Third Circuit, however, has held otherwise.  *See Little v. MGIC Indem. Corp.*, 836 F.2d 789, 794 (3d Cir. 1987) (applying Pennsylvania law in interpreting an insurance policy that defined "loss" as the amounts the insured was "legally obligated" to pay, and finding that "one could reasonably read the policy as a whole as imposing upon [the insurer] a duty to pay an insured's defense costs as they are incurred.").  Accordingly, the Court rejects this argument.

AGLIC and XL further argue that defense costs are "Supplementary Payments," which include allocated loss adjustment expenses ("ALAE"), and thus cannot satisfy the Old Republic

---

[12] Old Republic asserts a similar argument in relatively conclusory fashion, and also asserts that "whether [Giant Eagle] has satisfied both its SIR and deductible obligations under any of the Old Republic Policies is disputed."  Old Republic's Br. in Opp'n 13, ECF No. 89.

Policies' SIR obligation, which must be satisfied before coverage under the Old Republic Policies

arises. Defs.' Br. in Opp'n 3-4, ECF No. 87. This is significant because the duty to defend under

the AGLIC Policy and the XL Policy arises only after the payment of a loss which exhausts, *see*

Resp. to SOF ¶ 19, ECF No. 88, or exceeds, *see* Resp. to SOF ¶ 59, ECF No. 88, respectively, the

limits of the Old Republic Policies. The Old Republic Policies' SIR endorsements provide that

"[a]mounts payable under Supplementary Payments, which include but are not limited to allocated

loss adjustment expense(s) (ALAE)[,] do not satisfy the [SIR]." Old Republic's Br. in Opp'n 3-4,

ECF No. 89. The SIR endorsements further provide:

> If Supplementary Payments and/or allocated loss adjustment expense(s) *are not described in the policy*, Supplementary Payments and/or allocated loss adjustment expense(s) are costs associated with the investigation or settlement of any claim or "suit" against an insured and include but are not limited to *defense costs, attorneys' fees*, premiums for appeal and bail bonds, prejudgment and post judgment interest, expenses incurred by the insurer, first aid expenses, and/or reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or "suit[.]"

*Id.* at 4 (emphasis added). Significantly, Supplementary Payments are described in the Old

Republic Policies as follows:

> 1. [Old Republic] will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
> > a. All expenses we incur.
> >
> > b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.
> >
> > c. The cost of bonds to release attachments, but only for bond amounts within the applicable limits of insurance. We do not have to furnish these bonds.
> >
> > d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

> e. All court costs taxed against the insured in the "suit".  However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.
>
> f. Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
>
> g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we gave paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

Resp. to SOF ¶ 14, ECF No. 88.  The description of Supplementary Payments set forth in the Old Republic Policies does not include the insured's payment of defense costs.  The Court notes that "[a]ll expenses we incur" clearly refers to expenses incurred by Old Republic, and not the insured, and it is undisputed that Old Republic has paid no defense costs in the underlying lawsuits.  Resp. to Additional SOF ¶ 28-29, ECF No. 99.  As such, "Supplementary Payments," which include ALAE, are expressly described in the Old Republic Policies, and do not include defense costs.  Accordingly, defense costs do not qualify as a "Supplementary Payments;" but, rather are "other amounts payable under the [Old Republic Policies]."  Giant Eagle can satisfy the SIR through payment of "[o]ther amounts payable under the policy."  Old Republic's Br. in Opp'n 3, ECF No. 89.  As such, the payment of defense costs can satisfy the SIR under the express terms of the Old Republic Policies.[13]

---

[13] The Court notes at this point that Giant Eagle has explained as follows in its Brief in Support of its Motion:

> Giant Eagle and Old Republic separately entered into a Program Agreement that defines [ALAE] to include attorneys' fees.  This Program Agreement is therefore inconsistent with the defense costs provisions of the Old Republic policies, and in such instances of conflict, the Program Agreement controls and governs the relationship between Giant Eagle and Old Republic.  But the Program Agreement changes neither the terms of the AGLIC or XL Policies, nor the terms of the *scheduled underlying Old Republic Policies* themselves.  Neither AGLIC nor XL are parties to the Program Agreement or were even aware of it prior to this litigation.

