# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GIANT EAGLE, INC. and HBC SERVICE COMPANY, | ) ) ) | 2:19-cv-00904-RJC |
| Plaintiffs, | ) ) ) ) | Judge Robert J. Colville |
| vs. | ) ) | |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and XL SPECIALTY INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, | ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| OLD REPUBLIC INSURANCE COMPANY, | ) ) | |
| Third-Party Defendant. | ) ) | |
| _____ | ) ) | |
| XL SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| OLD REPUBLIC INSURANCE COMPANY, | ) ) | |
| Third-Party Defendant. | ) ) | |

## OPINION

Robert J. Colville, United States District Judge

Before the Court is the Motion for Reconsideration (ECF No. 123) filed by Defendant, Counterclaimant, and Third-Party Plaintiff American Guarantee and Liability Insurance Company ("AGLIC") and joined by Defendant, Counterclaimant, and Third-Party Plaintiff XL Specialty Insurance Company ("XL"), *see* ECF No. 133.  AGLIC and XL seek reconsideration of this Court's November 9, 2020 Opinion (ECF No. 112) and Order of Court (ECF No. 113) (collectively, the "Opinion") which granted the Motion for Partial Summary Judgment on the Duty to Defend (ECF No. 75) filed by Plaintiffs Giant Eagle, Inc. and HBC Service Company (collectively, "Giant Eagle").  In support of its Motion, AGLIC has filed a Brief in Support (ECF No. 124) and a Reply (ECF No. 155).  Giant Eagle has filed a Brief in Opposition (ECF No. 143) to AGLIC's Motion and a Surreply in Opposition (ECF No. 164).  On March 17, 2021, this Court entered an Order (ECF No. 174) which required AGLIC, XL, and Giant Eagle to each submit a supplemental brief.  On April 7, 2021, AGLIC (ECF No. 177), XL (ECF No. 176), and Giant Eagle (ECF No. 178) each submitted a Supplemental Brief in accordance with this Court's March 17, 2021 Order.  Accordingly, AGLIC's Motion has been fully briefed, and is ripe for disposition. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

### I.        Factual Background & Procedural History

In this declaratory judgment action, Giant Eagle seeks a declaration that AGLIC and XL owe Giant Eagle a duty to defend and coverage with respect to multiple lawsuits pending against Giant Eagle in the action captioned *In re Nat'l Prescription Opiate Litig.*, No. 2804 (N. D. Ohio) ("Opioid MDL").  Opinion 2, ECF No. 112.  In its Motion for Partial Summary Judgment, Giant Eagle sought partial summary judgment declaring that AGLIC and XL have a duty to defend Giant

Eagle in four cases (the "underlying lawsuits")[1] that have been transferred to the Opioid MDL.  *Id*.

This Court granted Giant Eagle's Motion for Partial Summary Judgment, and held as follows:

> The Court finds that declaratory judgment is appropriate with respect to Count I of Plaintiffs' First Amended Complaint (ECF No. 46), and holds that Defendant American Guarantee and Liability Insurance Company owes a duty to defend Plaintiffs under Commercial Umbrella Liability Policy, No. AUC 2856587-17 and that Defendant XL Specialty Insurance Company owes a duty to defend Plaintiffs under Commercial Excess Follow Form and Umbrella Liability Policy No. US00074903LI16A in the following lawsuits: *County of Cuyahoga, Ohio v. Purdue Pharma L.P., et al.*, Case No 17-OP-45004 (N.D. Ohio); *County of Summit, Ohio v. Purdue Pharma L.P., et al.*, Case No 18-OP-45090 (N.D. Ohio); *Artz, et al. v. Endo Health Solutions, Inc., et al.*, Case No 19-op-45459 (N.D. Ohio); and *Frost, et. al. v. Endo Health Solutions, Inc., et al.*, Case No 18-op-46327 (N.D. Ohio).

Order 2, ECF No. 113.

As laid out in the Opinion, the relevant background with respect to Giant Eagle's Motion for Partial Summary Judgment is as follows:[2]

Giant Eagle was covered by commercial general liability policies issued by Third-Party Defendant Old Republic Insurance Company ("Old Republic") which ran from April 1, 2015 to April 1, 2016 (the "2016 Old Republic Policy") and from April 1, 2016 to April 1, 2017 (the "2017 Old Republic Policy") (collectively, the "Old Republic Policies").  Resp. to SOF ¶ 1, ECF No. 88. Each of the Old Republic Policies provides a $1 million per occurrence limit of liability, subject

---

[1] The underlying cases are: *County of Cuyahoga, Ohio v. Purdue Pharma L.P., et al.*, Case No 17-OP-45004 (N.D. Ohio); *County of Summit, Ohio v. Purdue Pharma L.P., et al.*, Case No 18-OP-45090 (N.D. Ohio); *Artz, et al. v. Endo Health Solutions, Inc., et al.*, Case No 19-op-45459 (N.D. Ohio); and *Frost, et. al. v. Endo Health Solutions, Inc., et al.*, Case No 18-op-46327 (N.D. Ohio).  *See* Proposed Order 2-3, ECF No. 75-1.

[2] As noted in the Opinion, the Court will, in reciting the facts of this case, primarily cite to: (1) AGLIC and XL's Joint Response (ECF No. 88) to Giant Eagle's Concise Statement of Material Facts, which quotes and responds to Giant Eagle's Concise Statement of Material Facts (ECF No. 77) and Supplemental Concise Statement (ECF No. 86); and (2) Giant Eagle's Response (ECF No. 94) to AGLIC and XL's Concise Statement of Additional Material Facts, which quotes and responds to AGLIC and XL's Concise Statement of Additional Material Facts (ECF No. 88).  The Court will cite to AGLIC and XL's Joint Response as "Resp. to SOF ¶ _____, ECF No. 88," and will cite to Giant Eagle's Response as "Resp. to Additional SOF ¶ _____, ECF No. 94."  Giant Eagle has attached an Appendix of Exhibits to its Concise Statement of Material Facts.  The Court will cite to any of the Exhibits set forth in that Appendix in the following manner: "App. Ex. _____, ECF No. 77."  The Court will cite to any Exhibits attached to Giant Eagle's Supplemental Concise Statement of Material Facts as: "Supplemental App. Ex. _____, ECF No. 86."  The Court will cite to any Exhibit attached to AGLIC and XL's Response to Giant Eagle's Concise Statements as follows: "Defs.' App. Ex. _____, ECF No. 88."

to a $1 million self-insured retention ("SIR") obligation and a $1 million deductible.[3]  *Id.* at ¶ 3.
The Old Republic Policies define "self-insured retention" as "the amount the insured legally must
pay with respect to claims or 'suits' to which this insurance applies."  Resp. to Additional SOF ¶
10, ECF No. 94.  The Old Republic Policies' SIR endorsements provide:

> **A.** Our obligations under the Coverages of the policy to pay damages on your behalf
> apply in excess of the "self insured retention".  The amount of the "self insured
> retention" is shown in the Schedule.
>
> **B.** The "self insured retention" may be satisfied by any combination of the
> following:
>
>> **1.** Damages and medical expenses payable under the applicable
>> Coverage(s).
>>
>> **2.** Other amounts payable under the policy.
>
> **C.** Amounts payable under Supplementary Payments, which include but are not
> limited to allocated loss adjustment expense(s) (ALAE) do not satisfy the "self
> insured retention".
>
> If Supplementary Payments and/or allocated loss adjustment expense(s) are not
> described in the policy, Supplementary Payments and/or allocated loss adjustment
> expense(s) are costs associated with the investigation or settlement of any claim or
> "suit" against an insured and include but are not limited to defense costs, attorneys'
> fees, premiums for appeal and bail bonds, prejudgment and post judgment interest,
> expenses incurred by the insurer, first aid expenses, and/or reasonable travel
> expenses incurred by the insured at our request when assisting in the investigation
> or settlement of any claim or "suit".
>
> **D.** In addition to the Scheduled "self insured retention" you are responsible for
> payment of a proportion of Supplementary Payments and/or allocated loss
> adjustment expenses.  Your proportion is equal to the ratio that the "self insured
> retention" amount bears to the damages and medical expenses paid.  If there is no
> loss payment, your proportion of Supplementary Payments and/or allocated loss
> adjustment expenses is 100%.
>
> **E.** The "self insured retention" will apply on the same basis as the Limits of
> Insurance (Limits of Liability) applicable to the claim or "suit" regardless of the

---

[3]  The deductible "[e]quals the Limits of Insurance/Liability as provided under the policy plus all
ALAE/Supplementary Payments."  App. Ex. 4 at 16, ECF No. 77.  There is seemingly no dispute that the amount
payable under the deductible obligation at issue herein is $1 million.  *See* Br. in Supp. of MSJ 13, ECF No. 76; Defs.'
Br. in Opp'n 15, ECF No. 87.

number of persons or organizations who sustain damages.  The "self insured retention" is an each and every "self insured retention" and does not have an aggregate.

**F.** The "self insured retention" will not reduce the applicable Limits of Insurance (Limits of Liability).

**G.** We do not have a duty to investigate, defend or settle any claim or "suit" for which there may be coverage under this insurance within the "self insured retention".  Our right and duty to defend or settle any claim or "suit" do apply to any claim or "suit" that exceeds the "self insured retention".

You, at your own expense, must investigate, defend or settle all claims or "suits" within the "self insured retention".  We retain the right to elect to join in the defense of such claims or "suits" and we will pay any expenses we incur in doing so.

Old Republic's Br. in Opp'n 3-4, ECF No. 89 (emphasis omitted) (quoting App. Ex. 3 at 21-22;

Ex. 4 at 18-19, ECF No. 77).  The Old Republic Policies' deductible endorsements, in relevant

part, provide:

**A.** Our obligations under the Coverages of the policy to pay damages are subject to a deductible.  The deductible is shown in the Schedule.  Our obligations to pay damages apply only to the amount of damages in excess of the deductible shown in the Schedule.

**B.** The deductible may be satisfied by any combination of the following:

**1.** Damages and medical expenses payable under the applicable Coverage(s).

**2.** Other amounts payable under the policy.

**3.** Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expenses (ALAE):

. . . .

_X_ Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expenses (ALAE) do not satisfy the deductible.  In addition to the Scheduled deductible you are responsible for payment of Supplementary Payments and/or allocated loss adjustment expenses.

If Supplementary Payments and/or allocated loss adjustment expenses (ALAE) are not described in the policy, Supplementary Payments and/or allocated loss adjustment expenses are costs associated with the investigation or settlement of any claim or "suit" against an insured and include but are not limited to defense costs, attorneys' fees, premiums for appeal and bail bonds, prejudgment and post judgment interest, expenses incurred by the insurer, first aid expenses, and/or reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or "suit".

**C.** The deductible will apply on the same basis as the Coverage(s) Limits of Insurance/Limit of Liability applicable to the claim or "suit" regardless of the number of persons or organizations who sustain damages.

**D.** The deductible amounts:

. . . .

_X_  Described in paragraph B.1. and B.2. will reduce the applicable Limits of Insurance/Limits of Liability.

*Id.* at 5-6 (emphasis omitted) (quoting App. Ex. 3 at 19-20; Ex. 4 at 16-17, ECF No. 77).  The Old

Republic Policies describe "Supplementary Payments" as follows:

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limits of insurance.  We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit".  However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we gave paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

Resp. to SOF ¶ 14, ECF No. 88.

Giant Eagle and Old Republic separately entered into a Program Agreement (the "Program Agreement") that defines "Allocated Loss Adjustment Expenses" ("ALAE") to include defense costs and attorneys' fees.  Resp. to SOF ¶ 49, ECF No. 88; *see also* App. Ex. 11 at 2, ECF No. 77.  The Program Agreement provides that Giant Eagle is responsible for payment of all ALAE and loss, and that ALAE are in addition to Giant Eagle's retention for loss and the Old Republic Policies' policy limits.  App. Ex. 11 at 3; 34; 37, ECF No. 77.  The Program Agreement further provides: "[t]o the extent that any terms or conditions of the aforesaid Policies are inconsistent with any of the terms or conditions of this Agreement, the latter are to be given effect and the former will be considered superseded by this Agreement."  Resp. to SOF ¶ 50, ECF No. 88.  The Program Agreement also contains a provision which states: "this Agreement, together with the Policies issued hereunder, represents the entire agreement between the parties with respect to the subject matter hereof."  App. Ex. 11 at 12, ECF No. 77.   The "aforesaid Policies" and "Policies issued hereunder" referenced by the Program Agreement include the Old Republic Policies.  *See* App. Ex. 11 at 34-40; Ex. 3; Ex. 4, ECF No. 77.

The Old Republic Policies provide that Old Republic "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  Resp. to SOF ¶ 8, ECF No. 88.  Under the Old Republic Policies, "[d]amages because of 'bodily injury' include damages claimed by any person or organization for

care, loss of services or death resulting at any time from the 'bodily injury.'" *Id.* at ¶ 13.  The Old Republic Polies further provide that Old Republic has the right and duty to defend against any suit seeking such damages.  *Id.* at ¶ 9.  The Old Republic Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  *Id.* at ¶ 10.  The Old Republic Policies apply to bodily injury if the bodily injury is caused by an "occurrence" that takes place in the "coverage territory" and occurs during the policy period. *Id.* at ¶ 11.  "Occurrence" is defined by the Old Republic Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.* at ¶ 12.

