**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GIANT EAGLE, INC. and HBC SERVICE COMPANY, | ) ) ) | 2:19-cv-00904-RJC |
| Plaintiffs, | ) ) ) ) | Judge Robert J. Colville |
| vs. | ) ) | |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and XL SPECIALTY INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, | ) ) ) | |
| Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| OLD REPUBLIC INSURANCE COMPANY, | ) ) ) | |
| Third-Party Defendant. | ) ) ) | |
| XL SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| OLD REPUBLIC INSURANCE COMPANY, | ) ) ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court are two Motions filed by Plaintiffs Giant Eagle, Inc. and HBC Service Company (collectively, "Giant Eagle"), specifically: (1) Giant Eagle's Motion to Certify Interlocutory Appeal (ECF No. 188); and (2) Giant Eagle's Motion for Leave to File Second Amended Complaint (ECF No. 186) ("Motion to Amend").  Defendant, Counterclaimant, and Third-Party Plaintiff American Guarantee and Liability Insurance Company ("AGLIC") and Defendant, Counterclaimant, and Third-Party Plaintiff XL Specialty Insurance Company ("XL") oppose the Motion to Certify Interlocutory Appeal, and have collectively filed a Brief in Opposition (ECF No. 194) to the Motion.  Giant Eagle subsequently filed a Reply (ECF No. 197) in support of its Motion to Certify Interlocutory Appeal on September 3, 2021.

AGLIC does not oppose the Motion to Amend, but has filed a Response (ECF No. 192) to the same to purportedly "correct and oppose certain false statements in both Giant Eagle's brief in support, and its proposed Second Amended Complaint."  AGLIC's Resp. to Mot. to Amend 1, ECF No. 192.  On August 11, 2021, Giant Eagle filed a Reply (ECF No. 193) in support of its Motion to Amend to address the assertions set forth in AGLIC's Response.  XL has not filed a response to the Motion to Amend.  The Court notes that Third-Party Defendant Old Republic Insurance Company ("Old Republic") has not filed a response to either of the pending Motions, and the Court thus assumes that it takes no position as to the Motions.  The deadline for any response to Giant Eagle's Motion to Certify Interlocutory Appeal and its Motion to Amend has passed, and the Court thus finds that the Motions have been fully briefed, and are ripe for disposition.  This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

I.       **Factual Background & Procedural History**

This Court has already issued two lengthy Opinions in this matter (ECF Nos. 112 and 179), each of which set forth in detail the relevant factual background and procedural history of this matter.  The Court's previous description of the factual background and procedural history of this case is incorporated herein by reference, and, in light of the same, the Court will very briefly describe only the procedural history relevant to the Motions at issue herein.  In this declaratory judgment action, Giant Eagle seeks a declaration that AGLIC and XL owe Giant Eagle a duty to defend and coverage with respect to multiple lawsuits pending against Giant Eagle in the action captioned *In re Nat'l Prescription Opiate Litig.*, No. 2804 (N. D. Ohio) ("Opioid MDL").  Op. 2, ECF No. 112.

The Court's November 9, 2020 Opinion (ECF No. 112) and Order of Court (ECF No. 113) granted the Motion for Partial Summary Judgment on the Duty to Defend (ECF No. 75) filed by Giant Eagle.  In its Motion for Partial Summary Judgment, Giant Eagle sought partial summary judgment declaring that AGLIC and XL have a duty to defend Giant Eagle in four cases (the "underlying lawsuits")[1] that have been transferred to the Opioid MDL.  *Id.*  In support of its Motion for Partial Summary Judgment, Giant Eagle argued, inter alia, that its payment of defense costs in the underlying lawsuits could trigger AGLIC's duty to defend and XL's duty to defend under excess insurance policies issued to Giant Eagle by AGLIC and XL (the "AGLIC Policy" and the "XL Policy").[2]  This Court granted Giant Eagle's Motion for Partial Summary Judgment, and ultimately held as follows:

---

[1] The underlying lawsuits are: *County of Cuyahoga, Ohio v. Purdue Pharma L.P., et al.*, Case No 17-OP-45004 (N.D. Ohio); *County of Summit, Ohio v. Purdue Pharma L.P., et al.*, Case No 18-OP-45090 (N.D. Ohio); *Artz, et al. v. Endo Health Solutions, Inc., et al.*, Case No 19-op-45459 (N.D. Ohio); and *Frost, et. al. v. Endo Health Solutions, Inc., et al.*, Case No 18-op-46327 (N.D. Ohio).  *See* Proposed Order 2-3, ECF No. 75-1.