Br. in Supp. 14 n.11, ECF No. 76 (emphasis added) (internal citations omitted).  AGLIC and XL acknowledge this argument, *see* Old Republic's Br. in Opp'n 6, ECF No. 89, and advance an argument that ALAE, a subset of "Supplementary Payments," are "indisputably" not described in the Old Republic Policies, *see id.* at 4.  In doing so,

The relevant provisions of the Old Republic Policies respecting satisfaction of the deductible requirement mirror the SIR provisions discussed above in all material respects. Accordingly, for the same reasons discussed above, the payment of defense costs can also satisfy the deductible under the Old Republic Policies.  Because defense costs constitute "other amounts payable under the [Old Republic Policies]," and not "Supplementary Payments," the Court finds that defense costs can satisfy the Old Republic Policies' SIR obligation and deductible.  Further, payment of the deductible reduces the limits of liability under the Old Republic Policies.  Old Republic's Br. in Opp'n 6, ECF No. 89.  Accordingly, the payment of the $1 million deductible exhausts the $1 million per occurrence limit of the Old Republic Policies.

The duty to defend under the AGLIC Policy arises after the payment of a "loss" which exhausts the limits of 2016 Old Republic Policy.  Resp. to SOF ¶ 19, ECF No. 88.  The duty to defend under the XL Policy arises after the payment of a "loss" which exceeds the limits of the 2017 Old Republic Policy.  Resp. to SOF ¶ 59, ECF No. 88.  Defense costs constitute a loss under the AGLIC Policy if they are included in the limits of the 2016 Old Republic Policy, Resp. to SOF ¶ 19, ECF No. 88; Resp. to Additional SOF ¶ 47, ECF No. 94, and constitute a loss under the XL Policy if so provided in the 2017 Old Republic Policy, Resp. to SOF ¶ 19.  Because defense costs constitute "other amounts payable under the [Old Republic Policies]" and can satisfy the Old Republic Policies' SIR obligation and deductible, and because the payment of defense costs can erode the limits of the Old Republic Policies, the Court finds that payment of an appropriate

---

AGLIC and XL seemingly acknowledge that the terms of the scheduled underlying Old Republic Policies alone, i.e. the 2016 Old Republic Policy and the 2017 Old Republic Policy, and not the Program Agreement, which explicitly defines and describes ALAE to include attorneys' fees, drive the analysis of whether Giant Eagle's payment of defense costs constitutes a loss under the AGLIC Policy and the XL Policy.  Accordingly, in reaching its decision on Giant Eagle's Motion for Partial Summary Judgment, the Court will rely exclusively on the terms of the Old Republic Policies, and will not look to the Program Agreement, which clearly modifies the Old Republic Policies.  Relatedly, the Court agrees with Giant Eagle that XL cannot rely on the Schedule of Underlying Insurance in the XL Policy to modify the terms of the 2017 Old Republic Policy respecting satisfaction of the SIR obligation and deductible.

amount of defense costs, i.e. $ 2 million, constitutes a loss under the AGLIC Policy and the XL Policy.  Giant Eagle has paid in excess of $5 million in defending the underlying lawsuits.  Ross Decl. ¶ 9, ECF No. 76-1.  Accordingly, AGLIC's duty to defend Giant Eagle in the underlying lawsuits arises under the AGLIC Policy, and XL's duty to defend Giant Eagle in the underlying lawsuits arises under the XL Policy.

For all of the reasons discussed above, the Court finds that Giant Eagle has met its burden of establishing that there is no genuine dispute of material fact as to Giant Eagle's assertions that the underlying lawsuits assert potentially covered claims, and that Giant Eagle has paid a "loss" such that the duty to defend under both the AGLIC Policy and the XL Policy has been triggered. As such, both AGLIC and XL owe Giant Eagle a defense in the underlying lawsuits, and summary judgement in Giant Eagle's favor is warranted with respect to the issue of the duty to defend.

## IV.    Conclusion

Accordingly, for the reasons discussed above, the Court will grant Giant Eagle's Motion for Partial Summary Judgment.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: November 9, 2020

cc/ecf: All counsel of record