AGLIC issued Commercial Umbrella Liability Policy, No. AUC 2856587-17 (the "AGLIC Policy") to Giant Eagle for the period of April 1, 2015 to April 1, 2016.  Resp. to SOF ¶ 16, ECF No. 88.  The AGLIC Policy identifies the 2016 Old Republic Policy as "underlying insurance," and provides, under "Coverage A,"[4] that AGLIC will pay "those damages covered by this insurance in excess of the total applicable limits of underlying insurance."  *Id.* at ¶¶ 17-18. AGLIC's duty to defend arises under the AGLIC Policy's Coverage A "when the applicable limit of underlying insurance . . . has been exhausted by payment of loss for which coverage is afforded under [the AGLIC Policy] . . . ."  *Id.* at ¶ 19.  The AGLIC Policy defines "loss" as "those sums actually paid that [Giant Eagle] is legally obligated to pay as damages for the settlement or satisfaction of a claim[,]" and further provides that: (1) "[l]oss also includes defense expenses and supplementary payments if underlying insurance includes defense expenses and supplementary payments in the Limits of Insurance;" and (2) "[l]oss does not include defense expenses and supplementary payments if underlying insurance does not include defense expenses and

---

[4] Coverage A provides for the "Excess Follow Form Liability Insurance" provided by AGLIC that is relevant herein. *See* App. Ex. 1 at 13, ECF No. 77.

supplementary payments in the Limits of Insurance." *Id.* at ¶ 19; Resp. to Additional SOF ¶ 47, ECF No. 94; App. Ex. 1 at 22, ECF No. 77.

XL issued Commercial Excess Follow Form and Umbrella Liability Policy No. US00074903LI16A (the "XL Policy") to Giant Eagle for the period of April 1, 2016 to April 1, 2017.  Resp. to SOF ¶ 20, ECF No. 88.  The XL Policy identifies the 2017 Old Republic Policy as the scheduled underlying insurance.  *Id.* at ¶ 21.  Under Insuring Agreement A[5] in the XL Policy, XL is required to pay on behalf of Giant Eagle:

> [T]hose amounts [Giant Eagle] becomes legally obligated to pay as damages in excess of the "scheduled underlying insurance" as a result of a "claim" covered by the "scheduled underlying insurance" and this policy, but only if the actual payment of "loss" to which this policy applies, by you or insurers providing "scheduled underlying insurance" exceeds the limits of the "scheduled underlying insurance" and any applicable and collectible "other insurance."

Resp. to Additional SOF ¶ 57, ECF No. 94 (quoting App. Ex. 2 at 47, ECF No. 77).  With respect to XL's duty to defend Giant Eagle, the XL Policy provides:

> [XL] will have the right and duty to defend any "suit" covered by Insuring Agreement A, but only if the actual payment of "loss" to which this policy applies, by you or insurers providing "scheduled underlying insurance" exceeds the limits of the "scheduled underlying insurance" and any applicable and collectible "other insurance."

*Id.* at ¶ 59.  The XL Policy defines "loss" as: "those sums you become legally obligated to pay as settlements or judgments in connection with a covered 'claim.'  'Loss' shall include expenses incurred to investigate a 'claim' or defend a 'suit' if so provided in the 'scheduled underlying insurance.'"  *Id.* at ¶ 60.  The XL Policy's Schedule of Underlying Limits identifies the 2017 Old Republic Policy and its limits and states that "[d]efense expenses are in addition to the limits." Resp. to Additional SOF ¶ 62, ECF No. 94.

---

[5] Insuring Agreement A provides for the "Excess Follow Form Liability" insurance that is relevant herein.  *See* App. Ex. 2 at 19, ECF No. 77.

Giant Eagle has been named as a defendant in multiple lawsuits, including, inter alia, the underlying lawsuits, by plaintiffs who seek to recover damages allegedly caused by Giant Eagle's distribution and dispensing of prescription opioids.  Resp. to SOF ¶ 24, ECF No. 88; Resp. to Additional SOF ¶ 82, ECF No. 94.  The *Artz* and *Frost* actions (collectively, the "NAS lawsuits") assert claims by legal guardians, on behalf of putative classes of legal guardians, of children diagnosed at birth with opioid dependence, known as Neonatal Abstinence Syndrome ("NAS").  Resp. to SOF ¶ 30, ECF No. 88.  The complaints in the NAS lawsuits allege that NAS causes the plaintiff guardians' children to suffer health conditions and increased risk of certain health conditions as a result of their in utero exposure to opioids.  *Id.* at ¶¶ 32-35.  The plaintiffs in the NAS lawsuits seek damages for ongoing care allegedly necessitated by, inter alia, Giant Eagle's alleged wrongful conduct in distributing and dispensing opioids.  *Id.* at ¶¶ 33-35.

The *Summit* and *Cuyahoga* actions (collectively, the "County lawsuits") were filed on behalf of Ohio counties seeking damages allegedly caused by Giant Eagle's alleged wrongful conduct in distributing and dispensing prescription opioids.  *Id.* at ¶ 36.  The plaintiffs in the County lawsuits allege that the opioid use resulting from Giant Eagle's conduct has led directly to "a dramatic increase in opioid abuse, addiction, overdose, and death throughout the United States," including in Ohio.  *Id.* at ¶ 37.  The complaints in the County lawsuits also aver that the plaintiffs in those actions do "not seek damages for death, physical injury to person, emotional distress, or physical damages to property, as defined under the Ohio Product Liability Act."  *Id.* at ¶ 37; Resp. to Additional SOF ¶ 82, ECF No. 99.  The complaints in the County lawsuits assert that the plaintiffs in those actions have suffered ongoing harm, and seek damages, inter alia, for emergency medical treatment, detoxification and addiction treatment, and recovery services related to opioid use of the County plaintiffs' citizens.  Resp. to SOF ¶ 39, ECF No. 88.  Each of the underlying

lawsuits asserts, to some degree, that Giant Eagle "failed to design and operate systems to identify suspicious orders of prescription opioids, maintain effective controls against diversion, and halt suspicious orders when they were identified, thereby contributing to the oversupply of such drugs and fueling an illegal secondary market."  *Id.* at ¶ 44.

Giant Eagle asserts that it has spent at least $5.7 million in defending against the underlying lawsuits.  Resp. to SOF ¶ 47, ECF No. 88.  AGLIC has not reimbursed Giant Eagle for any of Giant Eagle's purported defense costs.  *Id.* at ¶ 48.  Giant Eagle avers that, to date, AGLIC has "denied coverage and refused outright to defend or indemnify Giant Eagle" in the underlying lawsuits, and that "XL, after simply ignoring Giant Eagle's multiple requests for a defense for six months, issued a reservation of rights without assuming a defense."  Compl. ¶ 2, ECF No. 46. Neither AGLIC nor XL challenges, in any material respect, the assertion that neither has provided a defense to Giant Eagle in the underlying lawsuits.  *See* AGLIC's Answer ¶ 2, ECF No. 52; XL's Answer ¶ 2, ECF No. 53.  Old Republic has not paid any defense costs to or on behalf of Giant Eagle with respect to any of the underlying lawsuits, and further has not paid any judgment or settlement to or on behalf of Giant Eagle with respect to any of the underlying lawsuits.  Resp. to Additional SOF ¶ 28-29, ECF No. 99.

Giant Eagle filed the operative First Amended Complaint (the "Complaint") (ECF No. 46) on October 22, 2019.  AGLIC and XL each filed an Answer and Counterclaim (ECF Nos. 52 and 53) on November 5, 2019.  Giant Eagle filed Answers (ECF Nos. 64 and 65) to AGLIC's and XL's Counterclaims on November 19, 2019.  AGLIC and XL filed their Third-Party Complaints on October 1, 2019 and October 7, 2019, respectively, and Old Republic filed Answers to the Third-Party Complaints (ECF Nos. 70 and 71) on December 6, 2019.  As explained by the Honorable

Arthur J. Schwab, to whom this case was originally assigned, in his January 2, 2020 Memorandum

Order (ECF No. 79) granting in part and denying in part AGLIC and XL's Joint Rule 56(d) Motion:

> The Third-Party Complaints filed by Defendants [AGLIC] and XL allege that if Plaintiffs prevail on their claim and obtain a declaration that a defense and/or indemnification is owed by [AGLIC and XL] with respect to one or more of the underlying opioid lawsuits, [AGLIC] and XL seek various declarations concerning the interplay between and among Old Republic, Giant Eagle, and [AGLIC] and XL, as well as equitable contribution and contractual or equitable subrogation.

Mem. Order 2, ECF No. 85.

Giant Eagle filed its Motion for Partial Summary Judgment on December 12, 2019, along

with a Brief in Support (ECF No. 76) and a Concise Statement of Material Facts (ECF No. 77).

Giant Eagle filed a Supplemental Concise Statement of Material Facts (ECF No. 86) on January

6, 2020. AGLIC and XL, collectively, filed a Brief in Opposition (ECF No. 87) to Giant Eagle's

Motion on January 10, 2020, along with a Concise Statement of Additional Material Facts (ECF

No. 88) and a Joint Response to Giant Eagle's Concise Statements. Old Republic also filed a

Response in Opposition (ECF No. 89) to Giant Eagle's Motion on January 10, 2020. On January

24, 2020, Giant Eagle filed a Response (ECF No. 94) to AGLIC and XL's Concise Statement of

Additional Material Facts, and also filed a Combined Reply (ECF No. 93) to the Responses filed

by AGLIC and XL and Old Republic. This matter was reassigned to the undersigned on February

4, 2020. Order, ECF No. 101. Giant Eagle filed a Notice of Supplemental Authorities (ECF No.

105) on June 26, 2020, and AGLIC and XL filed a Response (ECF No. 106) to that Notice on July

1, 2020. Giant Eagle filed a Second (ECF No. 107) and Third (ECF No. 108) Notice of

Supplemental Authority on September 18, 2020 and September 23, 2020, and AGLIC and XL

filed Responses (ECF Nos. 109 and 110) thereto on September 23, 2020 and October 5, 2020,

respectively. On October 15, 2020, Giant Eagle filed a Reply (ECF No. 111) to AGLIC and XL's

Response to Giant Eagle's Third Notice of Supplemental Authority.

Following this Court's entry of its November 9, 2020 Opinion and Order of Court granting Giant Eagle's Motion for Partial Summary Judgment, AGLIC filed its Motion for Reconsideration on December 2, 2020. AGLIC requests that this Court grant AGLIC's Motion for Reconsideration; withdraw the November 9, 2020 Opinion; vacate the November 9, 2020 Order; deny Giant Eagle's Motion for Partial Summary Judgment on the Duty to Defend; enter summary judgment on Counts II and III of AGLIC's Counterclaim; and grant declaratory judgment in AGLIC's favor. Mot. 1-2, ECF No. 123. As noted above, XL joins in the requests for relief made in AGLIC's Motion for Reconsideration to the extent that the same relate to XL. ECF No. 133.

## II.    Legal Standard

"A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). The United States Court of Appeals for the Third Circuit has "explained that the law of the case doctrine does not preclude a court from revisiting its own decisions or one of a coordinate court where (1) new evidence is available or (2) a supervening new law has been announced." *In re Pharmacy*, 582 F.3d at 439 (citing *Pub. Interest Research Group of NJ, Inc. v. Magnesium Elektron*, 123 F.3d 111, 117 (3d Cir. 1997)). Further, "a trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." *Id.* (quoting *Swietlowich v. County of Bucks*, 610 F.2d 1157, 1164 (3d Cir. 1979)).

"Although district courts have the inherent power to reconsider an interlocutory decision, '[c]ourts tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under Fed.R.Civ.P. 59(e).'" *Deeters v. Phelan Hallinan & Schmieg, LLP*, No. 3:11-cv-252, 2013 WL 6524625, at *2 (W.D. Pa. Dec. 12, 2013) (quoting *A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, CIV. A. 94–7408, 2001 WL 881718, at *1 (E.D. Pa. May 1, 2001)).   Under Rule 59(e), a court may reconsider its order where "the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995)).   In the context of reconsideration of interlocutory orders, the United States District Court for the Middle District of Pennsylvania has explained: "the court may permit reconsideration whenever 'consonant with justice to do so.'" *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) (quoting *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 472 F.Supp.2d 630 (M.D. Pa. 2007)).   However, "[b]ecause courts have a strong interest in the finality of their judgments, a motion for reconsideration is inappropriate to express mere dissatisfaction with a court's previous ruling." *Deeters*, 2013 WL 6524625, at *2.

It is clear under Third Circuit precedent that a motion for reconsideration should not be used to merely reargue matters that have already been argued and decided, and further should not be used to present new arguments or evidence that could have been raised prior to the court's entry of the order in question.  *See Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) (holding that "[w]hatever other circumstances may justify reconsideration, mere

presentation of arguments or evidence *seriatim* does not[,]" and quoting *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) for the proposition that "reargument 'should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.'"); *see also Deeters*, 2013 WL 6524625, at *2 ("[S]uch a motion cannot be used 'to raise new arguments or [to] present evidence that could have been raised prior to the entry of judgment.'" (quoting *Hill v. Tammac Corp.*, Civ. A. No. 05–1148, 2006 WL 529044, at *2 (M.D.Pa. Mar. 3, 2006))); *MMG Ins. Co. v. Guiro, Inc.*, 432 F. Supp. 3d 471, 475 (M.D. Pa. 2020) ("Likewise, a motion for reconsideration may not be used to present a new legal theory for the first time, to raise new arguments that could have been made in support of the original motion, and should not ask the court to rethink a decision that it has already made." (citations omitted)).