[2] The Court notes that Giant Eagle was covered by commercial general liability policies issued by Old Republic which ran from April 1, 2015 to April 1, 2016 (the "2016 Old Republic Policy") and from April 1, 2016 to April 1, 2017 (the

The Court finds that declaratory judgment is appropriate with respect to Count I of Plaintiffs' First Amended Complaint (ECF No. 46), and holds that Defendant American Guarantee and Liability Insurance Company owes a duty to defend Plaintiffs under Commercial Umbrella Liability Policy, No. AUC 2856587-17 and that Defendant XL Specialty Insurance Company owes a duty to defend Plaintiffs under Commercial Excess Follow Form and Umbrella Liability Policy No. US00074903LI16A in the following lawsuits: *County of Cuyahoga, Ohio v. Purdue Pharma L.P., et al.*, Case No 17-OP-45004 (N.D. Ohio); *County of Summit, Ohio v. Purdue Pharma L.P., et al.*, Case No 18-OP-45090 (N.D. Ohio); *Artz, et al. v. Endo Health Solutions, Inc., et al.*, Case No 19-op-45459 (N.D. Ohio); and *Frost, et. al. v. Endo Health Solutions, Inc., et al.*, Case No 18-op-46327 (N.D. Ohio).

Order 2, ECF No. 113.

On December 2, 2020, AGLIC filed a Motion for Reconsideration (ECF No. 123) (the "Motion for Reconsideration") with respect to the Court's November 9, 2020 Opinion and Order of Court, and XL subsequently joined in the request for relief made therein, *see* ECF No. 133. Following extensive briefing, the Court entered its May 25, 2021 Opinion (ECF No. 179) and Order of Court (ECF No. 180), which granted the Motion for Reconsideration, vacated the November 9, 2020 Opinion and Order of Court, and denied Giant Eagle's Motion for Partial Summary Judgment.  Order 2, ECF No. 180.  The basis for that decision is discussed at length in the Court's May 25, 2021 Opinion.  In summarizing the basis for its decision, the Court explained as follows:

Upon reconsideration of Giant Eagle's Motion for Partial Summary Judgment, the Court finds . . . that Giant Eagle has not met its burden of establishing that there is no genuine dispute of material fact as to Giant Eagle's assertion that Giant Eagle's payment of defense costs in the underlying lawsuits constitutes payment of a "loss" which has exhausted or exceeded the limits of the Old Republic Policies such that the duty to defend under either the AGLIC Policy or the XL Policy has been triggered.  Because defense costs do not exhaust the Old Republic Policies, and because the 2016 Old Republic Policy must be exhausted before AGLIC's duty to defend arises under the AGLIC Policy, Giant Eagle has not met its burden of establishing that AGLIC's duty to defend under the AGLIC Policy has been triggered.  Further, under the clear terms of the policies relevant herein, the definition of "loss" in both the AGLIC Policy and the XL Policy does not include

"2017 Old Republic Policy") (collectively, the "Old Republic Policies").  Op. 3, ECF No. 179.  The Court's analysis in both of its previous Opinions required interpretation of the Old Republic Policies.

> defense costs, and the payment of defense costs thus cannot trigger the duty to defend under either excess policy.  Accordingly, the Court cannot find that Giant Eagle has met its burden of establishing that AGLIC and XL owe Giant Eagle a defense in the underlying lawsuits at this time.  Giant Eagle's Motion for Partial Summary Judgment will be denied.

Op. 48, ECF No. 179.

The Court's May 25, 2021 Order also directed the parties to confer to discuss the procedural posture of this case, including whether the case was, at that time, prepared to proceed to discovery or whether further motion practice was anticipated, in light of the Court's issuance of its May 25, 2021 Opinion and Order.  The May 25, 2021 Order further directed the parties to submit a joint status report advising the Court as to each party's position with respect to the same.  Order 2-3, ECF No. 180.  The parties filed their Joint Status Report (ECF No. 183) on July 1, 2021.  In the parties' Joint Status Report, Giant Eagle advised the Court of its intention to file its Motion to Certify Interlocutory Appeal and its Motion to Amend, and AGLIC and XL each expressed an intention to file a motion for summary judgment.[3]  Upon receipt of the Joint Status Report, the Court entered an Order (ECF No. 184) staying discovery pending the filing and disposition of the motions described in the Joint Status Report.  Now that Giant Eagle's Motions have been fully briefed, the Court will consider each Motion in turn.