## III.   Discussion

AGLIC asserts that this Court erred in granting Giant Eagle's Motion for Partial Summary Judgment, and specifically asserts:

> [T]he Opinion failed to consider either various clear contract terms or the extrinsic evidence of the contracting parties' intent—both of which demonstrate that defense costs/Allocated Loss Adjustment Expenses ("ALAE") are expressly payable "in addition to" or outside the policies' self-insured retentions, deductibles, and limits of liability, such that Giant Eagle remains responsible for all attorneys' fees incurred to date in defending the subject opioid suits.  At the very least, Giant Eagle did not meet its burden of proof as the summary judgment movant, and multiple genuine issues of material fact preclude the entry of summary judgment in its favor.

Br. in Supp. of Recons. Mot. 1, ECF No. 124.  AGLIC's Motion for Reconsideration is limited to the issue of whether the payment of defense costs can trigger AGLIC's duty to defend. *Id.* at 1 n.1.

With respect to interpretation of an insurance policy, the Supreme Court of Pennsylvania has explained:

> Our primary goal in interpreting a policy, as with interpreting any contract, is to ascertain the parties' intentions as manifested by the policy's terms.  [*401 Fourth Street v. Investors Insurance Co.*, 879 A.2d 166, 170 (Pa. 2005)].  "When the language of the policy is clear and unambiguous, [we must] give effect to that language."  *Id*.  Alternatively, when a provision in the policy is ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage."  *Id*.

*Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897

(Pa. 2006).

## A.   Reasoning Behind the November 9, 2020 Opinion's Determination that AGLIC's and XL's Duties to Defend were Triggered

In determining that Giant Eagle's payment of defense costs in the underlying lawsuits could

trigger AGLIC's and XL's duties to defend under the AGLIC Policy and the XL Policy,

respectively, the Court did not consider the terms of the Program Agreement in resolving Giant

Eagle's Motion for Partial Summary Judgment, explaining as follows:

> The Court notes at this point that Giant Eagle has explained as follows in its Brief in Support of its Motion:
>
>> Giant Eagle and Old Republic separately entered into a Program Agreement that defines [ALAE] to include attorneys' fees.  This Program Agreement is therefore inconsistent with the defense costs provisions of the Old Republic policies, and in such instances of conflict, the Program Agreement controls and governs the relationship between Giant Eagle and Old Republic.  But the Program Agreement changes neither the terms of the AGLIC or XL Policies, nor the terms of the *scheduled underlying Old Republic Policies* themselves.  Neither AGLIC nor XL are parties to the Program Agreement or were even aware of it prior to this litigation.
>
> Br. in Supp. 14 n.11, ECF No. 76 (emphasis added) (internal citations omitted). AGLIC and XL acknowledge this argument, *see* [Defs.' Br. in Opp'n to MSJ 5-6, ECF No. 87], and advance an argument that ALAE, a subset of "Supplementary Payments," are "indisputably" not described in the Old Republic Policies, *see id.* at 4.  In doing so, AGLIC and XL seemingly acknowledge that the terms of the scheduled underlying Old Republic Policies alone, i.e. the 2016 Old Republic Policy and the 2017 Old Republic Policy*,* and not the Program Agreement, which

16

explicitly defines and describes ALAE to include attorneys' fees, drive the analysis of whether Giant Eagle's payment of defense costs constitutes a loss under the AGLIC Policy and the XL Policy.  Accordingly, in reaching its decision on Giant Eagle's Motion for Partial Summary Judgment, the Court will rely exclusively on the terms of the Old Republic Policies, and will not look to the Program Agreement, which clearly modifies the Old Republic Policies.

Opinion 39-40 n.13, ECF No. 112.[6]

With respect to the triggering of AGLIC's and XL's duties to defend, the Court's analysis in the Opinion primarily turned on whether Giant Eagle's payment of defense costs in the underlying lawsuits constituted a "loss" as defined in the AGLIC Policy and the XL Policy. AGLIC's duty to defend arises under the AGLIC Policy "when the applicable limit of underlying insurance . . . *has been exhausted by payment* of loss for which coverage is afforded under [the AGLIC Policy] . . . ."  Resp. to SOF ¶ 19, ECF No. 88 (emphasis added).  The AGLIC Policy defines "loss" as "those sums actually paid that [Giant Eagle] is legally obligated to pay as damages for the settlement or satisfaction of a claim[,]" and further provides that: (1) "[l]oss also includes defense expenses and supplementary payments if underlying insurance includes defense expenses and supplementary payments in the Limits of Insurance;" and (2) "[l]oss does not include defense expenses and supplementary payments if underlying insurance does not include defense expenses and supplementary payments in the Limits of Insurance."  Resp. to Additional SOF ¶ 47, ECF No.

---

[6] Footnote 13 of the Opinion clearly acknowledges the potential relevance of the Program Agreement, which had been introduced by Giant Eagle, to the definition of "loss" under the AGLIC Policy and the XL Policy.  While the Court recognized this potential relevance, the Court disagreed with AGLIC and XL's assertion that the express terms of the Program Agreement and the express terms of the Old Republic Policies were entirely consistent with one another, and thus ended its analysis respecting the Program Agreement at that point.  As discussed in detail throughout this Opinion, however, the Program Agreement establishes, as a matter of fact, that the SIR, the deductible, and the limits of the Old Republic Policies cannot be and have not been satisfied or exhausted by Giant Eagle's payment of defense costs in the underlying lawsuits at this time.  Accordingly, the Program Agreement is relevant to the issue of *when* the duty to defend arises under the AGLIC Policy and the XL Policy, i.e. upon payment of loss that exhausts or exceeds the limits of the 2016 Old Republic Policy and the 2017 Old Republic Policy, respectively, and the Court should have considered it for that reason.  While these issues were before the Court when it ruled on Giant Eagle's Motion for Partial Summary Judgment, the briefing filed by the parties as to AGLIC's Motion for Reconsideration more clearly addresses the same, and these issues were the basis for the Court's directive respecting the parties' supplemental briefing.

94; App. Ex. 3 at 22, ECF No. 77.  With respect to XL's duty to defend Giant Eagle, the XL Policy

provides:

> [XL] will have the right and duty to defend any "suit" covered by Insuring
> Agreement A, but only if the actual payment of "loss" to which this policy applies,
> by you or insurers providing "scheduled underlying insurance" *exceeds the limits
> of the "scheduled underlying insurance"* and any applicable and collectible "other
> insurance."

Resp. to SOF ¶ 59, ECF No. 88 (emphasis added).  The XL Policy defines "loss" as: "those sums

you become legally obligated to pay as settlements or judgments in connection with a covered

'claim.'  'Loss' shall include expenses incurred to investigate a 'claim' or defend a 'suit' if so

provided in the 'scheduled underlying insurance.'"  *Id.* at ¶ 60.  The underlying insurance for the

AGLIC Policy is the 2016 Old Republic Policy, *id.* at ¶ 17, and the underlying insurance for the

XL Policy is the 2017 Old Republic Policy, *id.* at ¶ 21.

Each of the Old Republic Policies provides a $1 million per occurrence limit of liability,

subject to a $1 million SIR obligation and a $1 million deductible.  Resp. to SOF ¶ 3, ECF No. 88.

In opposing Giant Eagle's Motion for Partial Summary Judgment, AGLIC and XL argued that

Giant Eagle's payment of defense costs does not erode the Old Republic Policies' SIR obligation,

deductible, or limits, and that the payment of defense costs thus cannot constitute a duty to defend

triggering loss under the AGLIC Policy and the XL Policy.  Defs.' Br. in Opp'n 2-3, ECF No. 87.

SIR is defined in the Old Republic Policies as "the amount the insured legally must pay

with respect to claims or 'suits' to which this insurance applies."  Resp. to Additional SOF ¶ 10,

ECF No. 94.  Giant Eagle can satisfy the SIR through payment of "[o]ther amounts payable under

the policy."  Old Republic's Br. in Opp'n 3, ECF No. 89.  The Old Republic Policies' SIR

endorsements provide that "[a]mounts payable under Supplementary Payments, which include but

are not limited to allocated loss adjustment expense(s) (ALAE)[,] do not satisfy the [SIR]."  *Id.* at

3-4.  In opposing Giant Eagle's Motion for Partial Summary Judgment, AGLIC and XL argued

that defense costs constitute "Supplementary Payments," and thus cannot satisfy the Old Republic

Policies' SIR obligation, which must be satisfied before coverage under the Old Republic Policies

arises.  Defs.' Br. in Opp'n 3-4, ECF No. 87.  The SIR endorsements provide:

> If Supplementary Payments and/or allocated loss adjustment expense(s) *are not described in the policy*, Supplementary Payments and/or allocated loss adjustment expense(s) are costs associated with the investigation or settlement of any claim or "suit" against an insured and include but are not limited to *defense costs, attorneys' fees*, premiums for appeal and bail bonds, prejudgment and post judgment interest, expenses incurred by the insurer, first aid expenses, and/or reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or "suit[.]"

Old Republic's Br. in Opp'n 4, ECF No. 89 (emphasis added).  Supplementary Payments

are described in the Old Republic Policies as follows:

> 1. [Old Republic] will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
>> a. All expenses we incur.
>>
>> b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.
>>
>> c. The cost of bonds to release attachments, but only for bond amounts within the applicable limits of insurance.  We do not have to furnish these bonds.
>>
>> d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.
>>
>> e. All court costs taxed against the insured in the "suit".  However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.
>>
>> f. Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

> g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we gave paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

Resp. to SOF ¶ 14, ECF No. 88.

This Court found that the description of Supplementary Payments set forth in the Old Republic Policies does not include defense costs incurred by the *insured*, that is, Giant Eagle, and thus explained and held as follows:

> The description of Supplementary Payments set forth in the Old Republic Policies does not include the insured's payment of defense costs. The Court notes that "[a]ll expenses we incur" clearly refers to expenses incurred by Old Republic, and not the insured, and it is undisputed that Old Republic has paid no defense costs in the underlying lawsuits. Resp. to Additional SOF ¶ 28-29, ECF No. 99. As such, "Supplementary Payments," which include ALAE, are expressly described in the Old Republic Policies, and do not include defense costs. Accordingly, defense costs do not qualify as a "Supplementary Payments;" but, rather are "other amounts payable under the [Old Republic Policies]." Giant Eagle can satisfy the SIR through payment of "[o]ther amounts payable under the policy." Old Republic's Br. in Opp'n 3, ECF No. 89. As such, the payment of defense costs can satisfy the SIR under the express terms of the Old Republic Policies.

> The relevant provisions of the Old Republic Policies respecting satisfaction of the deductible requirement mirror the SIR provisions discussed above in all material respects. Accordingly, for the same reasons discussed above, the payment of defense costs can also satisfy the deductible under the Old Republic Policies. Because defense costs constitute "other amounts payable under the [Old Republic Policies]," and not "Supplementary Payments," the Court finds that defense costs can satisfy the Old Republic Policies' SIR obligation and deductible. Further, payment of the deductible reduces the limits of liability under the Old Republic Policies. Old Republic's Br. in Opp'n 6, ECF No. 89. Accordingly, the payment of the $1 million deductible exhausts the $1 million per occurrence limit of the Old Republic Policies.

> The duty to defend under the AGLIC Policy arises after the payment of a "loss" which exhausts the limits of [the] 2016 Old Republic Policy. Resp. to SOF ¶ 19, ECF No. 88. The duty to defend under the XL Policy arises after the payment of a "loss" which exceeds the limits of the 2017 Old Republic Policy. Resp. to SOF ¶ 59, ECF No. 88. Defense costs constitute a loss under the AGLIC Policy if they are included in the limits of the 2016 Old Republic Policy, Resp. to SOF ¶ 19, ECF No. 88; Resp. to Additional SOF ¶ 47, ECF No. 94, and constitute a loss under the XL Policy if so provided in the 2017 Old Republic Policy, Resp. to SOF ¶ 19.

> Because defense costs constitute "other amounts payable under the [Old Republic Policies]" can satisfy the Old Republic Policies' SIR obligation and deductible, and because the payment of defense costs can erode the limits of the Old Republic Policies, the Court finds that payment of an appropriate amount of defense costs, i.e. $ 2 million, constitutes a loss under the AGLIC Policy and the XL Policy. Giant Eagle has paid in excess of $5 million in defending the underlying lawsuits. Ross Decl. ¶ 9, ECF No. 76-1. Accordingly, AGLIC's duty to defend Giant Eagle in the underlying lawsuits arises under the AGLIC Policy, and XL's duty to defend Giant Eagle in the underlying lawsuits arises under the XL Policy.

Opinion 39-41, ECF No. 112 (footnote omitted).

Presently, the Court notes that its holding that the payment of "defense costs" could satisfy the Old Republic Policies' SIR obligation and deductible under the terms of the Old Republic Policies was intended to be very specifically limited to the insured's, that is, Giant Eagle's, payment of defense costs incurred by Giant Eagle. The basis for this holding was the fact that the SIR endorsement provides for scenarios where Giant Eagle is required to provide its own defense, *see* App. Ex. 4 at 16, ECF No. 77, and that the Old Republic Policies describe "Supplementary Payments" to include expenses which only Old Republic incurs when it defends a suit brought against Giant Eagle, *see* Resp. to SOF ¶ 14, ECF No. 88. It is undisputed that Old Republic has not provided a defense and has paid no defense costs in the underlying lawsuits. Resp. to Additional SOF ¶ 28-29, ECF No. 94. The Court considered these provisions, again without reference to the Program Agreement, and concluded that Giant Eagle's payment of defense costs Giant Eagle incurred defending itself constituted payment of "other amounts payable under the [Old Republic Policies]," and not "Supplementary Payments." Opinion 39, ECF No. 112.