## II.   Legal Standards

### A.  Motion to Certify Interlocutory Appeal

A district court may certify an order for interlocutory appeal if it determines that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  Section 1292(b) therefore sets out three

---

[3] The Court notes that neither AGLIC nor XL has filed a motion for summary judgment to date.

requirements that district courts consider before granting leave to file an immediate interlocutory appeal: (1) whether the order involves a controlling question of law; (2) whether there is a substantial ground for difference of opinion as to that question of law; and (3) whether immediate appeal from the order would materially advance the ultimate termination of the litigation. *See Koerner v. Hankins*, 2012 WL 464871, at *1-2 (W.D. Pa. Feb. 13, 2012). The party seeking interlocutory appeal bears the burden of proving that all three of the certification requirements have been met, though even if all statutory criteria are met, the decision to grant certification remains wholly within the discretion of the district court. *Koerner*, 2012 WL 464871 at *2 (citing *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976)).

With respect to the three certification requirements, the United States District Court for the District of New Jersey has aptly explained:

### 1. Controlling question of law

The Third Circuit has defined a "controlling question of law" as encompassing not only "every order which, if erroneous, would be reversible error on final appeal," but also those orders which are "serious to the conduct of the litigation, either practically or legally." [*Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)]. On a practical level, saving the district court's time and the litigants' expenses is "a highly relevant factor." *Id.* Even an order involving the exercise of discretion may be considered a controlling question of law if it "truly implicates the policies favoring interlocutory appeal." *Id.* at 756. A district court is to be guided "by a practical application of those policies, not by a mechanical application of labels such as 'discretionary' or 'nondiscretionary.'" *Id.*

### 2. Substantial ground for difference of opinion

Section 1292(b)'s second factor, a substantial ground for difference of opinion, "must arise out of genuine doubt as to the correct legal standard." *In re Dwek*, 2011 WL 487582, at *4 (D.N.J. Feb.4, 2011) (quotation and citation omitted). Such doubt can stem from conflicting precedent, the absence of controlling law on a particular issue, or novel and complex issues of statutory interpretation. *See New Jersey, Dept. of Treasury v. Fuld*, 2009 WL 2905432, at *2 (D.N.J. Sept.8, 2009) (citations omitted). However, a movant's mere disagreement with the district court's ruling is not a substantial ground for difference of opinion. *In re Dwek*, 2011 WL 487582, at *4.

### 3. Materially advance termination of litigation

A § 1292(b) certification materially advances the ultimate termination of the litigation where the interlocutory appeal eliminates: (1) the need for trial; (2) complex issues that would complicate the trial; or (3) issues that would make discovery more costly or burdensome. *See Fuld*, 2009 WL 2905432, at *2 (citing *Orson, Inc. v. Miramax Film Corp.*, 867 F.Supp. 319, 322 (E.D.Pa.1994)).

*Litgo New Jersey, Inc. v. Martin*, Civ. No. 06-2891 (AET), 2011 WL 1134676, at *2–3 (D.N.J. Mar. 25, 2011).

### B. Motion to Amend

With respect to amendments other than those that may occur as a matter of course under Rule 15(a)(1), Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Federal Rule of Civil Procedure 16(b)(4) provides: "Modifying a Schedule. A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

The United States Court of Appeals for the Third Circuit has explained that, "when a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). The Third Circuit has further explained that "[a] party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard." *Premier Comp*, 970 F.3d at 319. "[W]hether 'good cause' exists under Rule 16(b)(4) depends in part on a plaintiff's diligence." *Id.* (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84–85 (3d Cir. 2010); *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000)); *see also* Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment ("the court may modify the schedule on

7

a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."); *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) ("'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order.").  Courts consider only the conduct of the moving party, and not prejudice to the non-moving party, in determining whether the moving party has shown good cause under Rule 16(b)(4).  *See Chancellor*, 501 F. Supp. 2d at 702. ("However, the Court concludes that examining the prejudice to the opposing party would shift the inquiry from the conduct of the moving party to the burden on the non-moving party, thus eviscerating the requirement that the moving party show 'good cause.'").

With respect to Rule 15(a), the Supreme Court of the United States has explained:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted).  Under Rule 15(a), delay alone is insufficient to support a denial of leave to amend.  *Cornell & Co. v. Occupational Safety & Health Rev. Com'n*, 573 F.2d 820, 823 (3d Cir. 1978).  "However, 'at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party.'"  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)).  "When a party delays making a motion to amend until after summary judgment has been granted to the

adverse party, other courts have recognized that the interests in judicial economy and finality of litigation may become particularly compelling." *Cureton*, 252 F.3d at 273.