In opposing reconsideration, Giant Eagle argues, and implies that this Court determined, that the Old Republic Policies' description of "Supplementary Payments," and specifically its reference to "[a]ll expenses we incur," does not refer to defense costs incurred by Old Republic, and further asserts that "[t]he undefined term 'expenses' in the Supplementary Payments provision

21

refers to some 'other' (supplemental) obligation."  Br. in Opp'n to Recons. Mot. 6 n.2, ECF No. 143; *see also* Surreply in Opp'n to Recons. Mot. 11, ECF No. 164 ("[Old Republic] did not defend Giant Eagle or pay Giant Eagle's defense costs.  *But, even if [Old Republic] had done so, attorneys' fees incurred by [Old Republic] in Giant Eagle's defense would not constitute Supplementary Payments.  Rather, the undefined term 'expenses' in the Supplementary Payments provision refers to some other (supplemental) obligation, not attorneys' fees*." (emphasis added)).

Giant Eagle's assertion that Old Republic's payment of defense costs would not constitute "Supplementary Payments" under the terms of the Old Republic Policies, even absent consideration of the Program Agreement, is incorrect, and such an assertion was not the basis for this Court's holding in the Opinion.  The Old Republic Policies describe "Supplementary Payments," and that description provides that Supplementary Payments include "*[a]ll expenses [Old Republic] incur[s]*" "*with respect to . . . any 'suit' against an insured [Old Republic] defend[s].*"  Opinion 38, ECF No. 112 (emphasis added).  This provision clearly refers to defense costs incurred by Old Republic in defending Giant Eagle.  The Supreme Court of Pennsylvania has held that materially similar policy language provided that the insurer was responsible for the defense costs the insurer incurred in defending its insured.  *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 542 n.14 (2010) ("[Insurer's] obligation to pay, with respect to 'any suit against an Insured we defend ... [a]ll expenses we incur' arguably answers the question before us.  Here, [Insurer] defended Insured.  It was, therefore, contractually obligated to pay *all defense expenses it incurred*.  Regardless of whether it was obligated to defend Insured pursuant to the insurance contract, it did, in fact, provide a defense.  Under the plain language of the contract, therefore, it was obligated to pay for the expenses it incurred in connection with the defense, an obligation that would be eviscerated if Insured had to reimburse [Insurer]." (emphasis added)).

Accordingly, the Court hereby clarifies the Opinion's holding at this time in explaining that defense costs incurred by Old Republic are defined as "Supplementary Payments" in the Old Republic Policies.[7]  This clarification, in this Court's estimation, does not alone warrant reconsideration of the Opinion or denial of Giant Eagle's Motion for Partial Summary Judgment. Again, Old Republic has not provided a defense in the underlying lawsuits, and Giant Eagle is the only party to this action who has incurred defense costs in the underlying lawsuits.

### B.  Bases for Reconsideration that the Court Rejects

While the Court will ultimately grant AGLIC's Motion for Reconsideration for reasons discussed in detail below, the Court will also, in the interest of completeness, briefly address the grounds for reconsideration raised by AGLIC that the Court finds do not warrant reconsideration of the Opinion.  AGLIC asserts that this Court erred because it did not consider all relevant provisions of the Old Republic Policies themselves in resolving Giant Eagle's Motion for Partial Summary Judgment.[8]  Specifically, AGLIC asserts that "ALAE" are not described in the Old Republic Policies themselves, and that, accordingly, the definition of "ALAE" provided by the SIR and deductible endorsements, which includes defense costs generally and without reference as to who incurs such defense costs, applies.  This argument fails because the Court found, and still finds, that "ALAE" *are* described in the Old Republic Policies themselves.  Specifically, and

---

[7] While the Court explained that "[t]he description of Supplementary Payments set forth in the Old Republic Policies does not include the *insured's* payment of defense costs[,]" Opinion 39, ECF No. 112 (emphasis added), and noted that "'[a]ll expenses we incur' clearly refers to expenses incurred by Old Republic, *and not the insured*, and it is undisputed that Old Republic has paid no defense costs in the underlying lawsuits[,]" *id.* (emphasis added), the Court acknowledges that its holding could have been more clearly stated in this regard.

[8] Generally speaking, the Court's reference in the present Opinion to the "Old Republic Policies themselves" refers to only the terms of the 2016 Old Republic Policy and the 2017 Old Republic Policy, including the relevant SIR and deductible endorsements, but without consideration of the Program Agreement.  The Court will address the Program Agreement, which Giant Eagle acknowledges governs the insurance relationship between Old Republic and Giant Eagle, *see* Surreply in Opp'n to Recons. Mot. 8, ECF No. 164, in detail below.  In this section, the Court merely addresses AGLIC's arguments respecting the Court's purported failure to properly interpret the express terms of the Old Republic Policies themselves, the AGLIC Policy, and the XL Policy, each of which the Court interpreted in resolving Giant Eagle's Motion for Partial Summary Judgment.

as argued by AGLIC and XL in their Brief in Opposition to Giant Eagle's Motion for Partial Summary Judgment, Defs.' Br. in Opp'n to MSJ 6, ECF No. 87, "ALAE" are a "subset of, and subsumed within," "Supplementary Payments," a term that that this Court found *is* explicitly defined in the Old Republic Policies.   Because all "ALAE" fall under the umbrella of "Supplementary Payments" and "ALAE" are not otherwise defined in the Old Republic Policies themselves, and because the Court found that the description of "Supplementary Payments" in the Old Republic Policies themselves does not include defense costs incurred *by the insured*, as described in detail above, the Court found that Giant Eagle's payment of defense costs it incurred defending itself in the underlying lawsuits did not constitute "Supplementary Payments," and thus, necessarily, did not constitute "ALAE."  While AGLIC and XL clearly disagree with this Court's interpretation, the Court finds that AGLIC's assertion that this Court overlooked certain provisions of the Old Republic Policies themselves fails to set forth a basis which supports reconsideration of the Opinion.

With respect to AGLIC's assertion that the Court failed to take into account Old Republic's duty to defend in resolving Giant Eagle's Motion for Partial Summary Judgment, AGLIC again takes issue with this Court's interpretation of the Old Republic Policies themselves.  In essence, however, this argument implicates AGLIC's assertion that the 2016 Old Republic Policy was not exhausted by Giant Eagle's payment of defense costs in the underlying lawsuits, and that AGLIC's duty to defend has thus not been triggered at this time.  *See* Reply in Supp. of Recons. Mot. 12, ECF No. 155 ("The Opinion fails to address that the limit of the Old Republic Policy does not exhaust, and thus trigger AGLIC's obligations, by the payment of defense costs.").  The Court agrees that, ultimately, exhaustion of the 2016 Old Republic Policy is required before AGLIC's duty to defend under the AGLIC Policy arises, and cites this argument at this point only to address

AGLIC's assertion that the Opinion "improperly presumed Old Republic has no further obligation to defend."  *See id.* at 11 (emphasis omitted).  Despite AGLIC's assertion, the Court notes that it has made no such determination at this time.[9]

AGLIC also objects to this Court's purported failure to give sufficient consideration to extrinsic evidence in resolving the duty to defend issue, and further asserts that this Court erred in ruling on Giant Eagle's Motion for Partial Summary Judgment on the duty to defend without allowing more extensive discovery.  With respect to discovery, the Court again notes that AGLIC and XL filed a Motion (ECF No. 80) pursuant to Rule 56(d) which raised the same argument respecting the relevance of extrinsic evidence and the necessity of discovery as to the Giant Eagle

---

[9] No party moved the Court to determine whether Old Republic owes a duty to defend Giant Eagle in the underlying lawsuits, though AGLIC and XL have each filed Third-Party Complaints for declaratory relief which assert that Old Republic owes such a duty.  *See* AGLIC's Third-Party Compl. ¶ 34, ECF No. 41; XL's Third-Party Complaint ¶ 28, ECF No. 43.  Any determination respecting Old Republic's duty to defend under its insurance agreement with Giant Eagle would, given Giant Eagle's representations with respect to the Program Agreement, necessarily require consideration of the Program Agreement.  *See* Br. in Opp'n to Recons. Mot. 5, ECF No. 143 ("[AGLIC and XL] argue . . . 'that the Giant-Eagle-Old Republic agreement consists of both the Program Agreement and the [Old Republic] Policies.'  But so what?  Giant Eagle does not dispute the Program Agreement's relevancy to the rights and obligations as between Giant Eagle and [Old Republic].  But it does not follow that the Program Agreement modifies [AGLIC's and XL's] contractual obligations to Giant Eagle under their excess policies."); *see also* Surreply in Opp'n to Recons. Mot. 8, ECF No. 164 ("The Program Agreement governs the relationship between Giant Eagle and [Old Republic]; but it does not modify [AGLIC's and XL's] excess policies or their contractual obligations to Giant Eagle.").  As previously noted, the Court did not consider the Program Agreement in resolving Giant Eagle's Motion for Partial Summary Judgment.

This issue is particularly pertinent because, as discussed below, the Program Agreement establishes that the Old Republic Policies have not, in fact, been exhausted by Giant Eagle's payment of defense costs.  Giant Eagle suggests in its Supplemental Brief that exhaustion of the Old Republic Policies is not a condition precedent to the duty to defend arising under either the AGLIC Policy or the XL Policy.  Giant Eagle's Supplemental Br. 1, ECF No. 178.  Ultimately, as will be discussed in detail below, the clear terms of the AGLIC Policy and the XL Policy, when considered along with the entire insurance agreement between Giant Eagle and Old Republic, provide that the duty to defend cannot be triggered under either the AGLIC Policy or the XL Policy through Giant Eagle's payment of defense costs.  As such, the Court need not consider the interplay of AGLIC's and XL's duties to defend under the AGLIC Policy and the XL Policy, respectively, and Old Republic's duty to defend under its agreement with Giant Eagle, if, as Giant Eagle suggests, exhaustion is not a condition precedent to the triggering of either AGLIC's or XL's duty to defend.  *See Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 173 (3d Cir. 1987) ("Old Republic, as the primary insurer, has the primary responsibility, in accordance with its contractual obligation, to defend Contrans and Ryder in the pending Toney suit, and Old Republic must reimburse [the excess insurer] for any costs already incurred in this defense."); *see also Kiewit E. Co. v. L & R Const. Co.*, 44 F.3d 1194, 1205 (3d Cir. 1995) ("When an insurer erroneously denies its duty to defend, fulfillment of the duty requires the insurer to pay for any defense costs already incurred."); *Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F. Supp. 2d 579, 591 (E.D. Pa. 1999) ("Generally, the primary insurer has the duty to 'conduct all of the investigation, negotiation and defense of claims until its limits are exhausted....'" (quoting 7C Appleman, *Insurance Law and Practice* (Berdal ed.) § 4682, at 28)).

and Old Republic insurance program and the issue of whether the SIR and deductible requirements are met or eroded by defense costs. *See* Br. in Supp. of Rule 56(d) Motion 10-14, ECF No. 80. Judge Schwab squarely rejected those arguments in denying AGLIC's and XL's Rule 56(d) Motion as to those issues. *See* Mem. Order 8-9, ECF No. 85. Despite the denial of the Rule 56(d) Motion, and despite not moving for reconsideration of Judge Schwab's Order, AGLIC and XL raised similar arguments respecting the value of extrinsic evidence and the necessity of discovery in its Opposition to Giant Eagle's Motion for Partial Summary Judgment, and this Court again rejected that assertion and agreed with Judge Schwab's analysis. AGLIC now raises this argument for a third time, and the Court again rejects the argument.

As set forth in the Opinion and Judge Schwab's Memorandum Order, a court looks to the four corners of both the underlying complaint and the four corners of the insurance contract in determining whether a claim is potentially covered such that an insurer owes a duty to defend. In the duty to defend context, the Supreme Court of Pennsylvania has explained:

> Whether a claim is "*potentially* covered is answered by comparing *the four corners of the insurance contract* to the four corners of the complaint." And, *if any doubt or ambiguity exists, it must be resolved in favor of coverage.* Moreover, to the extent there are undetermined facts that might impact on coverage, the insurer has a duty to defend until the "claim is narrowed to one patently outside the policy coverage," for example through discovery.

*Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020) (emphasis added) (citations omitted); *see also Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 623 F.3d 135, 139–40 (3d Cir. 2010) ("Any doubt or ambiguity as to the pleadings *or the policy terms* should be resolved in favor of the insured." (citing *Cont'l Cas. Co. v. Alexis I. duPont Sch. Dist.*, 317 A.2d 101, 105 (Del.1974)) (emphasis added)); *Little v. MGIC Indem. Corp.*, 649 F. Supp. 1460, 1466 (W.D. Pa. 1986), *aff'd*, 836 F.2d 789 (3d Cir. 1987) (interpreting an insurance contract and explaining: "[h]owever, we have not relied upon extrinsic evidence in reaching our conclusions

because Pennsylvania law provides a clear rule of construction.   Under Pennsylvania law, ambiguities must be resolved against the insurer, who drafted the D & O policy, and in favor of the insured." (citations omitted)); *Kiely on Behalf of Feinstein v. Philadelphia Contributionship Ins. Co.*, 206 A.3d 1140, 1146 (Pa. Super. 2019) ("In the context of a declaratory judgment action, the court resolves the question of coverage.   By comparing the allegations to the insurance policy provisions, we determine 'whether, if the allegations are sustained, the insurer would be required to pay [a] resulting judgment[.]'   'The question of whether a claim against an insured is potentially covered is answered *by comparing the four corners of the insurance contract* to the four corners of the complaint.' *We do not consider extrinsic evidence*." (citations omitted) (emphasis added)).