The Third Circuit has explained: "[i]t is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell*, 573 F.2d at 823 (citations omitted); *see also Chancellor*, 501 F. Supp. 2d at 702 ("Under the Rule 15 analysis, the focus is on the prejudice to the party opposing the amendment."). With respect to prejudice to the non-moving party, courts look to "the hardship to the [non-moving party] if the amendment were permitted[,]" and specifically consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273. "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982)).

## III.   Discussion

### A.  Motion to Certify Interlocutory Appeal

Initially, the Court notes that Giant Eagle's Motion to Certify Interlocutory Appeal seemingly misinterprets, at least in some respects, the Court's Opinion on the Motion for Reconsideration, which this Court notes that it did not issue lightly, as reflected by the Court's request for supplemental briefing, *see* ECF No. 174, and the Opinion's extensive reconsideration of the issues at hand. As the Court explicitly explained in its Opinion, more than once, *see* Op. 44, ECF No. 179; *id.* at 44 n.23, the Opinion did not, as Giant Eagle asserts, hold that the Program Agreement "altered and modified the [AGLIC Policy and the XL Policy] as a matter of law." Br.

in Supp. of Mot. to Certify 4, ECF No. 189.   Rather, the Court found that "the Program Agreement's relevance stems only from its effect on the Old Republic Policies, i.e. the underlying insurance policies, and the relationship between Old Republic and Giant Eagle, which in turn informs when the duty to defend arises under either the AGLIC Policy or the XL Policy."  Op. 44, ECF No. 179.

Moreover, Giant Eagle's Motion to Certify Interlocutory Appeal ignores, entirely, the Court's analysis with respect to exhaustion clauses, *see, generally,* Op. 27-45, ECF No. 179.  The only basis for certification asserted by Giant Eagle in support of its Motion to Certify Interlocutory Appeal is whether a proper application of the "eight corners" analysis should (or should not) have involved consideration of the Program Agreement.  Even if Giant Eagle is correct that the Court could not look to the terms of the Program Agreement in conducting its "eight corners" analysis, there would still exist a genuine issue of material fact as to whether either the 2016 or 2017 Old Republic Policy has been exhausted through Giant Eagle's payment of defense costs in the underlying lawsuits.[4]  The AGLIC Policy itself unambiguously requires exhaustion of the 2016 Old Republic Policy before its duty to defend arises,[5] and Giant Eagle sets forth absolutely no basis for the Court to conclude that there exists a substantial reason for disagreement as to the Court's analysis on the issue of exhaustion.  Accordingly, even if Giant Eagle were to prove successful in arguing that the Court's "eight corners" analysis should not have included the

---

[4] *See* Op. 42 n.20, ECF No. 179 ("Even if the Program Agreement constitutes extrinsic evidence, the Court is hard-pressed to understand how it could resolve the issue of when AGLIC's and XL's duties to defend arise without consideration of an agreement, introduced by Giant Eagle, which clearly and directly impacts the definitions provided in the Old Republic Policies and exhaustion of the Old Republic Policies.").

[5] *See* Op. 45, ECF No. 179 ("The AGLIC Policy unambiguously requires exhaustion of underlying 2016 Old Republic Policy before AGLIC owes a duty to defend Giant Eagle.  The Program Agreement unambiguously establishes that the Old Republic Policies, including the 2016 Old Republic Policy, cannot be, and have not, in fact, been, exhausted by Giant Eagle's payment of defense costs in the underlying lawsuits.  Because the 2016 Old Republic Policy has not been exhausted, AGLIC's duty to defend under the AGLIC Policy has not been triggered by Giant Eagle's payment of defense costs in the underlying lawsuits.").

Program Agreement, Giant Eagle would not be entitled to summary judgment in its favor on the duty to defend issue at this time.  *See* Op. 42 n. 20, ECF No. 179.  Further, for the same reason, an immediate appeal would not materially advance the ultimate termination of the litigation with respect to the duty to defend issue.  The same alone is a basis to deny Giant Eagle's Motion.

Finally, while the Court acknowledges Giant Eagle's disagreement with the Court's ultimate holding on the Motion for Partial Summary Judgment, the Court also notes that Giant Eagle's reference to an "unlimited corners" analysis and its argument that the Program Agreement is entirely irrelevant to the Court's analysis are, on some level, inconsistent with Giant Eagle's past positions and statements in this matter.  Giant Eagle itself introduced the Program Agreement in moving for partial summary judgment, *see* ECF No. 77-12, and Giant Eagle has acknowledged the Program Agreement's importance to the Old Republic Policies and the insurance relationship between Giant Eagle and Old Republic, *see* Op. 42-43, ECF No. 179.  The Court again notes that its consideration of the Program Agreement was strictly limited to its effect on the underlying Old Republic Policies.  The reasons for this Court's determination are set forth at length in its Opinion on the Motion for Reconsideration.  While Giant Eagle may disagree with the Court's analysis and conclusions, the Court finds, for the reasons discussed above, that Giant Eagle has not set forth a sufficient basis for the relief it seeks in the Motion to Certify Interlocutory Appeal.  Accordingly, the Court will exercise its discretion and deny the Motion.