This Court looked to the four corners of the Old Republic Policies themselves, the AGLIC Policy, and the XL Policy, as well as the complaints in the underlying lawsuits, and determined that the underlying lawsuits assert a potentially covered claim.   Given that the AGLIC Policy and the XL Policy are excess insurance policies, the Court's inquiry next involved consideration of whether, under the terms of the AGLIC Policy and the XL Policy, respectively, AGLIC's and/or XL's duty to defend had been triggered through Giant Eagle's payment of defense costs in the underlying lawsuits.   This inquiry, however, should have included consideration of the four corners of the Program Agreement, which is not extrinsic evidence, and same is the basis upon which the Court finds that reconsideration should be granted.

### C.  Failure to Consider the Program Agreement as a Basis for Reconsideration

AGLIC asserts that it has consistently maintained that the Program Agreement was relevant to this Court's inquiry into whether the duty to defend was triggered under either the AGLIC Policy or the XL Policy.   Br. in Supp. of Recons. Mot. 10, ECF No. 124; Reply in Supp. of Recons. Mot. 4, ECF No. 155.   The Program Agreement was the subject of the Court's March 17, 2021 Order

and the parties' supplemental briefing on the Motion for Reconsideration.   Specifically, the

Court's March 17, 2021 Order directed AGLIC, XL, and Giant Eagle to each file a supplemental

brief respecting the following issues set forth in the parties' respective briefing in support of and

in opposition to AGLIC's Motion for Reconsideration:

1.  The applicability in this specific case of AGLIC's citation to case law which generally provides that an excess insurance policy is not triggered, and an excess insurer's duty to defend does not arise, until the underlying primary insurance coverage has been exhausted, *see* Br. in Supp. of Recons. Mot. 8-9, ECF No.  124; *see also* Reply in Supp. of Recons. Mot. 14-15, ECF No. 155; and

2.  Giant Eagle's acknowledgment that the Program Agreement governs the insurance relationship between Giant Eagle and Old Republic.  *See* Br. in Opp'n to Recons. Mot. 5, ECF No. 143 ("[AGLIC and XL] argue . . . 'that the Giant-Eagle-Old Republic agreement consists of both the Program Agreement and the [Old Republic] Policies.'  But so what? Giant Eagle does not dispute the Program Agreement's relevancy to the rights and obligations as between Giant Eagle and [Old Republic].  But it does not follow that the Program Agreement modifies [AGLIC's and XL's] contractual obligations to Giant Eagle under their excess policies."); *see also* Surreply in Opp'n to Recons. Mot. 8, ECF No. 164 ("The Program Agreement governs the relationship between Giant Eagle and [Old Republic]; but it does not modify [AGLIC's and XL's] excess policies or their contractual obligations to Giant Eagle.").

Order 2, ECF No. 174.  The March 17, 2021 Order further directed the parties to brief the issue of

whether the Court can determine, without consideration of the Program Agreement, whether the

Old Republic Policies have been exhausted through Giant Eagle's payment of defense costs in the

underlying lawsuits, and also provided that, to the extent that the parties believe that the Program

Agreement is irrelevant to the exhaustion inquiry, or that exhaustion is not required, the parties

may explain the basis for this argument in their briefing.  *Id.* at 2-3

AGLIC, XL, and Giant Eagle each filed a Supplemental Brief on April 7, 2021.  AGLIC

and XL assert that this Court could have determined, without consideration of the Program

Agreement, that the Old Republic Policies could not be exhausted by the payment of defense costs

if the Court had properly construed the Old Republic Policies themselves, AGLIC's Supplemental

Br. 3, ECF No. 177; XL's Supplemental Br. 1 n.1; 4, ECF No. 176,[10] but also argue that the

Program Agreement is relevant to the issue of exhaustion because it is a part of the entire insurance

agreement between Giant Eagle and Old Republic and that it informs when AGLIC's and XL's

duties to defend are triggered under the AGLIC Policy and the XL Policy, i.e. upon exhaustion of

the Old Republic Policies, AGLIC's Supplemental Br. 3-5, ECF No. 177; XL's Supplemental Br.

5, ECF No. 176.  Giant Eagle argues that the Program Agreement is not relevant to this Court's

consideration of AGLIC's and XL's duties to defend because those duties are not triggered by

exhaustion of the Old Republic Policies, but rather are triggered by payment of a "loss" as defined

by the AGLIC Policy and the XL Policy.[11]  Giant Eagle's Supplemental Br. 1, ECF No. 178.  Giant

Eagle further argues that the Program Agreement is irrelevant because it does not modify AGLIC's

or XL's duties under the AGLIC Policy or the XL Policy, respectively.  *Id.* at 3-5.

### 1.   The Program Agreement

The Program Agreement provides: "this Agreement, together with the Policies issued

hereunder, [including the Old Republic Policies,] represents the entire agreement between the

parties with respect to the subject matter hereof."  App. Ex. 11 at 12, ECF No. 77.  The Program

---

[10] While the Court understands and acknowledges AGLIC and XL's position that the Court incorrectly interpreted the Old Republic Policies themselves in the first instance (fully addressed above), the Court notes that its inquiry was more specifically directed to the effect of the Program Agreement on the Old Republic Policies, as well as Giant Eagle's arguments respecting the Program Agreement's purported irrelevance in this matter.

[11] The Court notes that this argument seemingly directly contradicts a statement made in Giant Eagle's Brief in Support of its Motion for Partial Summary Judgment.  *Compare* Giant Eagle's Supplemental Br. 1, ECF No. 178 ("That Agreement has no relevance because the duties to defend of AGLIC and XL . . . are not triggered by 'exhaustion' of the [Old Republic] [P]olicies, but rather when payment of 'loss,' as defined by their excess policies, reaches $2 million for a single occurrence."), *with* Br. in Supp. of MSJ 1, ECF No. 76 ("AGLIC and XL each promised to defend Giant Eagle against any suit seeking damages covered by their respective policies *when the applicable limit of underlying insurance ($2 million per occurrence) has been exhausted* by payment of 'loss' to which those policies apply." (emphasis added)).  The Court further notes that Giant Eagle has consistently briefed the issue of exhaustion of the limits of the Old Republic Policies, *see* Br. in Supp. of MSJ 12-15, ECF No. 76; Br. in Opp'n to Recons. Mot. 5-7, ECF No. 143; Surreply in Opp'n to Recons. Mot. 10-11, ECF No. 164, and also titled one of its arguments in its Surreply in Opposition to AGLIC's Motion for Reconsideration: "**Defense Expenses Exhaust the [Old Republic] Policies,**" Surreply in Opp'n to Recons. Mot. 10, ECF No. 164.

Agreement defines "Allocated Loss Adjustment Expenses," i.e. "ALAE," to include defense costs and attorneys' fees.  Resp. to SOF ¶ 49, ECF No. 88; *see also* App. Ex. 11 at 2, ECF No. 77.  The Program Agreement provides that Giant Eagle is responsible for payment of all ALAE and loss, and that ALAE are in addition to Giant Eagle's retention for loss and the Old Republic Policies' policy limits.  App. Ex. 11 at 3-4; 34; 37, ECF No. 77.  The Program Agreement further provides: "[t]o the extent that any terms or conditions of the aforesaid Policies[, including the Old Republic Policies,] are inconsistent with any of the terms or conditions of this Agreement, the latter are to be given effect and the former will be considered superseded by this Agreement."  Resp. to SOF ¶ 50, ECF No. 88.  The Program Agreement, which governs the insurance relationship between Giant Eagle and Old Republic, *see* Br. in Opp'n to Recons. Mot. 5, ECF No. 143; Surreply in Opp'n to Recons. Mot. 8, ECF No. 164, clearly and unambiguously provides that attorneys' fees and defense costs, generally, and without reference as to whether such costs are paid or incurred by Giant Eagle or Old Republic, constitute "ALAE."[12]  ALAE do not satisfy the SIR or deductible requirements of the Old Republic Policies,[13] and thus do not exhaust the Old Republic Policies.[14] Accordingly, the Program Agreement provides that Giant Eagle's payment of defense costs cannot satisfy the Old Republic Policies' deductible requirement, and the limits of the Old Republic Policies thus cannot be, and have not been, exhausted by the payment of defense costs.

### 2.  Excess Insurance Policies and Exhaustion Clauses Generally

---

[12] This definition of "ALAE" conflicts with the Court's interpretation of the Old Republic Policies themselves to provide that defense costs incurred by the insured are not described as "Supplementary Payments," and are thus not "ALAE."  In the case of such a conflict, the Program Agreement's definition supersedes the definition provided in the Old Republic Policies.  *See* Resp. to SOF ¶ 50, ECF No. 88.

[13] As described above, the Old Republic Policies provide that "Supplementary Payments" include all "ALAE," and neither "Supplementary Payments" nor "ALAE" satisfy the Old Republic Policies' SIR or deductible.  *See* Opinion 3-6, ECF No. 112.

[14] Payment of the $1 million deductible reduces the limits of liability under the Old Republic Policies, *see* Opinion 40, ECF No. 112, and thus could exhaust the $1 million per occurrence limit of the Old Republic Policies.

Significantly, the AGLIC Policy and the XL Policy are excess insurance policies. "When an insured is covered by both a primary policy and an excess policy, the general rule is that the excess liability carrier is not obligated to participate in the defense until the primary policy limits are exhausted." 14 Steven Plitt et al., *Couch on Insurance* § 200:42 (3d. ed. 2020). The Third Circuit has explained that "a true excess or secondary policy is not 'triggered' or required to pay until the underlying primary coverage has been exhausted." *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1454 (3d Cir. 1996); *see also Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, No. CIV.A. 3:13-2827, 2014 WL 3882080, at *6 (M.D. Pa. Aug. 7, 2014) ("The Third Circuit has predicted that 'the Pennsylvania Supreme Court would adopt the widely-followed rule that the policyholder may recover on the excess policy for a proven loss to the extent it exceeds the primary policy's limits.' Where the insurance only triggers upon payment by an underlying insurance company, the umbrella or excess policy will only be triggered through a payment that is in excess of the underlying limits." (quoting *Koppers*, 98 F.3d at 1454)).

In *Lexington Ins. Co. v. Charter Oak Fire Ins. Co.*, 81 A.3d 903, 909 (2013), which this Court quoted extensively in the Opinion, the Superior Court of Pennsylvania explained that "[n]o Pennsylvania appellate court has addressed *when* an exhaustion clause triggers an excess insurer's duty to defend." *Lexington*, 81 A.3d at 909 – 10 (emphasis added). The Superior Court further explained:

> In our view, the duty to defend is sufficiently different from the duty to indemnify that we conclude that *Zeig* and *Koppers* are not persuasive. Clearly, one difference is the scope of the duty. The duty to defend is broader than the duty to indemnify. *See Am. and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc*., 606 Pa. 584, 2 A.3d 526, 540–41 (2010) *(Jerry's Sport Ctr*.) However, the precise question here is not *whether* North River should be required to defend CMX, but rather it is *when* North River's duty arises. Thus, there is a temporal element implicit to the duty to defend that finds no corollary in the *Zeig* or *Koppers* analysis of the duty to indemnify. Moreover, we agree with recent precedent from the Second Circuit, distinguishing *Zeig*. In *Ali v. Fed. Ins. Co*., 719 F.3d 83, 94 (2d Cir.2013), the Second Circuit

31

concluded that an excess insurer does have a relevant interest in awaiting actual payment of a settlement by the primary insurer. According to the Second Circuit, excess insurers "had good reason" to dissuade insureds from "structur[ing] inflated settlements with their adversaries . . . that would have the same effect as requiring [excess insurers] to drop down and assume coverage [prematurely]." *Id*.

Absent binding precedent to the contrary, our analysis is limited to applying longstanding principles to the interpretation of insurance contracts. *See* [*Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (2007)]; [*Genaeya Corp. v. Harco Nat. Ins. Co.*, 991 A.2d 342, 346-347 (Pa.Super.2010)]. After reviewing the North River exhaustion clause, we conclude that its terms are clear and unambiguous. The clause provides that North River "will have the right and duty to defend the [i]nsured ... when the applicable limits of '[u]nderlying [i]nsurance' and '[o]ther [i]nsurance' have been exhausted *by payment of* judgments or settlements." Commercial Umbrella Policy, at 4 (emphasis added). To accept Lexington's interpretation of this clause improperly would render superfluous the "by payment of" language in the North River policy. We must give this language effect. *Baumhammers* at 290. Accordingly, we hold that North River's duty to defend is triggered by the actual payment of the relevant primary insurance.