### B.  Motion to Amend

Because the present parties have not set forth any substantive opposition to the Motion to Amend, the Court will not, in considering the Motion to Amend, look to whether the proposed amendment will prejudice AGLIC, XL, or Old Republic.[6]  "In the absence of substantial or undue

---

[6] The Court must still consider whether Giant Eagle has carried its burden under Rule 15(a).  *See Trickel v. Disc. Gold Brokers, Inc.*, No. 3:14-CV-1916, 2015 WL 12290017, at *2 (M.D. Pa. July 21, 2015), *report and recommendation*

prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz*, 1 F.3d at 1414.  While delay alone is insufficient to warrant the denial of a motion for leave to amend under Rule 15(a), "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party.'" *Cureton*, 252 F.3d at 273 (quoting *Adams*, 739 F.2d at 868).  The issue of undue delay requires a court "to focus on the movant's reasons for not amending sooner." *Id.* "When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." *Kephart v. ABB, Inc.*, No. CV 2:12-668, 2013 WL 12141534, at *5 (W.D. Pa. Dec. 30, 2013) (quoting *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)).

The Third Circuit has "declined to reward a wait-and-see approach to pleading." *Jang v. Bos. Sci. Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013).  "The plaintiff's delay may become undue after a motion for summary judgment is filed where the movant has had previous opportunities to amend a complaint, but chose not to do so. . . .  In particular, if the requested amendment is based upon facts known to the plaintiff at the time the previous complaint was amended, the amendment is disfavored." *In re Integrated Health Servs., Inc.*, 375 B.R. 730, 736 (D. Del. 2007) (citations omitted).  The Third Circuit has also explained that it has "refused to overturn denials of motions for leave to amend where the moving party offered no cogent reason for the delay in seeking the amendment." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 629 (3d Cir. 2013).

*adopted sub nom. Trickel v. Disc. Gold Brokers, Inc.*, No. 3:14-CV-1916, 2015 WL 12517429 (M.D. Pa. Aug. 11, 2015) (in considering an unopposed motion to amend, the United States District Court for the Middle District of Pennsylvania explained: "Although deemed unopposed, we are still mandated to consider whether the granting of the motion is appropriate." (quoting *Sindoni v. Consol. Rail Corp.*, 4 F. Supp. 2d 358, 364-65 (M.D. Pa. 1996))).

Further, "[t]actical decisions and dilatory motives may lead to a finding of undue delay." *Leary v. Nwosu*, No. CIV.A. 05-5769, 2007 WL 2892641, at *4 (E.D. Pa. Oct. 2, 2007); *see also Phillips v. Borough of Keyport*, 179 F.R.D. 140, 148–49 (D.N.J. 1998) ("Plaintiffs' failure to assert state constitutional claims can only be attributable to a tactical decision to assert only a federal constitutional claim.  Courts will deny a motion to amend where the movant's unexplained delay suggests bad faith or tactical design."); *Fisher v. Dominion Transmission, Inc.*, No. 4:12-CV-0484, 2015 WL 6166626, at *3 (M.D. Pa. Oct. 20, 2015) ("Rather, this Court can discern no legitimate reason for the Plaintiffs' conduct, and it finds no reason to permit the requested amendment in light of what it views instead as dilatory and tactical decisions."); *Walls v. Cty. of Camden*, No. CIV. 06-5961 (JEI), 2008 WL 4934052, at *6 (D.N.J. Nov. 13, 2008) ("Therefore, Plaintiff cannot claim that she did not know CFG and Steininger's identity at the time she filed her original complaint.  It appears to the Court that Plaintiff made a tactical decision not to sue CFG and Steininger.  The applicable civil rules do not now permit Plaintiff to change her mind after the statute of limitations has run."); *Veneziale v. Quest Diagnostics*, No. CIV.A. 11-4879, 2013 WL 4551178, at *3 (E.D. Pa. Aug. 28, 2013) ("Moreover, given the absence of any explanation for its failure to seek amendment sooner, the Court can only assume that the delay was tactical in nature.").