*Id.* at 909-10; s*ee also Charter Oak Ins. Co. v. Maglio Fresh Foods*, 629 F. App'x 239, 246–47 (3d Cir. 2015) ("The language of the American Guarantee [excess] policy provided that it had a duty to defend 'when the applicable limit of underlying insurance has been exhausted by payment of claims for which coverage is afforded under this policy. . . . Because the limit of the Charter Oak [primary] policy was never exhausted by the payment of covered claims, the defense provision of the American Guarantee policy was never triggered." (citation omitted)); *Charter Oak Ins. Co. v. Maglio Fresh Food*, 45 F. Supp. 3d 461, 471 (E.D. Pa. 2014), *aff'd sub nom. Charter Oak Ins. Co.*, 629 F. App'x 239 ("It is difficult to imagine a court imposing a duty to indemnify, let alone defend, upon an excess carrier for damages that do not reach the primary policy limit, notwithstanding a settlement agreement between the insured and the primary insurer."); *Titeflex Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 88 A.3d 970, 982 (Pa. Super. 2014) ("As an excess insurer, NUFIC's duty to defend is only triggered once Titeflex has exhausted its underlying coverage."); *Zurn Indus., LLC v. Allstate Ins. Co.*, No. 1:18-CV-299-SPB, 2018 WL 6065102, at

*5 (W.D. Pa. Nov. 20, 2018) ("Zurn must establish that the Hartford Policies were triggered by the exhaustion of the Aenta 1983-85 Policy, which provided the first layer of umbrella coverage directly beneath the Hartford Policies."); *Fed. Ins. Co. v. Est. of Gould*, No. 10 CIV. 1160 RJS, 2011 WL 4552381, at *7 (S.D.N.Y. Sept. 28, 2011), *aff'd sub nom. Ali v. Fed. Ins. Co.*, 719 F.3d 83 (2d Cir. 2013) (addressing excess insurance policies which utilized the term "loss" in their exhaustion clauses and holding: "[t]he express language of these policies establishes a clear condition precedent to the attachment of the Excess Policies.  In each policy, *the excess coverage is not triggered until the underlying insurance is exhausted 'solely as a result of payment of losses thereunder.'*" (emphasis added)); *Liberty Ins. Underwriters, Inc. v. Ream*, No. 6:16-03324-CV-RK, 2018 WL 4225042, at *4 (W.D. Mo. Sept. 5, 2018) (explaining that, "[t]ypically, an excess insurer's duty to defend begins only after the primary insurer's policy is exhausted" and that "an insurance policy's language determines when that policy is exhausted and when the insurer has no further obligations to its insured[,]" and looking to the terms of the primary insurance policy to determine when it was exhausted. (citations omitted)); *Kajima Const. Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 227 Ill. 2d 102, 116 (2007) ("[E]xcess premiums are lower because excess coverage is, by its very nature, not supposed to be triggered until the underlying policy has been exhausted up to its limits."  (quoting *Roberts v. Northland Insurance Co.*, 185 Ill.2d 262, 281, 235 Ill.Dec. 579, 705 N.E.2d 762 (1998) (Freeman, C.J., concurring in part and dissenting in part, joined by Miller and McMorrow, JJ.))).

### 3.   Is Exhaustion of the Old Republic Policies a Condition Precedent to the Triggering of Either AGLIC's or XL's Duty to Defend?

In briefing the issues described in this Court's March 17, 2021 Order, and specifically whether the Program Agreement is relevant to the Court's consideration of whether AGLIC's or XL's duty to defend has been triggered, Giant Eagle argues as follows:

> Whether Insurers' duty to defend has been triggered is controlled by the language of their excess policies. *Nothing in those policies requires that the [Old Republic] Policies be "exhausted" to trigger Insurers' duty to defend.* That duty is triggered, rather, whenever payment by Giant Eagle of "loss," as defined by Insurers' policies, exceeds a specific amount (the underlying limit) that all agree is $2 million per occurrence. *AGLIC's duty attaches "when the applicable limit of underlying insurance . . . has been exhausted* by payment of loss for which coverage is afforded under this policy." ECF No. 77 at ¶ 19 . . . . XL's duty attaches when the "payment of loss to which this policy applies . . . exceeds the limits of the scheduled underlying insurance . . ." *Id.* at ¶ 23 . . . . Thus, Insurers' singular focus on "exhaustion" of the [Old Republic] Policies is misplaced and diversionary. The issue is not "exhaustion" of the [Old Republic] policies but rather whether "loss," as defined in the excess policies, includes defense costs, as the Court correctly framed and resolved the issue.

Giant Eagle's Supplemental Br. 1, ECF No. 178 (emphasis in original omitted) (emphasis in quoted language added by the Court). The Court agrees that it must look to the AGLIC Policy and the XL Policy in determining whether AGLIC's or XL's duty to defend has been triggered. To that end, the language that Giant Eagle quotes from the AGLIC Policy's exhaustion clause explicitly states that AGLIC's duty to defend is triggered "when the applicable limit of underlying insurance . . . *has been exhausted*" by payment of loss. *Id.* (emphasis added); *see also* Resp. to SOF ¶ 19, ECF No. 88. While the definition of "loss" is certainly relevant, the payment of a loss, pursuant to the express terms of the AGLIC Policy, must also exhaust the limits of the underlying insurance policy, i.e. the 2016 Old Republic Policy. Accordingly, the Court rejects Giant Eagle's argument that "[n]o language in [AGLIC's or XL's] policies supports their contention that [Old Republic's] fronting policies must be exhausted before [AGLIC or XL's] duty to defend is triggered." *See id.* at 2. The Court finds that the unambiguous terms of the AGLIC Policy clearly

34

require exhaustion of the underlying 2016 Old Republic Policy before AGLIC owes a duty to defend Giant Eagle.

With respect to the XL Policy's requirement of the payment of a "loss" which "exceeds the limits of the 'scheduled underlying insurance,' and any applicable and collectible 'other insurance'" in describing when the duty to defend under the XL Policy arises, the Court notes that the term "exceeds" and the phrase "exceeds the limits," or something close thereto, are frequently utilized by courts in discussing the issue of exhaustion.  *See Kajima*, 227 Ill. 2d at 115–16 ("St. Paul's excess policy in this case is entitled 'Umbrella Excess Liability Protection Coverage.'  The policy provides that it will pay damages that are covered by the policy and by the insured's basic insurance, *which exceed* the basic insurer's payment of the limits of coverage in the basic insurance, other than the insured's total limits."(emphasis added)); *see also*, 98 F.3d at 1454 (3d Cir. 1996) (citing *J. Kinderman & Sons, Inc. v. United Nat'l Ins. Co.*, 593 A.2d 857, 860 (Pa. Super 1991), *aff'd*, 533 Pa. 87, 619 A.2d 1058 (1993) for its holding that an "excess policy is responsible only for amounts *exceeding underlying policy's limits*." (emphasis added)); *SCI CA. Funeral Servs., Inc. v. Westchester Fire Ins. Co.*, 288 F.R.D. 450, 451-56 (C.D. Cal. 2013). (considering an insurance policy that insured a plaintiff "for *the amount of loss that exceeds* the amount payable pursuant to certain underlying policies, including the Old Republic Policy[,]" and explaining that the issuer of that policy "agreed to provide *excess coverage* to the Old Republic Policy." (emphasis added)); *Fed. Ins. Co. v. Srivastava*, 2 F.3d 98, 102 (5th Cir. 1993) ("Since Federal has no duty to drop down in place of Mission and Western, we conclude that its coverage begins when a loss *exceeds the policy limits* of all underlying policies." (emphasis added)); *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 (2d Cir. 2013) ("Excess liability policies, by contrast, ... provide an additional layer of coverage for losses that *exceed the limits* of a primary liability policy.  Coverage under an excess

policy thus is triggered when the liability limits of the underlying primary insurance policy have been exhausted." (emphasis added) (quoting *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir.2008))); *Fed. Ins. Co. v. St. Paul Fire & Marine Ins. Co./Saint Paul Mercury Ins. Co.*, 985 F.2d 979, 980 (8th Cir. 1993) ("Federal's policy, however, only required Federal to pay for the defense costs that *exceeded* what St. Paul's policy would pay.  Because St. Paul's policy covered all the defense costs, there was no excess amount for Federal to pay. (emphasis added)); *see also Carolina Cas. Ins. Co. v. Travelers Prop. Cas. Co.*, 90 F. Supp. 3d 304, 310 (D.N.J. 2014) (interpreting an insurance contract that contained an "excess other-insurance clause" and provided: "when this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, *that exceeds the sum of*: (1) The total amount that all such other insurance could pay for the loss in the absence of this insurance; and (2) The total of all deductible and self-insured amounts under all that other insurance." (emphasis added)).

The Court notes that no party has contested XL's status as an excess insurer, and the XL Policy is titled "Commercial Excess Follow Form and Umbrella Liability Policy." The Court acknowledges, as it must, that the XL Policy was modified by an endorsement to replace the following language:

> We will have the right and duty to defend any suit covered by Insuring Agreement A, but only when the scheduled underlying insurance or other insurance has been exhausted by payment of loss to which this policy applies.

with this language:

> We will have the right and duty to defend any suit covered by Insuring Agreement A, but only if the actual payment of loss to which this policy applies, by you or insurers providing scheduled underlying insurance[,] exceeds the limits of the scheduled underlying insurance and any applicable and collectible other insurance.

App. Ex. 2 at 22; 47, ECF No. 77; *see also* Reply in Supp. of MSJ 5, ECF No. 93 (Giant Eagle arguing that "XL's duty to defend 'any suit' is not triggered by 'exhaustion' of the SIR, but rather,

whenever the 'payment of loss' (which includes defense costs) by Giant Eagle 'exceeds the limits of the scheduled underlying insurance[,]'" and asserting that "[t]he parties added this language by an endorsement that deleted the original language that delayed the triggering of XL's duty to defend until 'the scheduled underlying insurance . . . has been exhausted by payment of loss.'" (citations omitted)).  The modified provision includes additional language respecting who can pay "loss," describes "other insurance" more clearly, and effectively replaces the phrase "when the scheduled underlying insurance or other insurance has been exhausted by payment of loss" with "but only if the actual payment of loss to which this policy applies, by you or insurers providing scheduled underlying insurance[,] exceeds the limits of the scheduled underlying insurance and any applicable and collectible other insurance."  App. Ex. 2 at 22; 47, ECF No. 77.

The Court need not determine whether the "exceeds" language utilized in the XL Policy effectively eliminates the XL's Policy's exhaustion requirement and the general requirement that underlying primary insurance must first be exhausted before an excess insurer's duty to defend arises.[15]  As noted, the provision was modified in several respects, and the "exceeds" language could very well bear the same meaning, functionally speaking, as "exhaust," especially in light of the case law discussed above.[16]  While Giant Eagle now argues, *see* Footnote 10 above, that exhaustion of the 2017 Old Republic Policy is not required before XL's duty to defend arises under the XL Policy, the Court need not resolve this issue because, even if this Court were to find that the XL Policy does not unambiguously require exhaustion of the 2017 Old Republic Policy before

---

[15] Or whether the same is permissible under Pennsylvania law.  *See* 14 Steven Plitt et al., *Couch on Insurance* § 200:42 (3d. ed. 2020) ("When an insured is covered by both a primary policy and an excess policy, the general rule is that the excess liability carrier is not obligated to participate in the defense until the primary policy limits are exhausted. *Courts have justified this rule by relying on the terms and conditions of the excess policy*." (emphasis added) (footnotes omitted)).

[16] Merriam-Webster.com defines "exceed" to mean: "to be greater than or superior to," "to go beyond a limit set by," and "to extend outside of."  *See* Merriam-Webster, "Exceed," https://www.merriam-webster.com/dictionary/exceed (last visited May 13, 2021).

XL owes a duty to defend, the XL Policy's definition of "loss" does not allow for a finding that defense costs constitute a "loss," as will be discussed in further detail below.

Giant Eagle, in arguing that AGLIC's and XL's duties to defend are not triggered by exhaustion of the Old Republic Policies, cites to case law that is distinguishable from the facts presented in this case in several material respects.  First, with respect to Giant Eagle's citation to the Superior Court of Delaware's decision in *American Guarantee & Liability Ins. Co. v. Intel Corp.*, No. 09C-01-170-JOH, 2010 WL 8590881 (Del. Super. July 29, 2010), *aff'd*, 51 A.3d 442 (Del. 2012), that case is distinguishable because the fronting policy at issue (between an insured and a fronting insurer) in that matter did not impact, in any way, the triggering of the excess insurer's duty to defend under its excess insurance policy (between the insured and the excess insurer).  *See Intel Corp.*, 2010 WL 8590881, at *10 ("[I]t is apparent that ORIC's policy does not affect the triggering of AG's duty to defend.").  In this case, Giant Eagle acquired excess insurance policies from AGLIC and XL which list the Old Republic Policies, which are fronting policies, as underlying insurance and which impose the duty to defend only upon the completion of conditions precedent which require the Court to look to and interpret the fronting Old Republic Policies.[17] *See* Giant Eagle's Supplemental Br. 1, ECF No. 178 ("The Court had to examine the [Old

---

[17] In *Intel*, the Superior Court of Delaware explained:

> There is a practical reason why this is the correct result: ORIC's policy is a "fronting policy."  "A 'fronting policy' has been described as one 'which does not indemnify' or, apparently, defend 'the insured but which is issued to satisfy financial responsibility laws of various' jurisdictions 'by guaranteeing to third persons who are injured that their claims against' the insured 'will be paid.'"  "The fronting policy satisfies such insurance requirements because the insurance company is responsible in the first instance to pay a loss covered by its policy.  The arrangement also satisfies the policyholder's interest in retaining the risk (and minimizing the cost of insurance) because the insurer expects to be indemnified for any loss that the insurer may be required to pay, and has rated the policy accordingly."  In short, a fronting policy is not really an insurance policy at all.  It therefore makes practical sense then that an excess insurer would not make the attachment of its policy contingent on the exhaustion of a fronting policy.