The circumstances surrounding Giant Eagle's late request for leave to amend, as well as Giant Eagle's failure to explain its delay in seeking amendment, support denial of the Motion to Amend at this juncture.  Giant Eagle filed its Motion to Amend on July 23, 2021.  Giant Eagle seeks to add six additional insurers, each of whom issued at least one insurance policy to Giant Eagle during the timeframe of April 1, 2005 to April 1, 2018, as defendants in this action, and to assert claims related to the same.  Giant Eagle also seeks to assert additional claims against AGLIC

arising out of policies issued by AGLIC to Giant Eagle during the timeframe of April 1, 2005 to April 1, 2009.  In support of its Motion to Amend, Giant Eagle asserts that "recent" developments in the Opioid MDL have resulted in the additional timeframe of April 1, 2005 to April 1, 2009, and any policies issued during that timeframe, becoming relevant in the instant action, and that amendment to include claims related to the same in this action should be permitted.  *See* Br. in Supp. of Mot. to Amend 4, ECF No. 187 ("On June 5, 2020, the court [in the Opioid MDL] allowed amendments to the complaints in *Lake* and *Trumbull* to add allegations against the pharmacy defendants, including Giant Eagle, pertaining to the alleged wrongful dispensing of prescription opioids from their pharmacies. . . . The amendments to add dispensing claims expanded the temporal scope of the Case Track 3 actions against Giant Eagle to include allegedly wrongful acts or omissions dating back to January 1, 2006 pursuant to prior discovery orders in the MDL.").  Giant Eagle also points to this Court's May 25, 2021 resolution of the Motion for Reconsideration as a basis for permitting late amendment, *see* Br. in Supp. of Mot. to Amend 9, ECF No. 187, but offers no substantive explanation as to why it believes that its decision to await the Court's final determination on the Motion for Partial Summary Judgment should excuse Giant Eagle's delay in seeking amendment.

Giant Eagle initiated this action by filing a Complaint (ECF No. 1) on July 25, 2019.  Giant Eagle subsequently filed the currently operative First Amended Complaint on October 22, 2019.  Both the original Complaint and the First Amended Complaint assert claims that involve insurance policies that were issued to Giant Eagle from April 1, 2009 to April 1, 2018, as well as underlying lawsuits that seek billions of dollars from, inter alia, Giant Eagle.  With respect to the timeframe of April 1, 2009 to April 1, 2018, Giant Eagle offers no explanation as to why it did not, or could not, include claims against the additional proposed defendant insurers upon initiating this action

or upon filing the First Amended Complaint.  Accordingly, with respect to Giant Eagle's request to add new parties and claims related to insurance policies that were issued from April 1, 2009 to April 1, 2018, the timeframe that has been at issue since Giant Eagle initiated this action, the Court finds that Giant Eagle offers no explanation for the approximately two-year delay in seeking such amendment.  On the record before the Court, the Court can only assume that Giant Eagle's decision to pursue claims against only AGLIC and XL at the outset of this litigation, and Giant Eagle's accompanying two-year delay in seeking amendment to add the additional insurers who issued policies from April 1, 2009 to April 1, 2018, was tactical in nature, and, in the absence of an explanation for the same, the Court finds that Giant Eagle's delay in requesting such an amendment was dilatory and undue.

With respect to Giant Eagle's request for leave to amend to add claims against all insurers that issued policies to Giant Eagle for the annual policy periods from April 1, 2005 to April 1, 2009, the Court notes that the only cited basis for such an amendment was known to Giant Eagle, at the latest, on June 5, 2020, *see* Br. in Supp. of Mot. to Amend 4, ECF No. 187, well before the Court issued its first Opinion on Giant Eagle's Motion for Partial Summary Judgment.  Giant Eagle did not inform the Court of the June 2020 amendments that were permitted in the Opioid MDL at that time, and it did not request leave to file a second amended complaint until July 23, 2021.  It is certainly possible, though the Court can only speculate, that Giant Eagle desired to await a decision on its pending Motion for Partial Summary Judgment before moving for leave to amend or informing the Court about the developments in the Opioid MDL,[7] and that Giant Eagle was also aware that a motion to amend would have been likely to delay resolution of the Motion for Partial

---

[7] Though the Court notes, as will be discussed in further detail below, that Giant Eagle, after it initially proved successful on the Motion for Partial Summary Judgment, affirmatively stated that no amendment of the pleadings should be permitted.