*Intel Corp.*, 2010 WL 8590881, at *10 (footnotes omitted) (citations omitted).  Again, in this case, the AGLIC Policy and the XL Policy explicitly identify the fronting Old Republic Policies as underlying insurance.

Republic] [P]olicies because both excess policies refer to 'underlying insurance' when defining 'loss,' but only to determine whether defense costs are included in that term, not to determine whether the [Old Republic] [P]olicies were 'exhausted.'" (emphasis omitted)).   Further, as discussed above, the AGLIC Policy expressly requires exhaustion of the fronting 2016 Old Republic Policy before AGLIC's duty to defend arises.

Giant Eagle also cites to the Delaware Supreme Court's holding on appeal in the *Intel* matter in support of its argument that only the excess policy, and not an underlying insurance policy, is relevant to the issue of exhaustion.  Giant Eagle's Supplemental Br. 5, ECF No. 178.   In *Intel Corp. v. Am. Guarantee & Liab. Ins. Co.*, 51 A.3d 442 (Del. 2012), the Delaware Supreme Court considered a different underlying policy (between XL and the insured), which the excess policy at issue provided must be exhausted before the excess insurer's duty to defend could be triggered.  Contrary to Giant Eagle's assertion that the Delaware Supreme Court did not look to the XL policy at issue in that case in determining the exhaustion issue, that court did consider the language of the underlying policy in conjunction with the excess policy.  *See Intel Corp.*, 51 A.3d at 448 ("Intel's reading of the AGLI policy purports to do exactly what Paragraph C of the Endorsement forbids: obligate AGLI to provide a duty to defend before exhaustion of the underlying XL policy by payment of judgments or settlements.  Viewing the policy language as a whole, Intel's reading is untenable.  Only AGLI's reading, as discussed below, reconciles the language of the *Following Form Policy, the underlying XL Policy, and the Endorsement*." (emphasis added)); *see also Intel Corp.*, 2010 WL 8590881, at *12 (the Superior Court of Delaware explaining: "[a]t the same time, the payment of judgments or settlements is not the only way to exhaust XL's policy.  Since XL's policy places *its defense costs* within its limits, its $50 million limits can be exhausted by defense costs that have reached that amount." (emphasis added)).

Further, *Am. Nat'l Red Cross v. St. Paul Travelers, Inc.*, No. EDCV05-861-VAP(SGLx), 2006 WL 8449842, at *4 (C.D. Cal. Mar. 14, 2006) is distinguishable because it involved the interpretation of a primary insurance policy and that policy's interaction with a fronting insurance policy, and did not involve excess insurance. *Am. Nat'l Red Cross*, 2006 WL 8449842, at *1. This distinction is material. *See Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 72 n.21 (1997) ("We find nothing contrary in *City of Oxnard v. Twin City Fire Ins. Co.* (1995) 37 Cal.App.4th 1072, 44 Cal.Rptr.2d 177, or *Nabisco, Inc. v. Transport Indemnity Co.,supra*, 143 Cal.App.3d 831, 192 Cal.Rptr. 207. Each decision holds only that an 'excess insurer' does not have a duty to defend an insured until 'primary insurance' in the form of a so-called 'self-insured retention' is exhausted. . . . The insurers here are not 'excess insurers.' By their own admission, they are 'primary insurers.'" (citations omitted)). Again, in this case, Giant Eagle acquired excess insurance policies which explicitly implicate the fronting Old Republic Policies and impose the duty to defend only upon completion of conditions precedent which involve interpretation of the underlying fronting Old Republic Policies.

Giant Eagle also cites to *Axis Specialty Ins. Co. v. Brickman Grp. Ltd., LLC*, 458 F. App'x 220 (3d Cir. 2012) for the proposition that AGLIC and XL "'cannot use a duty created by a separate contract, [i.e. the Program Agreement], to which [they are] neither a party nor a third-party beneficiary, to alter their contractual relationships with Giant Eagle." Giant Eagle's Supplemental Br. 4, ECF No. 178. Neither AGLIC nor XL argues that the Program Agreement modifies the AGLIC Policy or the XL Policy. The Court agrees that the Program Agreement does not alter the AGLIC Policy or the XL Policy. The Program Agreement, which "governs the relationship between Giant Eagle and [Old Republic]," Surreply in Opp'n to Recons. Mot. 8, ECF No. 164, is relevant because it impacts the Old Republic Policies and the insurance relationship between Old

40

Republic and Giant Eagle, which in turn informs *when* the duty to defend arises under the AGLIC Policy and the XL Policy, i.e. upon payment of *loss* that *exhausts* or exceeds the limits of the 2016 Old Republic Policy and the 2017 Old Republic Policy, respectively.

### 4. Reconsideration is Warranted

The parties briefed the issue of exhaustion of the Old Republic Policies in moving for and opposing partial summary judgment on the duty to defend,[18] and the Court acknowledged the issue in the Opinion in determining that Giant Eagle's payment of defense costs constituted a "loss" under both the AGLIC Policy and the XL Policy, *see* Opinion 39-41, ECF No. 112. The Court declined, however, to consider the Program Agreement in resolving Giant Eagle's Motion for Partial Summary Judgment in the Opinion, and the Court now finds, for the reasons that follow, that it must consider the Program Agreement in determining whether AGLIC's and XL's duties to defend have been triggered through Giant Eagle's payment of defense costs in the underlying lawsuits.[19] Initially, the AGLIC Policy and the XL Policy clearly require this Court to look to the Old Republic Policies in determining whether the payment of "loss" which exhausts or exceeds the limits of the Old Republic Policies has taken place. *See* Resp. to SOF ¶¶ 16-21, ECF No. 88; Resp. to Additional SOF ¶¶ 47; 57-60, ECF No. 94; App. Ex. 1 at 22, ECF No. 77; App. Ex. 2 at 47, ECF No. 77; *see also* Giant Eagle's Supplemental Br. 1, ECF No. 178 ("The Court had to examine the [Old Republic] [P]olicies because both excess policies refer to 'underlying insurance'

---

[18] *See* Opinion 17-18, ECF No 112 ("Defendants and the Third-Party Defendant each assert that Giant Eagle's Motion should be denied on the following bases: . . . (5) Giant Eagle's failure to establish exhaustion of the Old Republic Policies, specifically on the basis that Giant Eagle's payment of defense costs does not satisfy its SIR and deductible obligations under the Old Republic Policies[.]" (citing Defs.' Br. in Opp'n 2-9, ECF No. 87; Old Republic's Br. in Opp'n 12-13, ECF No. 89)).

[19] The Court notes that this Opinion does not hold that Giant Eagle must, at this stage of the litigation, establish that the underlying lawsuits are actually, as opposed to potentially, covered by the Old Republic Policies in order to establish that Giant Eagle has exhausted the Old Republic Policies. Rather, this Court's analysis and holding in the present Opinion are strictly limited to the four corners of the insurance documents at issue, including the Program Agreement.

when defining 'loss,' but only to determine whether defense costs are included in that term, not to determine whether the [Old Republic] [P]olicies were 'exhausted.'" (emphasis omitted)).

Further, the Program Agreement is not extrinsic evidence,[20] but rather is an agreement that is essential to and a part of the entire insurance agreement between Old Republic and Giant Eagle, and can be considered as part of the "eight corners" analysis.[21]  While Giant Eagle argues that the Program Agreement is extrinsic evidence and that it is ultimately irrelevant in the duty to defend context, Giant Eagle has acknowledged the function and importance of the Program Agreement, as well as the fact that the insurance agreement between Old Republic and Giant Eagle consists of both the Old Republic Policies and the Program Agreement.  *See* Br. in Opp'n to Recons. Mot. 5, ECF No. 143 ("[AGLIC and XL] argue . . . 'that the Giant-Eagle-Old Republic agreement consists of both the Program Agreement and the [Old Republic] Policies.'  But so what?  Giant Eagle does not dispute the Program Agreement's relevancy to the rights and obligations as between Giant Eagle and [Old Republic].  But it does not follow that the Program Agreement modifies [AGLIC's and XL's] contractual obligations to Giant Eagle under their excess policies."); *see also* Surreply in Opp'n to Recons. Mot. 8, ECF No. 164 ("The Program Agreement governs the relationship

---

[20] Even if the Program Agreement constitutes extrinsic evidence, the Court is hard-pressed to understand how it could resolve the issue of when AGLIC's and XL's duties to defend arise without consideration of an agreement, introduced by Giant Eagle, which clearly and directly impacts the definitions provided in the Old Republic Policies and exhaustion of the Old Republic Policies.  *See* Giant Eagle's Supplemental Br. 1, ECF No. 178 ("Each court considered extrinsic evidence only with respect to the timing or amount of (allegedly) triggering payments—evidence analogous to Giant Eagle's undisputed proof of defense costs exceeding $2 million.").

[21] Courts interpreting materially similar agreements have concluded that a program agreement and the insurance policies to which it relates should be interpreted together.  *See SCI CA. Funeral Servs., Inc*, 288 F.R.D. 450, 456 (C.D. Cal. 2013) (considering both a fronting commercial general liability insurance policy and a "Program Agreement," both of which had been entered into between Old Republic and an insured, in considering whether Old Republic was a necessary party in a coverage action between the insured and an excess insurer); *Oak Harbor Freight Lines, Inc. v. XL Ins. Am., Inc.*, 199 Wash. App. 1045 (2017) ("But absent the Insurance Program Agreement and required collateral to secure Oak Harbor's payment and reimbursement obligations under the policies, XL Insurance would not have agreed to assume liability for payment of workers' compensation claims made by Oak Harbor employees.  Because both the Insurance Program Agreement and the policies expressly depend upon provisions contained in the other, the integration clauses are not operative.  The Insurance Program Agreement is part and parcel of the insurance contract and therefore, the arbitration clause is not enforceable.").

between Giant Eagle and [Old Republic]; but it does not modify [AGLIC's and XL's] excess policies or their contractual obligations to Giant Eagle.").  Further, and importantly, the language of the Program Agreement itself acknowledges the interrelation of the Program Agreement and the Old Republic Policies.  *See* App. Ex. 11 at 12, ECF No. 77 (the Program Agreement provides: "this Agreement, together with the Policies issued hereunder, [including the Old Republic Policies, *see* App. Ex. 11 at 34-40; Ex. 3; Ex. 4, ECF No. 77,] represents the entire agreement between the parties with respect to the subject matter hereof."); *see also* Resp. to SOF ¶ 50, ECF No. 88 (the Program Agreement also provides: "[t]o the extent that any terms or conditions of the aforesaid Policies[, including the Old Republic Policies, *see* App. Ex. 11 at 34-40; Ex. 3; Ex. 4, ECF No. 77,] are inconsistent with any of the terms or conditions of this Agreement, the latter are to be given effect and the former will be considered superseded by this Agreement.").  Given the above, the Court finds that the Program Agreement can and should be considered in the Court's "eight corners" analysis.

Giant Eagle argues that the Program Agreement affects only its relationship with Old Republic, and that it is thus not relevant to the issue of whether AGLIC's or XL's duty to defend has been triggered.[22]  Br. in Opp'n to Recons. Mot. 7-12, ECF No. 143; Surreply in Opp'n to Recons. Mot. 7-8, ECF No. 164.  This argument ignores the fact that the AGLIC Policy and the XL Policy are excess insurance policies, which, again, are triggered only upon the completion of certain conditions precedent which require interpretation of the relevant underlying fronting

---

[22] The Court rejects Giant Eagle's argument that the Program Agreement is necessarily irrelevant because AGLIC and XL are not parties to the Program Agreement.  AGLIC and XL are also not parties to the Old Republic Policies, and no party legitimately contests those Policies' relevance to the Court's consideration of when the duty to defend arises under either the AGLIC Policy or the XL Policy.  "[W]hile the interests of a primary insurer are virtually unaffected by the existence of excess coverage, the interests of an excess insurer are very much affected by the actions taken by the primary carrier, especially when the latter wrongfully refuses to defend its insured."  *F.B. Washburn Candy Corp. v. Fireman's Fund*, 541 A.2d 771, 774 (Pa. Super. 1988) (citing *Peter v. Travelers Insurance Co.*, 375 F.Supp. 1347, 1350–1351 (C.D.Cal.1974)).

insurance policies in this matter.  All parties agree that the Program Agreement does not modify

the AGLIC Policy or the XL Policy.  As discussed briefly above, the Court also agrees with this

assertion, and finds that the Program Agreement's relevance stems only from its effect on the Old

Republic Policies, i.e. the underlying insurance policies, and the relationship between Old

Republic and Giant Eagle, which in turn informs *when* the duty to defend arises under either the

AGLIC Policy or the XL Policy.[23]

The Program Agreement was introduced by Giant Eagle and was a part of the record at the

time this Court decided Giant Eagle's Motion for Partial Summary Judgment, and Giant Eagle, as

the movant, bore the burden of establishing that the duty to defend had been triggered under the

AGLIC Policy and/or the XL Policy.  When the Court looks to the four corners of the Program

Agreement, it is clear that defense costs, no matter which entity incurs or pays them, are defined

---

[23] Giant Eagle also advances the following argument in its Supplemental Brief:

> Insurers hope to stand in [Old Republic's] shoes under the Program Agreement only because their
> own policies do not support their position.  But imagine that the Program Agreement deemed that
> Insurers' duty to defend was triggered whenever a claimant simply presented a demand in excess of
> the [Old Republic Policies'] limit.  Insurers would never concede that their obligations were thereby
> modified without their knowledge or consent.