Summary Judgment on the duty to defend, as a return to the pleadings stage with the addition of several new parties would require at least some inquiry as to whether the new parties intended to file Rule 12 motions, desired to be heard on the pending Motion,[8] or themselves desired to raise issues that could be considered in conjunction with Giant Eagle's summary judgment motion. Instead, Giant Eagle waited until after the Court and the parties expended substantial resources in resolving the Motion for Partial Summary Judgment and the Motion for Reconsideration before seeking leave to amend.  As noted above, Giant Eagle offers no substantive explanation for its delay in seeking amendment until after the Court granted the Motion for Reconsideration.  The Court construes this delay as a dilatory tactical decision on Giant Eagle's part, and finds that this delay goes against the interest of judicial economy, as the same will result in piecemeal, inefficient litigation and motion practice.

Further, the Court notes that Giant Eagle, after initially proving successful on its Motion for Partial Summary Judgment, affirmatively stated in the parties' November 24, 2020 Updated Fed. R. Civ. P. 26(f) Report (ECF No. 117) that the pleadings were closed, and that no further amendment of the same should be permitted.  *See* ECF No. 117 at 7 (when required to propose dates for motions to amend or motions to add new parties, Giant Eagle asserted: "Giant Eagle contends that the pleadings are closed."); *id.* at 11 ("Until this phase of the litigation is resolved, the Court should stay the remainder of the litigation, permit no discovery, and entertain no motions for leave to amend.").  Giant Eagle points to the parties' original November 12, 2019 Rule 26(f) Report in asserting that Giant Eagle put the Court on notice of the potential for amendment.  *See* ECF No. 59 at 5 ("On October 29, 2019, after Giant Eagle had filed the First Amended Complaint

---

[8] Indeed, Giant Eagle asserts that each of the proposed additional defendants also owes a duty to defend under the policies they issued to Giant Eagle from 2005 to 2018.  *See* Br. in Supp. of Mot. to Amend 5, ECF No. 187; *see also* ECF No.187-1 at ¶ 150.

in this lawsuit, the plaintiffs in those two underlying actions moved for leave to amend their complaints against Giant Eagle.  Giant Eagle will oppose the motion.  The proposed amendments, if allowed, will expand the underlying allegations against Giant Eagle in a manner that may cause Giant Eagle to move for leave to amend its First Amended Complaint in this action to name one or more additional defendants.").   The Court finds Giant Eagle's clear opposition to any amendment of the pleadings in the November 24, 2020 26(f) Report, despite the fact that Giant Eagle had full knowledge, at that time,[9] of all of the facts it now asserts as the basis for the amendments sought by way of the Motion to Amend, to be further evidence of a dilatory motive and undue delay in seeking amendment, especially in the absence of any explanation for the failure to inform the Court of the potential for amendment at that time.

The Court also notes that Giant Eagle, in opposing motions to amend filed by AGLIC and XL after the Court issued its initial Opinion granting the Motion for Partial Summary Judgment, has previously asserted in this case that "XL's proposed new claims were raised only after the Court's recent Opinion and Order, *which strongly indicates that they were likely interposed for a dilatory purpose.*"  ECF No. 162 at 10 (emphasis added); *see also id.* at 1 (Giant Eagle arguing: "But a judicial loss is no justification for adding retaliatory counterclaims."); ECF No. 171 at 10. The Court ultimately dismissed the motions to amend filed by AGLIC and XL without prejudice as moot and/or prematurely filed, and the Court did not reach the merits of those motions. Accordingly, the issue of whether those motions to amend were brought with undue delay or were accompanied by dilatory motives was never substantively addressed by the Court, but nonetheless was one that was not inappropriately raised by Giant Eagle in opposing those motions.  The Court cites to Giant Eagle's previous, strongly worded argument respecting AGLIC's and XL's

---

[9] The second Rule 26(f) Report was filed more than five months after the amendments were permitted in the Opioid MDL, and approximately eight months before Giant Eagle filed its Motion to Amend.

purported dilatory motives for the purpose of illustrating, at this juncture, that Giant Eagle previously raised a position that is directly contrary to Giant Eagle's current assertion that it has brought its Motion to Amend, which was filed only after Giant Eagle's Motion for Partial Summary Judgment was ultimately denied, in a timely fashion.  The Court finds this to be further evidence of Giant Eagle's clear appreciation of conduct that can be construed as dilatory, including, potentially, awaiting a decision on a pending summary judgment motion before seeking leave to amend.