Giant Eagle's Supplemental Br. 4, ECF No. 178.  This argument fails to properly address the issue at hand.  The
Program Agreement, as acknowledged by Giant Eagle, does not modify the AGLIC Policy or the XL Policy.  The
Program Agreement is only relevant because the AGLIC Policy and the XL Policy require the Court to look to the
relevant underlying insurance in determining whether and when the excess policies have been triggered.  The Program
Agreement sets forth relevant definitions and impacts when and how exhaustion of the Old Republic Policies occurs,
which in turn affects when the excess insurers' duties to defend arise.

The Court agrees that it would have been faced with a different scenario, and different arguments, had Giant
Eagle attempted to rely to its benefit, as its hypothetical suggests, on a secret agreement between only itself and a
fronting insurer in an attempt to modify an exhaustion clause in an excess insurance policy.  That is not, however, the
situation before the Court.  Rather, Giant Eagle asks the Court to ignore, to Giant Eagle's benefit, an agreement which
it filed of record and acknowledges is a part of Giant Eagle's entire insurance agreement with Old Republic, and which
in turn is a part of the complex and sophisticated (if not convoluted) insurance arrangement at issue in this matter.  To
ignore the Program Agreement would result in the triggering of the AGLIC Policy's duty to defend before exhaustion
of the underlying 2016 Old Republic Policy, a result that the AGLIC exhaustion clause expressly forbids.  *See Intel
Corp.*, 51 A.3d at 448 ("*Intel's reading of the AGLI policy purports to do exactly what Paragraph C of the
Endorsement forbids: obligate AGLI to provide a duty to defend before exhaustion of the underlying XL policy* by
payment of judgments or settlements.  *Viewing the policy language as a whole*, Intel's reading is untenable.  Only
AGLI's reading, as discussed below, reconciles the language of the *Following Form Policy, the underlying XL Policy,
and the Endorsement*." (emphasis added)).  The Court rejects Giant Eagle's argument and finds that consideration of
the Program Agreement is necessary in this matter.

as "ALAE," which do not satisfy the SIR or deductible obligations set forth in the Old Republic Policies. The Court interpreted the Old Republic Policies themselves, without consideration of the Program Agreement, to provide that Giant Eagle's payment of its own defense costs, which Giant Eagle incurred in defending a potentially covered claim, constituted "other amounts payable under the [Old Republic Policies]," and not "ALAE" or "Supplementary Payments," and found that Giant Eagle's payment of its own defense costs could thus satisfy the Old Republic Policies' SIR obligation and deductible and could also exhaust the 2016 Old Republic Policy. In the event of conflict between the terms set forth in the Old Republic Policies and the Program Agreement, however, the terms of the Program Agreement control and supersede the inconsistent terms in the Old Republic Policies. Accordingly, defense costs, whether incurred or paid by Giant Eagle or Old Republic, simply do not erode the SIR or the deductible requirements of the Old Republic Policies, and thus cannot exhaust the Old Republic Policies.

The AGLIC Policy unambiguously requires exhaustion of underlying 2016 Old Republic Policy before AGLIC owes a duty to defend Giant Eagle. The Program Agreement unambiguously establishes that the Old Republic Policies, including the 2016 Old Republic Policy, cannot be, and have not, in fact, been, exhausted by Giant Eagle's payment of defense costs in the underlying lawsuits. Because the 2016 Old Republic Policy has not been exhausted, AGLIC's duty to defend under the AGLIC Policy has not been triggered by Giant Eagle's payment of defense costs in the underlying lawsuits.[24]

---

[24] Because the AGLIC Policy defines "loss" to include defense expenses and supplementary payments only if the underlying Old Republic Policy includes defense expenses and supplementary payments in the Limits of Insurance, and because "ALAE," including defense costs incurred by Giant Eagle, are in addition to Giant Eagle's retention for loss and the Old Republic Policies' policy limits, App. Ex. 11 at 3; 34; 37, ECF No. 77, Giant Eagle's payment of defense costs also do not constitute payment of a "loss" under the AGLIC Policy.

Further, as noted above, even if exhaustion of the 2017 Old Republic Policy is not a condition precedent to the triggering of XL's duty to defend under the XL Policy, the Court finds that, in light of its holdings in the present Opinion, the XL Policy's definition of "loss" does not allow for a finding that defense costs constitute "loss."  With respect to "loss," the Court held as follows in the Opinion:

> Because defense costs constitute "other amounts payable under the [Old Republic Policies]" and can satisfy the Old Republic Policies' SIR obligation and deductible, and because the payment of defense costs can erode the limits of the Old Republic Policies, the Court finds that payment of an appropriate amount of defense costs, i.e. $ 2 million, constitutes a loss under the AGLIC Policy and the XL Policy.

Opinion 40-41, ECF No. 112.[25]  As noted above, all defense costs, whether incurred by Giant Eagle or Old Republic, constitute "ALAE," which are included in the definition of "Supplementary Payments."  Further, ALAE are in addition to Giant Eagle's retention for loss and the Old Republic Policies' policy limits.  *See* App. Ex. 11 at 3; 34; 37, ECF No. 77.  Because defense costs, whether incurred by Giant Eagle or Old Republic, constitute "ALAE," they do not and cannot satisfy Giant Eagle's SIR or deductible, and further are not "other amounts payable under the [Old Republic Policies]."  For these reasons, the Opinion's above-quoted holding with respect to whether defense costs constitute "loss," which relied upon a finding that defense costs constitute "other amounts payable under the [Old Republic Policies]," is untenable.  In moving for partial summary judgment, Giant Eagle argued: "[t]he question thus turns on whether 'loss' includes Giant Eagle's defense costs.  That question, in turn, depends on whether defense costs are (a) 'Supplementary Payments' or (b) 'other amounts payable under the policy.'  If they are the latter, then they satisfy the SIR and deductible, constitute "loss," and trigger the duty to defend."  Reply in Supp. of MSJ

---

[25] *See also* Opinion 35, ECF No. 112 ("Giant Eagle argues that, if defense costs are 'other amounts payable' under the Old Republic Policies, 'then they satisfy the SIR and deductible [obligations under the Old Republic Policies], constitute "loss," and trigger the duty to defend." (quoting Reply in Supp. of MSJ 3, ECF No. 93)).

3, ECF No. 93 (citations omitted).  As discussed above, Giant Eagle's defense costs constitute "ALAE," which are included in the definition of "Supplementary Payments," and are not, in fact, "other amounts payable under the policy," and thus do not constitute "loss" under the XL Policy. The Court finds that, under the clear terms of the XL Policy, "loss" unambiguously does not include defense costs.  As such, Giant Eagle's payment of defense costs in the underlying lawsuits does not constitute payment of "loss" under the XL Policy, and the same cannot trigger XL's duty to defend under the XL Policy.[26]

"The interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court . . . ."  *Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 163 (3d Cir. 2006) (quoting *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999)).  For the reasons discussed above, the Court finds that its failure to consider the Program Agreement in reaching a determination that AGLIC's and XL's duties to defend under the AGLIC Policy and the XL Policy, respectively, had been triggered by Giant Eagle's payment of defense

---

[26] The Court notes that the XL Policy defines "loss" as: "those sums you become legally obligated to pay as settlements or judgments in connection with a covered 'claim.'  '*Loss' shall include expenses incurred to investigate a 'claim' or defend a 'suit' if so provided in the 'scheduled underlying insurance*.'"  Resp. to Additional SOF ¶ 60, ECF No. 94 (emphasis added).  With respect to defense costs and "loss," the XL Policy provides that, if the 2017 Old Republic Policy provides, in some manner, that "loss" includes defense costs, then defense costs constitute a "loss" under the XL Policy.  The 2017 Old Republic Policy does not explicitly define or describe the term "loss" to include defense costs.  Again, the Program Agreement provides that "ALAE," including defense costs incurred by Giant Eagle, are in addition to Giant Eagle's retention for loss and the Old Republic Policies' policy limits.  App. Ex. 11 at 3; 34; 37, ECF No. 77.  The Court further notes that the Program Agreement, seemingly confirming the Court's interpretation that "loss" does not include "ALAE" or defense costs under the 2017 Old Republic Policy, does define "loss," and that definition does not include defense costs.  The Program Agreement defines "loss" as follows:

> (c) "Loss" or "Losses" means any claim or claims for which there is coverage under any one of the Policies, and any extra-contractual, punitive or exemplary damages liability which may be imposed with respect to any of the Policies.

App. Ex. 11 at 3, ECF No. 77.  The Program Agreement separately and clearly defines "ALAE" to include defense costs and attorneys' fees, *id.* at 3, and further provides that "ALAE" and "Loss" are different "obligations" under the Old Republic Policies.  *See id.* at 4 ("'Obligation' or 'Obligations' means any and all amounts the Insured is or will be required to pay under the terms and conditions of the Policies and this Agreement.   The lnsured's Obligations include, but are not limited to, *Losses*, *Allocated Loss Adjustment Expenses*, Unallocated Loss Adjustment Expenses, premiums, surcharges and assessments *under the Policies[, including the Old Republic Policies] . . . .*" (emphasis added)).

costs in the underlying lawsuits was a clear error of law.  The Program Agreement is relevant to the interpretation of the Old Republic Policies, i.e. the underlying insurance policies, and informs *when* the duty to defend arises under either the AGLIC Policy or the XL Policy.  Accordingly, Court finds that reconsideration of the Court's November 9, 2020 Opinion and Order of Court is warranted.

Upon reconsideration of Giant Eagle's Motion for Partial Summary Judgment, the Court finds, for the reasons discussed above and summarized below, that Giant Eagle has not met its burden of establishing that there is no genuine dispute of material fact as to Giant Eagle's assertion that Giant Eagle's payment of defense costs in the underlying lawsuits constitutes payment of a "loss" which has exhausted or exceeded the limits of the Old Republic Policies such that the duty to defend under either the AGLIC Policy or the XL Policy has been triggered.  Because defense costs do not exhaust the Old Republic Policies, and because the 2016 Old Republic Policy must be exhausted before AGLIC's duty to defend arises under the AGLIC Policy, Giant Eagle has not met its burden of establishing that AGLIC's duty to defend under the AGLIC Policy has been triggered.  Further, under the clear terms of the policies relevant herein, the definition of "loss" in both the AGLIC Policy and the XL Policy does not include defense costs, and the payment of defense costs thus cannot trigger the duty to defend under either excess policy.  Accordingly, the Court cannot find that Giant Eagle has met its burden of establishing that AGLIC and XL owe Giant Eagle a defense in the underlying lawsuits at this time.  Giant Eagle's Motion for Partial Summary Judgment will be denied.

### D.  Other Matters Before the Court

The Court declines, in the absence of a formal motion for summary judgment or any request for summary judgment by AGLIC and XL at the time the Court considered Plaintiff's Motion for

Partial Summary Judgment, to entertain AGLIC's request in its Motion for Reconsideration that summary judgment be entered in its favor at this time.  The Court acknowledges, however, AGLIC's argument that the Court's holding in this matter, specifically that Giant Eagle, under the terms of the insurance contracts at issue in this case, cannot rely on its payment of defense costs in the underlying lawsuits to support a finding that AGLIC or XL currently owes a duty to defend Giant Eagle in the underlying lawsuits, seemingly forecloses the relief Giant Eagle seeks by way of this declaratory judgment action.[27]   In light of the Court's disposition of the Motion for Reconsideration filed by AGLIC and joined by XL, the Court shall direct the parties to confer respecting the procedural posture of this matter following the issuance of this Opinion, including whether the case is prepared to proceed to discovery or whether future motion practice is anticipated, and the parties shall be directed to submit a joint status report within thirty (30) days advising the Court as to each party's position respecting the same.

The Court further notes that the Motions which have been filed by Giant Eagle, AGLIC, and XL while AGLIC's Motion for Reconsideration was pending are all seemingly moot at this time in light of this Court's decision on reconsideration and denial of Giant Eagle's Motion for Partial Summary Judgment.  Accordingly, the Motions filed at (ECF Nos. 130; 137; 139; 151; and 168), which in any event were filed prematurely in light of the pendency of the Motion for Reconsideration, will be dismissed as prematurely filed and/or moot.  These Motions shall be dismissed without prejudice to any party refiling similar motions at a later date, if warranted and appropriate.

---

[27] The only trigger relied upon by Giant Eagle in the Complaint is Giant Eagle's payment of defense costs in the Opioid MDL.  Compl. ¶¶ 53; 66, ECF No. 46.  Any holding in this Opinion is not intended to foreclose Giant Eagle's ability to rely on a different trigger at a later date, if warranted and appropriate.  However, at this time, Giant Eagle's reliance on only its payment of defense costs as a duty to defend triggering event seemingly results in there being no case or controversy respecting the duty to defend that is ripe for consideration at this time.

**IV.     Conclusion**

Accordingly, for the reasons discussed above, the Court will grant the Motion for Reconsideration filed by AGLIC and joined by XL, and will deny Giant Eagle's Motion for Partial Summary Judgment.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: May 25, 2021

cc/ecf: All counsel of record

50