Giant Eagle also asserts that this Court, in requesting that the parties submit an updated Rule 26(f) Report ahead of the reconvened Initial Case Management Conference in this matter, contemplated permitting the parties to file motions for leave to amend the pleadings.  Whether this Court contemplated providing a deadline for the parties to file motions for leave to amend the pleadings is immaterial to Giant Eagle's current request.  The Court set no such deadline at that time, and Giant Eagle's request is thus governed by Rule 15(a) in any event.  The Court again notes that Giant Eagle, both prior to and following the reconvened Initial Case Management Conference, argued that the pleadings were closed and that no further amendment should be permitted.  The Court's provision of a deadline for motions seeking leave to amend merely would have impacted when the more stringent standard provided by Rule 16(b)(4) came into effect.  As noted, Giant Eagle's Motion to Amend is subject to Rule 15's requirements, and, for the reasons discussed herein, Giant Eagle fails to satisfy even that lenient standard.

The Court also notes that the scope and pace of this litigation have been dictated, from the outset of this matter, by the actions and choices of Giant Eagle.  It is Giant Eagle who sought, over AGLIC's and XL's objections, to file its Motion for Partial Summary Judgment early in the proceedings in this matter.  *See* Mem. Order 2-3, ECF No. 85; Tr. 8:11-13, ECF No. 78.  Giant

Eagle, naturally, also chose which insurers to sue in the first instance, and under which policies, when it filed the instant action and when it filed its First Amended Complaint, and it offers no explanation for its delay in seeking to join the additional insurers who issued policies to Giant Eagle from April 1, 2009 to April 1, 2018. Giant Eagle is also the party that informed the Court, in the first Rule 26(f) Report, of the potential that an event could occur in the Opioid MDL that could trigger the filing of a motion to amend, and who then waited more than one year after the triggering event occurred, and only after ultimately proving unsuccessful on its summary judgment motion, before requesting leave to amend. The Court can only conclude that Giant Eagle's actions and delay were tactical decisions. By describing Giant Eagle's actions as dilatory and/or tactical, this Court intends to express no offense taken by the Court. Giant Eagle is entirely within its rights to make such strategic and tactical litigation choices. The Court notes that it does not find such tactical decisions to constitute bad faith; but this Court must, nonetheless, recognize that Giant Eagle undertook such actions at its own peril, and the Court now simply finds that Giant Eagle's failure to move for leave to amend sooner was tactical in nature and was therefore, in fact, dilatory, and that its Motion to Amend was brought only after undue, and unexplained, delay.

In light of the Court's resolution of Giant Eagle's Motion for Partial Summary Judgment, this case, as presently structured, is ready to move forward, and Giant Eagle's Motion to Amend comes only after undue delay. Giant Eagle's proposed amendments would result in a significant expansion of this case, with the addition of new parties, insurance policies, defenses, and potential further motion practice, all of which will result in burden on the Court and inefficient, piecemeal litigation. But for Giant Eagle's Motion to Amend, this case could proceed to the next stage of litigation, with the parties having the benefit of a substantial ruling addressing material issues in

this case.  If the Motion to Amend were granted, this two and one-half year-old case will revert to the pleadings stage.

The Court notes that nothing herein is intended to prevent Giant Eagle from pursuing, in a separate action, the additional claims set forth in the proposed second amended complaint, to the extent the same are ripe and/or not time-barred.  The Court will not, however, permit Giant Eagle to do so in the above-captioned action, which has been pending for two and one-half years and is now prepared to move to the next stage of litigation following the Court's substantial decision on Giant Eagle's Motion for Partial Summary Judgment.  Despite having full knowledge of its basis for amendment, at the latest, in June of 2020, well before the Court resolved either Giant Eagle's Motion for Partial Summary Judgment or the subsequent Motion for Reconsideration, Giant Eagle did not request leave to amend or inform the Court of its intention to do so until, at the earliest, July 1, 2021, after Giant Eagle's Motion for Partial Summary Judgment was ultimately denied.  A wait-and-see approach to pleading is disfavored in the Third Circuit, *Jang*, 729 F.3d at 368, and the Court finds that Giant Eagle's Motion to Amend fails to offer any, let alone a sufficient, explanation for its delay.  For all of the reasons discussed above, the Court finds that Giant Eagle was dilatory in requesting leave to amend, and further finds that Giant Eagle's request for leave to amend comes, at best, only after truly unexplained and undue delay.  The Court will deny the Motion to Amend.

## IV.    Conclusion

Accordingly, for the reasons discussed above, the Court will deny Giant Eagle's Motion to Certify Interlocutory Appeal, and the Court will also deny Giant Eagle's Motion to Amend.  An appropriate Order of Court follows.

BY THE COURT:


s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: January 3, 2022

cc/ecf: All counsel of record